NON-CONFIDENTIAL VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**UNITED STATES,**<br><br>            **Defendant,**<br><br>        **and**<br><br>**BYD AMERICA LLC, CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD., CANADIAN SOLAR US MODULE MANUFACTURING CORPORATION, TRINA SOLAR SCIENCE AND TECHNOLOGY (THAILAND) LTD., TRINA SOLAR (U.S.) INC., RUNERGY PV TECHNOLOGY (THAILAND) CO., LTD., RUNERGY USA TRADING LLC, AND RUNERGY ALABAMA INC.**<br><br>        **Defendant-Intervenors.** | **Before: Hon. Mark A. Barnett,**<br>        **Chief Judge**<br><br>**Court No. 25-00163**<br><br>**NON-CONFIDENTIAL VERSION**<br><br>**Business Proprietary Information Removed from Pages 7-8, 10, 16, 20-21, 23-26** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Stephanie M. Bell, Esq.
Kimberly A. Reynolds, Esq.
Stephen A. Morrison, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC  20036
(202) 719-7000

*Counsel to the American Alliance for Solar
Manufacturing Trade Committee*

Dated: January 14, 2026

Ct. No. 25-00163                                                    NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   RULE 56.2 STATEMENT ..................................................................................... 1

      A.    Determination Presented for Review .......................................................... 1

      B.    Issues Presented .......................................................................................... 1

      C.    Request for Court Order and Decision Sought ........................................... 2

III.  FACTUAL BACKGROUND ................................................................................ 2

      A.    The Circumvention Proceedings and Tariff Holiday .................................. 2

      B.    Preliminary Phase ....................................................................................... 7

      C.    Final Phase .................................................................................................. 8

IV.   LEGAL STANDARDS ....................................................................................... 11

      A.    Material Injury and Negligibility .............................................................. 11

      B.    Standards of Appellate Review .................................................................. 12

V.    SUMMARY OF ARGUMENT ........................................................................... 13

VI.   ARGUMENT ....................................................................................................... 15

      A.    The Commission's Determination That Subject Imports from Cambodia
            and Thailand Were Negligible for Purposes of Material Injury is Not
            Supported by Substantial Evidence and is Otherwise Not In Accordance
            With Law .................................................................................................... 15

            1.    The Commission's Determination to Use Adjusted Questionnaire
                  Data Rather than Official Import Data for Purposes of its
                  Negligibility Analysis is Not Supported by Substantial Evidence .... 15

            2.    The Commission's Determination to Treat All of NE Solar's
                  Imports as Non-Subject Imports for its Negligibility Analysis is
                  Not Supported by Substantial Evidence and is Otherwise Not in
                  Accordance With Law ....................................................................... 20

      B.    The Commission's Determination that the Domestic Solar Industry Was
            Not Materially Injured by Subject Imports from Thailand and Cambodia
            is Not Supported by Substantial Evidence and is Otherwise Not in
            Accordance With Law ................................................................................ 29

VII.  CONCLUSION .................................................................................................... 30

i

Ct. No. 25-00163                                                    NON-CONFIDENTIAL VERSION

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMS Assocs. Inc. v. United States*,
    737 F.3d 1338 (Fed. Cir. 2013)...................................................................................12

*Burlington Truck Lines, Inc. v. United States*,
    371 U.S. 156 (1962)...................................................................................................13, 19

*Consol. Edison Co. v. N.L.R.B.*,
    305 U.S. 197 (1938)........................................................................................................12

*CS Wind Vietnam Co. v. United States*,
    832 F.3d 1367 (Fed. Cir. 2016).......................................................................................13

*Jilin Henghe Pharm. Co. v. United States*,
    28 CIT 969, 342 F. Supp. 2d 1301 (2004).......................................................................12

*N.L.R.B. v. Columbian Enameling & Stamping Co.*,
    306 U.S. 292 (1939)........................................................................................................12

*Suramerica de Aleasciones Lanimadas, CA v. United States*,
    44 F.3d 978 (Fed. Cir. 1994)...........................................................................................12

*U.S. Steel Group-A Unit of USX Corp. v. United States*,
    18 CIT 1190, 873 F. Supp. 673 (1994)............................................................................20

*Universal Camera Corp. v. N.L.R.B.*,
    340 U.S. 474 (1951)..................................................................................................12, 29

**Statutes**

19 U.S.C. § 1318(a) ......................................................................................................4, 5

19 U.S.C. § 1516a(b)(1)(B)(i).............................................................................................12

19 U.S.C. § 1677(24) .........................................................................................................11

19 U.S.C. § 1677(24)(A)(iv)...............................................................................................11

19 U.S.C. § 1677(24)(B)....................................................................................................11

19 U.S.C. § 1677(24)(C)................................................................................................11, 27

Ct. No. 25-00163 NON-CONFIDENTIAL VERSION

## Administrative Materials

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) ...................................2, 4, 5

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 75,221, (Dep't Commerce Dec. 8, 2022) .......................................3, 25

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) ........................4, 5, 6, 22, 25

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand and Vietnam*, 90 Fed. Reg. 25,075 (Int'l Trade Comm'n June 13, 2025) .................................................................................1, 2, 10

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Cambodia, Malaysia, Thailand and Vietnam*, 89 Fed. Reg. 50,633 (Int'l Trade Comm'n June 14, 2024) .................................................................................7

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China*, 77 Fed. Reg. 73,018 (Dep't Commerce Dec. 7, 2012)................................................................................................................2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*,77 Fed. Reg. 73,017 (Dep't Commerce Dec. 7, 2012)................................................................................................................2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*, 89 Fed. Reg. 53,388 (Dep't Commerce June 26, 2024)................................................................................................................24

*Declaration of Emergency and Authorization for Temporary Extensions of Time and Duty-Free Importation of Solar Cells and Modules from Southeast Asia*, Proclamation No. 10414, 87 Fed. Reg. 35,067 (June 9, 2022)................................5

*Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord with Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Dep't Commerce Sep. 16, 2022)................................................................................5

Ct. No. 25-00163                                    NON-CONFIDENTIAL VERSION

## I.    INTRODUCTION

On behalf of Plaintiff the American Alliance for Solar Manufacturing Trade Committee ("Plaintiff"), we respectfully submit this opening brief in Plaintiff's challenge to certain aspects of the U.S. International Trade Commission's ("the Commission") final determination in the antidumping and countervailing duty ("AD/CVD") investigations of crystalline silicon photovoltaic ("CSPV") cells, whether or not assembled into modules, from Cambodia, Malaysia, Thailand, and Vietnam. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand and Vietnam*, 90 Fed. Reg. 25,075 (Int'l Trade Comm'n June 13, 2025) (deters.) ("*Final Determination*"), P.R. 317; *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-TA-722-725 and 731-TA-1690-1693, USITC Pub. 5631 (June 2025) (Final) ("USITC Pub. 5631"), P.R. 315.

## II.    RULE 56.2 STATEMENT

### A.    Determination Presented for Review

The Commission published the determination under challenge as *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand and Vietnam*, 90 Fed. Reg. 25,075 (Int'l Trade Comm'n June 13, 2025) (deters.). The Commission laid out the bases for its determination in USITC Pub. 5631. *See also Confidential Views of the Commission*, (Final) (June 12, 2025), ("Views of the Commission") C.R. 514.

### B.    Issues Presented

Plaintiff raises the following challenge to the *Final Determination*:

1.    The Commission's determination that subject imports from Cambodia and Thailand did not exceed the negligibility threshold for purposes of its material injury analysis is not supported by substantial evidence and is otherwise not in accordance with law.

1

2.     The Commission's determination that the U.S. solar injury was not materially injured by reason of subject imports from Thailand and Cambodia was not supported by substantial evidence and was otherwise not in accordance with law.

## C.      Request for Court Order and Decision Sought

Plaintiff respectfully requests that this Court hold that the Commission's *Final Determination* was unsupported by substantial evidence and not otherwise in accordance with law, and remand to the Commission for reconsideration or further explanation.

## III.    FACTUAL BACKGROUND

### A.      The Circumvention Proceedings and Tariff Holiday

On December 7, 2012, U.S. Department of Commerce ("Commerce") issued antidumping duty and countervailing duty orders on CSPV products from China (the "*Solar I*" orders). *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from the People's Republic of China*, 77 Fed. Reg. 73,018 (Dep't Commerce Dec. 7, 2012) (amended final deter. of sales at less than fair value and antidumping duty order), P.R. 123; *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 77 Fed. Reg. 73,017 (Dep't Commerce Dec. 7, 2012) (countervailing duty order), P.R. 124.

Following the imposition of the *Solar I* orders on CSPV products from China, Chinese producers attempted to circumvent the *Solar I* duties by assembling Chinese inputs into CSPV products in third countries. In response, a domestic solar producer petitioned Commerce to initiate a circumvention investigation on CSPV products imported from Cambodia, Malaysia, Thailand, and Vietnam. *See Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) (final scope deter. and final

affirmative deters. of circumvention with respect to Cambodia, Malaysia, Thailand and Vietnam) ("*Circumvention Determination*"), P.R. 141.

In its preliminary circumvention determination, Commerce found that, while numerous producers in these countries were circumventing the *Solar I* orders, certain companies, including New East Solar (Cambodia) Co., Ltd. ("NE Solar"), Hanwha Q Cells Malaysia Sdn. Bhd., Jinko Solar Technology Sdn. Bhd, and Boviet Solar Technology Co., Ltd. were found not to be circumventing the *Solar I* orders. *See Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 75,221, 75,227 (Dep't Commerce Dec. 8, 2022) (prelim. affirmative deters. of circumvention with respect to Cambodia, Malaysia, Thailand, and Vietnam) ("*Circumvention Prelim.*"), P.R. 134. Of relevance here, in its preliminary determination, Commerce found that NE Solar was not circumventing the orders. Preliminary Decision Memorandum accompanying *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 87 Fed. Reg. 75,221 (Dep't Commerce Dec. 8, 2022) (prelim. affirmative deters. of circumvention with respect to Cambodia, Malaysia, Thailand, and Vietnam) (ACCESS Barcode 4316095-02) at 22 ("*Circumvention Prelim. PDM*"). In reaching its preliminary determination, Commerce looked at numerous factors of NE Solar's Cambodian operations, including NE Solar's (1) level of investment, (2) level of research and development, (3) the nature of its production process, (4) the extent of its production facilities, (5) the proportion of its processing in Cambodia compared to the value of its merchandise imported into the United States, and (6) whether the value of the merchandise produced in China was a significant portion of the total value of the merchandise exported to the United States, as well as other factors. *See id.* at 14-21.

3

Based on the totality of the record, Commerce determined that NE Solar was not circumventing the *Solar I* Orders. *Id.* at 22. In particular, Commerce found that NE Solar did not source inputs from affiliated producers in China, its investments were not minor or insignificant, its only R&D expenses related to solar cells and modules were in Cambodia (and not China), that nature of production by NE Solar in Cambodia was not minor, and that its production facilities in Cambodia were not insignificant. *See id.* at 14-19.

On August 23, 2023, Commerce issued its final circumvention determination. *See generally Circumvention Determination*. In its final circumvention determination, Commerce reversed its determination that NE Solar was not circumventing the *Solar I* orders due to NE Solar's refusal to participate in verification. *See Circumvention Determination*, 88 Fed. Reg. at 57,420, 57,425. In so doing, Commerce applied adverse facts available to NE Solar for its refusal to participate in verification and determined not to rely on NE Solar's questionnaire responses. *See* Issues and Decision Memorandum accompanying *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China*, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) (final scope deter. and final affirmative deters. of circumvention with respect to Cambodia, Malaysia, Thailand, and Vietnam) (ACCESS Barcode 4419739-02) at 47, P.R. 129. As a result of NE Solar's refusal to participate in verification, Commerce was unable to determine whether NE Solar's production process in Cambodia was minor or insignificant. *Id.* at 47-48.

Prior to Commerce's final circumvention determination (and in anticipation of an affirmative circumvention finding), President Biden declared an emergency "tariff holiday" through a Presidential Proclamation under 19 U.S.C. § 1318(a). *See Declaration of Emergency and Authorization for Temporary Extensions of Time and Duty-Free Importation of Solar Cells*

*and Modules from Southeast Asia*, Proclamation No. 10414, 87 Fed. Reg. 35,067, 35,068 (June 9, 2022) ("Proclamation 10414"), P.R. 127. Proclamation 10414 authorized Commerce to "provide relief from the emergency" and mandated Commerce to "consider taking appropriate action under" 19 U.S.C. § 1318(a) to permit the importation of certain CSPV products from Southeast Asian countries, free from the collection of AD/CVD duties. *Id.*

Pursuant to this directive, on September 16, 2022, Commerce promulgated a final rule to permit duty-free importation of CSPV products from Cambodia, Malaysia, Thailand, and Vietnam. *Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord with Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Dep't Commerce Sep. 16, 2022), P.R. 135. In promulgating this regulation, Commerce explained that it did not apply to solar cells and modules subject to the existing *Solar I* orders, or "solar cells and modules . . . exported from Cambodia, Malaysia, Thailand, and Vietnam that are already subject to the China Solar Orders." *Id.* at 56,869 & n.5 (noting that country-of-origin of CSPV products is determined by where the solar cell is manufactured).

In the *Circumvention Determination*, Commerce confirmed that it would not require cash deposits for "Applicable Entries" (*i.e.*, entries entered into the United States or withdrawn from warehouse for consumption during the tariff holiday) subject to the circumvention proceeding for the duration of the tariff holiday. *See Circumvention Determination*, 88 Fed. Reg. at 57,421. That is, given the unique circumstances presented by Presidential Proclamation 10414, Commerce set up a binary system under which "certified" entries were not subject to AD/CVD duties, while non-certified entries were subject to AD/CVD duties. *See Circumvention Determination*, 88 Fed. Reg. at 57,422 (stating that "{certified entries} will not be subject to suspension of liquidation, or the cash deposit requirements" of the circumvention order, but that "{f}ailure to comply with the

applicable requisite certification requirements may result in the merchandise being subject" to AD/CVD duties).

To effectuate this binary system, Commerce implemented a certification mechanism that enabled qualifying firms to demonstrate that their Cambodia, Malaysian, Thai, and Vietnamese imports were not circumventing the *Solar I* orders and, thus, not subject to AD/CVD duties. *Id.* at 57,421-23. These three certifications were (1) importer and exporter certifications meeting the definition of "Applicable Entries" ("Appendix IV Certification"); (2) importer and exporter certifications for the exporters with negative circumvention determinations "in combination with certain wafer exporters" ("Appendix V Certification"); and (3) importer and exporter certifications based on the inputs used to manufacture the cells and modules ("Appendix VI Certification"). *See id.* at 57,422. Commerce explained that imports would not be subject to suspension of liquidation or the cash deposit requirements if the importer/exporter met the requirements necessary for certification in Appendix IV, V, or VI. *Id.*

Appendix V certifications were available only for specific entries by three firms that Commerce determined were not circumventing the *Solar I* orders. *Id.* at 57,427-31; *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-TA-722-725 and 731-TA-1690-1693, USITC Pub. 5517 (June 2025) (Prelim.) at 13 & n.38 ("USITC Pub. 5517"), P.R. 160. Appendix VI certifications were available to firms whose entries met certain "component content requirements" and were thus not circumventing the orders. *Circumvention Determination*, 88 Fed. Reg. at 57,431-33; USITC Pub. 5517 at 13-14 & n.38. Appendix IV certifications were available for entries that did not otherwise use Appendix V or VI certifications, in order to comply with the terms of the tariff holiday. *Circumvention Determination*, 88 Fed. Reg. at 57,425-27; USITC Pub. 5517 at 13-14 &

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

Ct. No. 25-00163                                                                        NON-CONFIDENTIAL VERSION

n.38. Non-circumventing merchandise, however, could still be imported using Appendix IV certifications. [

]. *See* [

]. Regardless of what certification was used, however, the result was the same—the entries were not subject to AD/CVD duties.

### B.    Preliminary Phase

On June 14, 2024, the Commission published its preliminary determination in these investigations. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from Cambodia, Malaysia, Thailand and Vietnam*, 89 Fed. Reg. 50,633 (Int'l Trade Comm'n June 14, 2024) (deters.), P.R. 165. The Commission made an affirmative preliminary determination, finding a reasonable indication that the domestic industry was injured by reason of subject imports from Malaysia, Thailand, and Vietnam that were alleged to be sold at less than fair value ("LTFV") and subsidized by the governments of Malaysia, Thailand, and Vietnam, as well as subject imports from Cambodia that were sold at LTFV, and that there was a reasonable indication that the domestic industry was threatened with material injury by reason of imports from Cambodia that were subsidized by the Cambodian government. *See id.*; *Views of the Commission*, (Prelim) (June 21, 2024) at 3 ("Prelim. Views of the Commission"), C.R. 232.

With respect to negligibility, the Commission used official import statistics to calculate the denominator of total imports. Prelim. Views of the Commission at 43. To calculate the volume of subject imports for the numerator, the Commission used questionnaire data, as supplemented with data from proprietary, Census-edited U.S. Customs and Border Protection ("Customs") records. *Id.*

7

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

Ct. No. 25-00163                                                                    NON-CONFIDENTIAL VERSION

The Commission noted that for Cambodia, it was "missing the questionnaire data for a significant volume of imports because {one of the largest importers} of CSPV products from Cambodia" did not submit a questionnaire response (*i.e.*, NE Solar). *Id.* at 44. Instead, the Commission used proprietary Census-edited Customs records to calculate NE Solar's imports. *Id.* The Commission did not explain or summarize what the proprietary Census-edited Customs records contained.

Using this method, the Commission calculated that, during the negligibility period (April 2023 through March 2024), subject imports from Cambodia accounted for [    ] percent of total subject imports and subject imports from Thailand accounted for [    ] percent of total subject imports. *Id.* at 45. Because Cambodia is considered a "least-developed country," it is subject to a 4 percent negligibility limit for CVD investigations, and subsidized Cambodian imports were thus found negligible in the Commission's preliminary determination.

## C.    Final Phase

The Commission issued questionnaires to interested parties for the final phase, including a U.S. Importers' Questionnaire. The U.S. Importers' Questionnaire directed parties to report imports that were imported using Appendix IV or VI certification as subject to the investigations. *See, e.g.*, U.S. Importers' Questionnaire at Questions II-5a, II-6a, II-7a, II-8a, II-9a, II-10a, II-11a, II-12a, P.R. 183. On February 6, 2025, the Commission emailed interested parties, notifying them that certain parties wished to argue that their clients' imports from subject countries, including Cambodia and Thailand, imported under an Appendix IV certification should be treated as non-subject. *See* E-mail from Julie Duffy to Interested Parties, re: *USITC: CSPV Importer Questionnaire Clarification* (Feb. 6, 2025), C.R. 451. Accordingly, the Commission instructed parties reporting Appendix IV certification imports to submit two versions of the U.S. Importers'

Questionnaire: (1) a version with all Appendix IV certification imports reported as subject merchandise as initially instructed and (2) a version separately reporting the Appendix IV imports that were being requested to be treated as non-subject. *See id.* Parties that needed to report certain of their Appendix IV imports as non-subject were further directed to include the following certification on the cover page of its submission:

> While we have certified the accuracy of the reported data, we do not by virtue of this certification agree with the classification of certain appendix IV imports (provided in a separate document) as "subject" to these investigations. These imports between April 2022 and June 2024 should be classified by the Commission as nonsubject . . . .

*Id.* Parties were also instructed to indicate whether all of the firm's Appendix IV imports were non-subject, or if only a subset of those imports were non-subject, as well as indicating what portion (if any) of these imports were actually subject to duties under the *Solar I* Orders. *See id.*

Several participating importers submitted two versions of the U.S. Importers' Questionnaire to argue that their Appendix IV imports were non-subject. However, other known importers, including NE Solar, did not respond to the U.S. Importers' Questionnaire at all.

On April 1, 2025, the Commission placed on the record "plug" questionnaires for U.S. importers NE Solar and JA Solar created by the Commission using proprietary, Census-edited Customs data. *See* U.S. Importers' Questionnaire Response of New East Solar Plug (Apr. 1, 2025) ("U.S. Importers' Questionnaire Response of NE Solar Plug"), C.R. 428; U.S. Importers' Questionnaire Response of JA Solar Plug (Apr. 1, 2025), C.R. 429. The Commission's "plug" questionnaire for NE Solar reported all of NE Solar's imports as non-subject. *Compare* U.S. Importers' Questionnaire Response of NE Solar Plug at II-5a, II-6a, *with id.* at II-13a, II-14a. The Commission did not provide interested parties with access to, or any summary of, the proprietary Customs data.

9

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

Ct. No. 25-00163                                                    NON-CONFIDENTIAL VERSION

On April 1, 2025, the Commission released the Prehearing Report to interested parties. *See* Pre-Hearing Report to the Commission, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-722-725 and 731-TA-1690-1693 (Final) (Apr. 1, 2025) ("Pre-Hearing Report"), C.R. 433, P.R. 215. To assess negligibility, the report used questionnaire data – adjusted to estimate imports by non-responsive importers (including NE Solar) using proprietary Census-edited Customs records – as the numerator and official import statistics as the denominator. *See id.* at D.3. Commission Staff reported that imports from Cambodia accounted for [    ] percent of total imports, and that imports from Thailand accounted for [    ] percent of total imports with respect to the AD investigation, and [    ] with respect to the CVD investigation, during the 12 months prior to the filing of the petition. *Id.* at D.15 (Table D.6).

On April 9, 2025, interested parties, including Petitioner, submitted prehearing briefs. On April 15, 2025, the Commission held a hearing, where interested parties, including Petitioner, participated. And, on April 22, 2025, interested parties, including Petitioner, submitted post-hearing briefs.

On June 9, 2025, the Commission issued its confidential final affirmative determination, and Commission Views. *See Final Determination*, 90 Fed. Reg. at 25,076; Views of the Commission. The Commission determined that imports from Cambodia and Thailand were negligible for purposes of material injury. The Commission's determination was based on questionnaire data that had been adjusted to estimate imports by non-responsive importers (including NE Solar) using proprietary Customs records as the numerator, and official import statistics as the denominator. *See* Views of the Commission at 57; Final Staff Report, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia,*

10

*Thailand, and Vietnam*, Inv. Nos. 701-722-725 and 731-TA-1690-1693 (Final) (May 7, 2025) at D.17 (Table D.8) ("Final Staff Report"), C.R. 495, P.R. 287. The methodology also treated all Appendix IV imports reported by participating importers, and the Commission-constructed imports for NE Solar, as non-subject merchandise, and deducted those imports from the numerator. Views of the Commission at 56-57. The Commission, however, determined that subject imports from Cambodia and Thailand were likely to imminently exceed the applicable negligibility thresholds for purposes of determining threat of material injury in both the antidumping and countervailing duty investigations. *Id.* at 54, 59-62.

## IV.    LEGAL STANDARDS

### A.    Material Injury and Negligibility

Pursuant to 19 U.S.C. § 1677(24), the Commission considers imports to generally be "negligible" if such imports account for less than 3 percent of the volume of all such merchandise imported into the United States in the 12-month period preceding the filing of an antidumping or countervailing duty investigation. In countervailing duty investigations involving developing countries (including Cambodia), the negligibility threshold is four percent. 19 U.S.C. § 1677(24)(B). In computing import volumes for purposes of its negligibility analysis, "the Commission may make *reasonable* estimates on the basis of available statistics." 19 U.S.C. § 1677(24)(C) (emphasis added). The Commission, however, will not treat imports as negligible for purposes of threat of material injury if it determines that imports will imminently account for more than three percent of the volume of such merchandise imported into the United States (or four percent in countervailing duty investigations involving developing countries). 19 U.S.C. § 1677(24)(A)(iv).

B.      **Standards of Appellate Review**

The U.S. Court of International Trade ("CIT") considers whether the Commission's determinations are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). It must be "more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." *N.L.R.B. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In determining whether the Commission's determination is supported by substantial evidence, the court must review the record as a whole, and must take into account any evidence that fairly detracts from the Commission's determination. *See Universal Camera*, 340 U.S. at 487-88; *Suramerica de Aleasciones Lanimadas, CA v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) ("{T}his court cannot evaluate the substantiality of evidence supporting an ITC determination merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be draw.").

As to whether a determination is in accordance with law, the court assesses both the legal soundness of the Commission's decision, and the adequacy of its explanations. An agency decision is not in accordance with law if it conflicts with governing statutes, binding court decisions, or if it arbitrarily departs from the agency's own relevant precedents. *AMS Assocs. Inc. v. United States*, 737 F.3d 1338, 1344 (Fed. Cir. 2013); *Jilin Henghe Pharm. Co. v. United States*, 28 CIT 969, 977, 342 F. Supp. 2d 1301, 1309 (2004), *vacated on other grounds*, 123 F. App'x 402 (Fed. Cir. 2005). Likewise an agency's explanation is inadequate if it is conclusory or otherwise fails to inform the

court of the agency's decision-making path. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962) (requiring agencies to provide "a rational connection between the facts found and the choice made"); *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1376 (Fed. Cir. 2016) ("If the {CIT} and this court are to play their statutorily required roles in reviewing Commerce's determinations, it is important that we have clear guidance from Commerce as to what is actually happening.").

## V.    SUMMARY OF ARGUMENT

The Commission's determination that subject imports from Cambodia and Thailand were negligible for purposes of material injury is not supported by substantial evidence and is not otherwise in accordance with law. The Commission explained that its decision to use modified questionnaire data—adjusted to include imports from non-responding companies—improved the accuracy of the questionnaire data. However, the record tells another story. First, the Commission failed to adequately address Petitioner's proposed negligibility calculation. And the scant reasoning in its short explanatory footnote does not rise to the level of substantial evidence necessary to support its determination. The Commission's dismissal of Petitioner's calculations relied on a misunderstanding of what merchandise was included in the dataset. Moreover, it contradicted itself, explaining that the lack of complete coverage in the questionnaire data made it inappropriate to use in adjusting the official import data, only to turn around and use that questionnaire data—adjusted with uncertified and unverified "plug" questionnaire data the Commission created *sua sponte*—for purposes of calculating negligibility.

Substantial evidence also does not support the Commission's assumption that all imports entered into the United States under Appendix IV certifications are non-subject imports in the *Solar III* investigations. The Commission misstates the manner in which the certification process

13

for tariff relief from circumvention duties operated, finding that the language in the Appendix IV certification meant that the data were "certified as meeting the physical description of merchandise covered by the {*Solar I* Order}." The Commission ignored evidence that importers imported merchandise that was not subject to the *Solar I* Orders under Appendix IV because the recordkeeping requirements were less stringent and because the effective relief provided for entries made under Appendices IV, V, and VI was exactly the same—nonpayment of duties. The Commission also ignored record evidence that Customs has rejected Appendix IV certifications, demonstrating the impropriety of making assumptions that all Appendix IV imports were non-subject merchandise. In particular, the Commission made assumptions about the imports of NE Solar, which chose not to participate in the *Solar III* investigation. Record evidence does not support the Commission's determination to make such assumptions about this company's data— in fact, it actually supports treating them as non-subject. The Commission's misunderstanding of the certification process, its failure to address the factual record, and unsupported assumptions about imports made by non-participating parties evince the lack of substantial evidence supporting its determination.

Because the Commission found that subject imports from Cambodia and Thailand were negligible, it did not conduct a material injury analysis for these countries. Given the flaws in its negligibility determination, the Commission should conduct a material injury analysis with respect to Cambodia and Thailand on remand.

## VI.    ARGUMENT

### A.    The Commission's Determination That Subject Imports from Cambodia and Thailand Were Negligible for Purposes of Material Injury is Not Supported by Substantial Evidence and is Otherwise Not In Accordance With Law

The Commission's determination that imports from Cambodia and Thailand were negligible for purposes of material injury is not supported by substantial evidence. First, the Commission's determination to adjust official import statistics using certain questionnaire and Census data as the numerator in its negligibility calculations, is unsupported by substantial evidence. Second, the Commission's determination to treat all Appendix IV imports as non-subject imports, and to treat all of NE Solar's imports as Appendix IV imports through its "plug" questionnaire, was not supported by substantial evidence and is otherwise not in accordance with law. Indeed, the Commission's determination benefited non-responding companies like NE Solar for not participating in the *Solar III* investigation. Allowing such a determination to stand would set a concerning precedent and encourage parties not to cooperate with future investigations, particularly in complex cases where the Commission needs to rely on questionnaire responses to determine total imports.

#### 1.    *The Commission's Determination to Use Adjusted Questionnaire Data Rather than Official Import Data for Purposes of its Negligibility Analysis is Not Supported by Substantial Evidence*

In its final determination, the Commission used the data presented in Appendix D of the Pre-Hearing Report to make its negligibility findings. *See* Views of the Commission at 57. This dataset used questionnaire data—adjusted to estimate imports by non-responsive importers (including NE Solar) using proprietary Census-edited Customs records—as the numerator, and official import statistics as the denominator. Final Staff Report at Table D.7. However, as Plaintiff

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

Ct. No. 25-00163                                              NON-CONFIDENTIAL VERSION

detailed in its pre-hearing brief, at the hearing, and in its post-hearing brief, this methodology used unreliable data and resulted in an improper apples-to-oranges comparison.

>    ***a.        Record Evidence Demonstrates that U.S. Importer Questionnaire Data are Unreliable for Use as the Numerator in the Commission's Negligibility Analysis***

The U.S. importer questionnaire responses used by the Commission in its negligibility analysis were incomplete, riddled with errors, in many cases created by the Commission to the benefit of uncooperative importers, and therefore were unreliable as a data source for the Commission's negligibility analysis. *See* Pre-Hearing Brief of the American Alliance for Solar Manufacturing Trade Committee, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-722-725 and 731-TA-1690-1693 (Final) (Apr. 9, 2025) at 15 ("Petitioner's Pre-Hearing Br."), C.R. 438, P.R. 227. In particular, the Commission did not receive an importer questionnaire response from NE Solar, which was [                                                                              ]. *Id.* In addition, the Commission received an unusable questionnaire response from [

                                                                                         ] that were excluded from the Commission's negligibility calculations. *See* Final Staff Report at 4.1 n.3. Further, as detailed in Section VI.A.2 below, the Commission created "plug" questionnaires for certain importers, including NE Solar, using "proprietary, Census-edited Customs records." *Id.* And for non-participating NE Solar, the Commission assumed that all of NE Solar's imports were Appendix IV imports, which it classified as non-subject imports.

Ultimately, this methodology was inaccurate and rewarded uncooperative importers like NE Solar by presuming the volumes that they would have reported were non-subject entries covered by the China orders. *See* Post-Hearing Brief of the American Alliance for Solar

16

Manufacturing Trade Committee, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-722-725 and 731-TA-1690-1693 (Final) (Apr. 23, 2025) at Exhibit 1, p. 14 ("Petitioner's Post-Hearing Br."), C.R. 470, P.R. 265. As Plaintiff repeatedly argued, the Commission should have recognized the significance of these data discrepancies and omissions and used official import statistics for purposes of its negligibility analysis. The Commission's failure to do so in its final determination is unsupported by substantial evidence.

Notwithstanding Petitioner's opposition to treating all Appendix IV imports as non-subject imports, record evidence supported using an alternative and more accurate methodology for the Commission's negligibility analysis. As Petitioner suggested, the record supported an alternative methodology that began with official import statistics for both the numerator and the denominator, and then adjusted the numerator by subtracting the Appendix IV volumes reported in the responding U.S. importer's questionnaire responses. *See* Petitioner's Post-Hearing Br. at Exhibit 1, p. 14. Yet, the Commission dismissed this argument without adequate explanation, and continued to use the methodology provided in the Appendix D data.

**b.    The Commission's Determination to Use Unreliable U.S. Importer Data as the Numerator for the Commission's Negligibility Analysis is Unsupported by Record Evidence**

As an initial matter, and as detailed in Section VI.A.2 below, it was inappropriate for the Commission to construct questionnaire responses using proprietary data not available to any interested party, for non-cooperative U.S. importers. Second, the Commission ignored substantial record evidence, as detailed above, that demonstrated the questionnaire data were not reliable to use in the numerator of the negligibility calculation. Instead, in a footnote, the Commission simply stated that it considered Petitioner's proposal – using official import statistics as the numerator and

denominator, adjusting the numerator with reported Appendix IV imports – but that this methodology was "{not} as accurate as the data in Table D.7 for calculating negligibility." Views of the Commission at 58 n.197.

The Commission provides two insufficient reasons for why it concluded the Petitioner's methodology was not "as accurate" as that in Appendix D of the Staff Report. First, the Commission stated that it was "unclear which HTS subheadings Petitioner used to compile the official import statistics" in its calculations. *Id.* To the contrary, record evidence shows that Petitioner used HTSUS codes 8541.42.0010 and 8541.43.0010 – the HTSUS codes that clearly cover subject merchandise and the same HTSUS codes the Commission used in its denominator. Exhibit 2 of Petitioner's Pre-Hearing brief provided the negligibility calculation using only official import statistics, and included a cover page detailing the parameters of the data pull, including that it used HTSUS codes 8541.42.0010 and 8541.43.0010. *See* Petitioner's Pre-Hearing Br. at Exhibit 2. Exhibit 10 of Petitioner's Post-Hearing brief provided the negligibility calculation using the same official import statistics in the numerator and denominator, but adjusting the numerator downwards for reported Appendix IV imports. *See* Petitioner's Post-Hearing Br. at Exhibit 10. Accordingly, the record was clear as to which subheadings the Petitioner used to compile the official import statistics in Petitioner's proposed methodology. The Commission's reasoning on this point is thus unsupported by record evidence.

Second, the Commission also appears to dismiss Petitioner's methodology because, "although {Cambodian} questionnaire responses cover a large majority of subject imports, there is some shortfall, which could lead to undercounting of Appendix IV imports." Views of the Commission at 58 n.197. While the Commission does not explicitly reference NE Solar, or explain what it means by "shortfall," the Commission is presumably referring to NE Solar's missing

18

questionnaire as a justification for counting all of NE Solar's constructed imports as non-subject imports. This reason certainly does not explain why the Commission ignored record evidence that supported using official import statistics as the numerator and denominator in its methodology. In fact, it would support the usage of official import statistics, rather than questionnaire responses, as the basis for the calculation methodology. The Commission acknowledged that U.S. importer questionnaire coverage was inadequate, yet still relied on these data – which are further manipulated by the Commission through its "plug questionnaires" – to make its negligibility finding.

The Commission's brief dismissal of Petitioner's negligibility calculation cannot withstand the Court's scrutiny. The Commission claims that it rejected this calculation because it was not "as accurate as the data in Table D.7," Views of the Commission at 58 n.197, yet the Commission either misinterpreted or misunderstood Petitioner's calculations. Further, the Commission's explanation is inherently contradictory. The Commission argues that the "shortfall" in imports reported in questionnaire responses "could lead to undercounting" of imports that should be treated as non-subject. *Id*. Yet, the Commission then uses data from the supposedly flawed questionnaire coverage, and further manipulates that import data using unsupported assumptions about the nature of the merchandise being imported by non-participating companies. Indeed, the Commission contended that the flawed questionnaire data made it improper to use for purposes of adjusting subject imports, yet it used that same questionnaire data to conduct its negligibility analysis. This demonstrates that there is no rational connection between the facts before the agency and its determination not to rely on the official import statistics for its negligibility analysis. *See Burlington Truck Lines*, 371 U.S. at 168.

19

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

Ct. No. 25-00163                                                                NON-CONFIDENTIAL VERSION

Further, given the importance of this data to the Commission's negligibility determination, the Commission's errors are the type of mistakes that have a bearing on "the procedure used or the substance of {the} decision reached." *U.S. Steel Group-A Unit of USX Corp. v. United States*, 18 CIT 1190, 1214, 873 F. Supp. 673, 696 (1994). Accordingly, the Commission's determination to use unreliable, self-created questionnaire data rather than official import data as the numerator in its negligibility calculations is unsupported by substantial evidence and is otherwise not in accordance with the law.

> **2.      The Commission's Determination to Treat All of NE Solar's Imports as Non-Subject Imports for its Negligibility Analysis is Not Supported by Substantial Evidence and is Otherwise Not in Accordance With Law**

In analyzing negligibility, the Commission inappropriately relied on data from self-created "plug" questionnaires to find that imports from Cambodia did not surpass the negligibility threshold, to the benefit of non-responding importers. While Plaintiff acknowledges that the official import statistics include certain volumes of merchandise that is non-subject by virtue of Commerce's circumvention determinations, the Commission's assumption that NE Solar's imports used Appendix IV certifications and were all non-subject, despite its non-participation in this investigation, is flawed. As discussed below, its use of this constructed data, and the assumptions that it made about this data, are not supported by substantial evidence and are otherwise not in accordance with law. In particular, the Commission's determinations to (1) treat all Appendix IV imports as non-subject imports and (2) treat all of NE Solar's imports as Appendix IV imports are unsupported by substantial record evidence.

With respect to Cambodia, [

], NE Solar, failed to submit an importer questionnaire response in both the preliminary and final phases of the investigation. To account for NE Solar's failure to participate, rather than

20

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

Ct. No. 25-00163                                                    NON-CONFIDENTIAL VERSION

relying on official U.S. import statistics, the Commission used proprietary, Census-edited import records to create an importer questionnaire for NE Solar. *See* Pre-Hearing Report at 1.5, n.7; Views of the Commission at 57. And, instead of treating NE Solar's imports as subject imports, the Commission assumed that all of NE Solar's imports were non-subject imports, despite its total lack of participation in the investigation. Because of this unsupported assumption, Cambodia's overall share of imports during the negligibility period fell from [     ]%—which would have exceeded the negligibility threshold—to only [     ]%. *See* Pre-Hearing Report at 4.12.

As detailed below, it was first unreasonable for the Commission to conclude that Appendix IV entries were "certified as meeting the physical description of merchandise covered by the {Solar I} anticircumvention determination." Views of the Commission at 56. Second, it was unreasonable for the Commission to conclude that "the record containe{ed} no information" showing that Appendix IV certifications were used for noncircumventing merchandise. *Id.* at 56. Finally, it was unreasonable for the Commission to presume that all entries made by NE Solar were non-subject because they were purportedly entered using Appendix IV certifications, since the nature of those entries were not certified by the company, nor subject to verification by the Commission.

        *a.*       **The Commission's Determination to Treat All Appendix IV Imports as Non-Subject Imports is Unsupported by Substantial Evidence**

The Commission dismissed Plaintiff's arguments and record evidence demonstrating that Appendix IV entries contained subject imports in a pair of sentences, stating that the record contained no evidence that importers used Appendix IV to import non-circumventing merchandise and, thus, "*the only {record} information*" with respect to the nature of importers' imports under Appendix IV is that they were "certified as meeting the physical description of merchandise covered by the {*Solar I* Orders}." Views of the Commission at 56 (emphasis added). The

21

Commission's factual finding on this point is incorrect for a number of reasons. First, the Commission misunderstands how the certifications worked. Second, the Commission ignored evidence showing that some *Solar III*-subject imports were entered using Appendix IV certifications. Finally, the Commission ignored record evidence that Customs has rejected Appendix IV certifications, disproving the conclusion that all Appendix IV certified imports were conclusively within the Scope of the *Solar I* Orders.

> i.    *The Commission Ignores Evidence Concerning the Operation of Circumvention Certifications*

As detailed by Plaintiff throughout the investigation, record evidence demonstrates that an entry being certified as an Appendix IV entry does not in and of itself confirm that the entry was subject to the *Solar I* orders, and thus not subject to the *Solar III* investigations. Nothing in the Appendix IV certification expressly stated or required companies to certify that Appendix IV entries met "the physical description of merchandise covered by" the *Solar I* Order. Views of the Commission at 56. While the Appendix IV certification required importers and exporters to certify that their entries were produced "using parts and components manufactured in the People's Republic of China," *Circumvention Determination*, 88 Fed. Reg. at 57,426, this does not mean that those entries were subject to the *Solar I* Order. The certification requirements for Appendix VI make this clear: imports could still be certified despite containing fewer than three Chinese-origin inputs. *Id.* at 57,432. For example, a solar module made with a non-Chinese origin wafer, and with fewer than three other specific Chinese inputs (*i.e.*, silver paste, aluminum frames, glass, backsheets, ethylene-vinyl acetate, junction boxes), could be certified under either Appendix IV or Appendix VI.

To summarize Commerce's certification process, the tariff holiday provided exporters and importers three avenues for importing solar cells and modules duty free.

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

Ct. No. 25-00163                                                    NON-CONFIDENTIAL VERSION

- Appendix V was available only to three companies that had been found not to be circumventing the *Solar I* Orders: Boviet Solar Technology Co., Ltd., Hanwha Q CELLS Malaysia Sdn. Bhd., and Jinko Solar Technology Sdn. Bhd./Jinko Solar (Malaysia) Sdn. Bhd. *Id.* at 57,427-30. To use the Appendix V certification, these companies also had to certify that the cells and modules they produced were made using wafers made in China that were exported by specific companies. *See id.* at 57,427-30.

- Appendix VI was available to importers and exporters that could certify that, *inter alia*, their imports were either (a) not manufactured with Chinese-origin wafers or (b) if produced with Chinese-origin wafers, used no more than two of six other select inputs that were of Chinese-origin.[1] *Id.* at 57,432. Importantly, non-cooperative companies, including NE Solar, were ineligible to certify their imports using Appendix V or VI. *Id.* at 57,422, 57,425.

- Finally, Appendix IV was available to any exporters or importers, <u>regardless of whether they had been circumventing the *Solar I* Orders</u>, and regardless of whether they could certify that their merchandise was completed using Chinese-origin inputs that rendered them ineligible for certification under Appendix IV. *Id.* at 57,425-27.

Regardless of what certification these imports used, the result was the same: they were not required to pay *Solar I* duties. Given the irrelevance of the Appendix used in order to certify for tariff free treatment, it is unsurprising that companies did not always certify their merchandise under the most restrictive Appendices. Indeed, given the functional lack of difference between importing using the different certifications, there were many reasons exporters or importers might have used Appendix IV certifications, such as the fact that the recordkeeping requirements were easier to meet or because a shipment had mixed merchandise. *See* Petitioner's Post-Hearing Br. at Exhibit 1, p. 3. As the record showed, importers could, and in fact did use Appendix IV certifications to import <u>non-circumventing</u> imports – *i.e.*, imports that, if produced in the *Solar III* subject countries, were subject to the *Solar III* investigations. As Plaintiff made clear to the Commission, [

---

[1]     The six listed inputs were: silver paste, aluminum frames, glass, backsheets, ethylene-vinyl acetate, and junction boxes.

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

Ct. No. 25-00163                                                    NON-CONFIDENTIAL VERSION

]. And, as [                                                    ]

explained to the Commission, [

] that were undoubtedly

*Solar III*-subject imports. *See* [                                    ]; *see also Crystalline Silicon*

*Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China*,

89 Fed. Reg. 53,388 (Dep't Commerce June 26, 2024) (initiation and prelim. results of changes

circumstances rev.) (amending the Appendix V certification to include [

]. In other words, there was no reason to use one

certification over another.

On the other hand, there were numerous companies, including NE Solar, that were barred

from certifying imports under Appendices V and VI for their failure to cooperate in the

circumvention proceedings. Thus, even if these companies were producing solar cells and modules

without the use of Chinese-origin silicon wafers (or no more than two of six specifically identified

inputs that were of Chinese-origin), including *Solar III*-subject solar cells and modules, they had

no choice but to certify under Appendix IV in order to ensure tariff free treatment. In fact, given

the tariff holiday, they would have been incentivized to do so; if they had entered their imports as

a *Solar III* subject country-origin, there was a possibility that those imports would later be assessed

*Solar III* duties, retroactively.

Accordingly, the Commission's use of the Appendix under which an import was certified

as a proxy for whether that import was subject or non-subject is not supported by the record.

Instead, the record demonstrates that Appendix IV entries *did* include imports that were subject to

this *Solar III* investigation. The record further contains evidence that NE Solar's entries in

particular were subject to this investigation. As Plaintiff pointed out to the Commission, in the

24

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

**Ct. No. 25-00163**                                                                                  NON-CONFIDENTIAL VERSION

circumvention proceedings, Commerce preliminarily determined that NE Solar was not circumventing the *Solar I* orders. *See Circumvention Prelim.* To the contrary, Commerce found that "NE Solar did not source inputs from affiliated producers in China" and that it had no affiliated wafer production facilities in China. *Circumvention Prelim.* PDM at 14 (emphasis added). While NE Solar was found to have circumvented the *Solar I* Orders in the final determination, this determination was based entirely on NE Solar's decision not to undergo verification. *See Circumvention Determination*, 88 Fed. Reg. at 57,420.

> ii.  *The Commission Ignored Record Evidence Demonstrating that Importers Reported Non-Circumventing Imports Under Appendix IV*

The Commission incorrectly stated that the record contains <u>no</u> evidence of importers reporting otherwise non-circumventing imports under Appendix IV. [



]. *See*

[                                                    ]. Other importers similarly noted that Appendix IV certifications could be used for subject imports. For example, [



]. *See* [

].

Plaintiff does not dispute the fact that Appendix IV certifications were used to import non-subject merchandise that was subject to the *Solar I* Order. Plaintiff's dispute lies with the Commission's erroneous claim that the record contained no evidence that importers used Appendix IV certifications to import subject merchandise, and thus that all entries made under

BUSINESS PROPRIETARY INFORMATION
HAS BEEN DELETED

**Ct. No. 25-00163**                                                                 NON-CONFIDENTIAL VERSION

Appendix IV should be presumed to be non-subject merchandise. As discussed above, there is evidence on the record that importers used Appendix IV to import merchandise that was not subject to the *Solar I* duties. Exporters and importers did this for various reasons, whether it was because it was easier to comply with the Appendix IV certifications as a matter of record keeping, because they were barred from certifying that their imports did not use Chinese-origin inputs, or because the end result of certifying under Appendix IV, V, or VI was the same—the non-payment of tariffs.

> iii.     *The Record Demonstrates That Customs Has Rejected Appendix IV Certifications*

The Commission's use of proprietary Customs data in order to determine whether imports made by non-responding companies were subject or non-subject is also unsupported by the record because the record shows that Customs has in fact rejected the Appendix IV certifications made by certain exporters and importers. For example, [



]. *See* [



]. In other words, the certifications used by exporters and importers are not final—they can be rejected by Customs post-entry. Accordingly, because the record demonstrates that Customs can and does reject Appendix IV certifications, the Commission's determination to rely on the proprietary Customs data is unsupported by substantial evidence. Moreover, the proprietary nature of the data underscores the impropriety of using it—parties were unable to review the data, confirm whether any of the imports being treated as "non-subject" were actually subject, and raise these issues to the Commission.

26

NON-CONFIDENTIAL VERSION

> **b.**      ***The Commission's Determination to Treat All of NE Solar's Imports as Non-Subject Imports Is Unsupported by Substantial Evidence***

The Commission's assumption that imports by non-responding importer NE Solar were entirely non-subject rests on an incorrect understanding of the certification process for solar cells and modules, ignores record evidence contradicting its conclusion, and relies on proprietary data that was uncertified and unverified by NE Solar. While the Commission may, in computing import volumes, "make reasonable estimates on the basis of available statistics," 19 U.S.C. § 1677(24)(C), the Commission's determination to treat 100 percent of NE Solar's imports as reported in the proprietary Customs data was not reasonable.

The Commission's treatment of NE Solar's imports as non-subject rested entirely on its finding that all imports classified under the Appendix IV certification were non-subject, and on its decision to classify all of NE Solar's imports as Appendix IV imports, based on proprietary data. *See* Views of the Commission at 57. As detailed above, the Commission's apparent reasoning behind this treatment was that Appendix IV certifications were the only certifications that did not require companies to certify that their merchandise did not contain certain Chinese-origin inputs. *Id.* at 55-56. That is, unlike Appendix V certifications, which were only available to three companies determined not to be circumventing, and Appendix VI certifications, which were only available for importers/exporters that certified that their merchandise did not contain Chinese-origin wafers or, if they did, did not contain more than two of six other inputs of Chinese origin, Appendix IV certifications contained no such certification of non-use of these threshold inputs for being within the scope of the *Solar I* Orders. *Id.* at 55-56.

However, this simplified view of the certification process for solar cells and modules from subject countries—that imports certified under Appendix IV are Chinese-origin and subject to

*Solar I*, while imports certified under Appendices V and VI were not—is both incorrect and not supported by the record.

It was particularly unreasonable for the Commission to make this finding for non-participating importers such as NE Solar. Importers that participated in this investigation at least had to certify to the Commission that their reporting of Appendix IV entries as either subject or non-subject was complete and correct, as well as to submit to potential verification of the information provided. With respect to NE Solar, the lack of record evidence about the nature of its imports is due entirely to its failure to participate in the Commission's investigation. NE Solar was the only party that could definitively certify whether their imports were, in fact, subject or non-subject merchandise, and yet it failed to provide that information to the Commission. Instead, the NE Solar "plug" questionnaire was based on proprietary Customs data to which no other parties had access, and NE Solar did not certify the accuracy of the information or certify that all of its imports made under Appendix IV were non-subject. Further, the information in the "plug" questionnaire was not subject to verification or requested revisions, because NE Solar did not participate in the investigation.

In sum, the Commission's determination that all of NE Solar's imports during the negligibility period were Appendix IV imports, and that all Appendix IV imports were not subject to the *Solar III* investigations, is not supported by substantial evidence and is otherwise contrary to law. In reaching its determination, the Commission relied on a flawed understanding of the certification process for solar cells and modules, and it ignored record evidence demonstrating that Appendix IV certifications were used to import merchandise that was not circumventing the *Solar I* Orders. Finally, it was not reasonable for the Commission to presume that NE Solar's imports were all non-subject, given the company's failure to participate in the investigations, and the fact

that the data in the "plug" questionnaire was not certified to by NE Solar and was not subject to verification. Further, instead of addressing the record evidence that demonstrated the impropriety of assuming that all Appendix IV imports were non-subject merchandise, the Commission merely stated that "the only information we have with respect to the nature of importers' imports under Appendix IV is that they were certified as meeting the physical description of merchandise covered by the {Solar I} anticircumvention determination." *See* Views of the Commission at 56. The Commission has thus wholly failed to "take into account whatever in the record fairly detracts from {the weight of its determination}," *Universal Camera*, 340 U.S. at 488.

Accordingly, Plaintiff respectfully requests that the court remand the Commission's negligibility determination with respect to Cambodia to the Commission for reconsideration or further explanation.

**B.      The Commission's Determination that the Domestic Solar Industry Was Not Materially Injured by Subject Imports from Thailand and Cambodia is Not Supported by Substantial Evidence and is Otherwise Not in Accordance With Law**

Because the Commission found that subject imports from Cambodia and Thailand were negligible, it did not conduct a material injury analysis for these countries. As detailed above, the Commission's negligibility analysis is not supported by substantial evidence and is otherwise contrary to law. The Commission's failure to conduct a material injury analysis with respect to these countries is thus also not supported by substantial evidence and is otherwise not in accordance with law. Accordingly, the court should direct the Commission to conduct a material injury analysis for Cambodia and Thailand if it finds on remand that subject imports from these countries are not negligible.

## VII.    CONCLUSION

For the reasons described above, Plaintiff urges the court to remand the *Final Determination* to the Commission for reconsideration or further explanation.

Respectfully submitted:

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Stephanie M. Bell, Esq.
Kimberly A. Reynolds, Esq.
Stephen A. Morrison, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036

*Counsel to the American Alliance for Solar Manufacturing Trade Committee*

Dated: January 14, 2026

CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for the Memorandum of Points and Authorities in Support of Plaintiff The American Alliance for Solar Manufacturing Trade Committee's Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 8,566 words.

*/s/ Timothy C. Brightbill*
(Signature of Attorney)

Timothy C. Brightbill
(Name of Attorney)

The American Alliance for Solar Manufacturing Trade Committee
(Representative Of)

January 14, 2026
(Date)