*PUBLIC VERSION*

## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE MARK A. BARNETT

Court No. 25-00163-MAB

**AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE,**

*Plaintiff,*

v.

**UNITED STATES,**

*Defendant,*

and

**BYD AMERICA LLC, CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD., CANADIAN SOLAR US MODULE MANUFACTURING CORPORATION, RUNERGY PV TECHNOLOGY (THAILAND) CO., LTD., RUNERGY USA TRADING LLC, RUNERGY ALABAMA INC., TRINA SOLAR U.S., INC., and TRINA SOLAR SCIENCE AND TECHNOLOGY (THAILAND) LTD.,**

*Defendant-Intervenors.*

**DEFENDANT UNITED STATES INTERNATIONAL TRADE COMMISSION'S NONCONFIDENTIAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

ANTHONY C. FAMIGLIETTI
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-2520
Facsimile: (202) 205-3111
anthony.famiglietti@usitc.gov

MARGARET D. MACDONALD
General Counsel
Telephone:  (202) 205-2561
margaret.macdonald@usitc.gov

KARL VON SCHRILTZ
Assistant General Counsel for Litigation
Telephone: (202) 205-3096
karl.vonschriltz@usitc.gov

**DATED:  May 15, 2026**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................iv

I.    INTRODUCTION ...............................................................................................1

II.   STATEMENT PURSUANT TO RULE 56.2 ....................................................1

      A.    Administrative Determinations Under Review ................................1

      B.    Questions Presented and Summary of Argument ...........................2

            1.    Was the Commission's Determination that Subject Imports
                  from Cambodia and Thailand Were Negligible for Purposes
                  of the Commission's Present Material Injury Analysis
                  Reasonable and in Accordance with Law? .............................2

III.  STATEMENT OF FACTS ..................................................................................5

      A.    Commerce's Circumvention Findings and the Tariff Holiday ......6

      B.    The Commission's Calculation of Import Volumes and
            Negligibility ......................................................................................13

IV.   STANDARD OF REVIEW ..............................................................................16

V.    ARGUMENT .....................................................................................................18

      A.    Legal Framework for Negligibility ..................................................18

      B.    The Commission's Methodology for Calculating Negligibility
            Was Reasonable, In Accordance with Law, and Rationally
            Connected to the Facts on the Record .............................................19

            1.    Because the Commission's Methodology for Measuring
                  Subject Import Volume from Cambodia and Thailand Was
                  Reasonable, the Court Should Affirm It ..................................19

            2.    The Commission Reasonably Relied on Questionnaire Data
                  as the Best Information Available on the Volume of
                  Subject Imports from Cambodia and Thailand.........................21

            3.    The Commission's Methodology Treating Appendix IV
                  Entries as Circumventing Nonsubject Merchandise Was
                  Reasonable and Supported by Substantial Evidence . ............23

            4.    The Commission Properly Considered NE Solar's Imports
                  as Circumventing Nonsubject Merchandise Pursuant to
                  Commerce's Final Circumvention Determinations ................31

**TABLE OF CONTENTS (cont'd)**

5.    The Commission Reasonably Explained Its Rejection of
      Plaintiff's Alternative Methodology ........................................................35

**VI.    CONCLUSION** ................................................................................................**38**

iii

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Al Tech Specialty Steel Corp. v. United States*,
27 CIT 1791 (2003) ..............................................................................................27

*Aluminum Extrusions Fair Trade Comm. v. United States*,
36 CIT 1370 (2012) ..............................................................................................19

*Arlanxeo USA LLC v. United States*,
389 F. Supp. 3d 1330 (Ct. Int'l Trade 2019), *aff'd*, 819 F. App'x 925 (Fed.
Cir. 2020) .............................................................................................................19

*Autoliv ASP, Inc. v. United States*,
422 F. Supp. 3d 1295 (Ct. Int'l Trade 2019) .......................................................33

*Co-Steel Raritan v. Int'l Trade Comm'n*,
357 F.3d 1294 (Fed. Cir. 2004)......................................................................28, 29

*Coal. of Gulf Shrimp Indus. v. United States*,
71 F. Supp. 3d 1356 (Ct. Int'l Trade 2015) ...........................................................3

*Consol. Fibers, Inc. v. United States*,
32 CIT 24, 535 F. Supp. 2d 1345 (2008)..............................................................23

*Consolo v. Fed. Mar. Comm'n*,
383 U.S. 607 (1966).............................................................................................16

*Deacero S.A. de C.V. v. United States*,
942 F. Supp. 2d 1321 (Ct. Int'l Trade 2013) .......................................................33

*Full Member Subgrp. of Am. Inst. of Steel Constr., LLC v. United States*,
81 F.4th 1242 (Fed. Cir. 2023) ............................................................................32

*Hitachi Metals, Ltd. v. United States*,
949 F.3d 710 (Fed. Cir. 2020).........................................................................16, 17

*Jeld-Wen, Inc. v. United States*,
567 F. Supp. 3d 1344 (Ct. Int'l Trade 2022) .......................................................28

*JMC Steel Grp. v. United States*,
70 F. Supp. 3d 1309 (Ct. Int'l Trade 2015) ......................................................3, 17

*Louis Dreyfus Citrus, Inc. v. United States*,
31 CIT 964, 495 F. Supp. 2d 1338 (2007)............................................................33

*Mexichem Fluor Inc. v. United States*,
179 F. Supp. 3d 1238 (Ct. Int'l Trade 2016) ..................................................35, 36

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                       **Page(s)**

*Nagase & Co. v. United States,*
628 F. Supp. 3d 1326 (Ct. Int'l Trade 2023) ...........................................................16

*Navneet Publ'ns (India) Ltd. v. United States,*
32 CIT 169 (2008) .....................................................................................................21

*Negev Phosphates, Ltd. v. Dep't of Commerce,*
12 CIT 1074, 699 F. Supp. 938 (1988) ......................................................................31

*Nippon Steel Corp. v. United States,*
458 F.3d 1345 (Fed. Cir. 2006) ...........................................................................16, 17

*Nucor Corp. v. United States,*
28 CIT 188, 318 F. Supp. 2d 1207 (2004) .................................................................17

*PAO TMK v. United States,*
No. 21-00532, 2023 WL 6939242 (Ct. Int'l Trade Oct. 12, 2023) ...........................21

*PAO TMK v. United States,*
No. 21-00532, 2024 WL 4579256 (Ct. Int'l Trade Oct. 25, 2024) ......................21, 22

*Shandong TTCA Biochem. Co. v. United States,*
35 CIT 545, 774 F. Supp. 2d 1317 (2011) ......................................................3, 35, 36

*Timken U.S. Corp. v. United States,*
421 F.3d 1350 (Fed. Cir. 2005) .................................................................................17

*U.K. Carbon & Graphite Co. v. United States,*
37 CIT 1295 (2013) ...................................................................................................33

*U.S. Aluminum Extruders Coal. v. United States,*
777 F. Supp. 3d 1344 (Ct. Int'l Trade 2025) ...............................18, 19, 28, 29, 35

*Universal Camera Corp. v. NLRB,*
340 U.S. 474 (1951) ..................................................................................................16

*US Magnesium LLC v. United States,*
36 CIT 690 (2012) .....................................................................................................17

*U.S. Steel Grp., v. United States,*
96 F.3d 1352 (Fed. Cir. 1996) ...................................................................................17

*USEC Inc. v. United States,*
25 CIT 49, 132 F. Supp. 2d 1 (2001) ...................................................................32, 33

*USEC Inc. v. United States,*
34 F. App'x 725 (Fed. Cir. 2002) ..............................................................................32

## TABLE OF AUTHORITIES (cont'd)

**Cases (cont'd)**                                                                                      **Page(s)**

*Whirlpool Corp. v. United States*,
  37 CIT 1775 (2013) ............................................................................................................3, 19

**Statutes**

18 U.S.C. § 1001..................................................................................................................24

19 U.S.C. § 1516a(b)(1)(B)(i)...............................................................................................16

19 U.S.C. § 1671e(b)(2)..........................................................................................................6

19 U.S.C. § 1673e(b)(2)..........................................................................................................6

19 U.S.C. § 1677(24)(A)..........................................................................................................1

19 U.S.C. § 1677(24)(A)(i)................................................................................................2, 18

19 U.S.C. § 1677(24)(A)(ii)...................................................................................................18

19 U.S.C. § 1677(24)(C)...........................................................................................4, 18, 30

19 U.S.C. § 1677e(a)..................................................................................................4, 5, 34

19 U.S.C. § 3512(d)...............................................................................................................18

28 U.S.C. § 2639(a)(1)...........................................................................................................16

**Legislative History Materials**

Statement of Administrative Authority accompanying the Uruguay Round
  Agreements Act, H.R. Rep. No. 103-316, vol. I (1994) ........................................17, 18, 21, 30

**U.S. International Trade Commission Publications**

*Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Czech
  Republic (Czechia)*,
  Inv. No. 731-TA-1529 (Final), USITC Pub. 5183 (Apr. 2021)...............................................21

*Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Korea,
  Russia, and Ukraine*,
  Inv. Nos. 701-TA-654-655 and 731-TA-1530-1532 (Final), USITC Pub. 5222
  (Aug. 2021)............................................................................................................................21

*Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe from Russia*,
  Inv. Nos. 701-TA-655 and 731-TA-1531 (Final) (Remand), USITC Pub. 5495
  (Feb. 2024)............................................................................................................................21

## I.    INTRODUCTION

Defendant United States, by and through the U.S. International Trade Commission ("Commission"), opposes the Motion for Judgment on the Agency Record filed by the American Alliance for Solar Manufacturing Trade Committee ("Plaintiff").  The Commission respectfully requests that the Court affirm the Commission's final affirmative determinations regarding crystalline silicon photovoltaic ("CSPV") cells, whether or not assembled into modules, from Cambodia, Malaysia, Thailand, and Vietnam because they are supported by substantial evidence and in accordance with law.

## II.    STATEMENT PURSUANT TO RULE 56.2

### A.    Administrative Determinations Under Review

Plaintiff challenges the Commission's final determinations that an industry in the United States was materially injured by reason of imports of CSPV cells and modules from Malaysia and Vietnam, and threatened with material injury by reason of imports from Cambodia and Thailand.  Specifically, Plaintiff challenges the Commission's findings that the volumes of subject imports from Cambodia and Thailand were below the statutory negligibility threshold set out in 19 U.S.C. § 1677(24)(A), and therefore negligible for purposes of the Commission's analysis of present material injury.  The public version of the Commission's Views are contained in *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-TA-722-725, 731-TA-1690-93 (Final), USITC Pub. 5631 (June 2025) (PR312).[1]  Notice of the determinations was published in the Federal Register on June 13, 2025.  90 Fed. Reg. 25,076 (PR355).

---

[1] Public record citations are indicated by "PR," referring to list number 1 on the index of the administrative record, and confidential record citations are indicated by "CR," referring to

*[Footnote continued on next page]*

- 1 -

PROPRIETARY INFORMATION SUBJECT
TO PROTECTIVE ORDER REDACTED

B.     **Questions Presented and Summary of Argument**

1.     **Was the Commission's Determination that Subject Imports from Cambodia and Thailand Were Negligible for Purposes of the Commission's Present Material Injury Analysis Reasonable and in Accordance with Law?**

Yes. The Commission reasonably found that imports from Cambodia were [ █ ] percent, and imports from Thailand were [ █ ] percent, of total imports of subject merchandise during the 12 months preceding the filing of the petitions. *See* 19 U.S.C. § 1677(24)(A)(i).

Plaintiff challenges the Commission's methodology for determining the volume of subject imports of CSPV cells and modules from Cambodia and Thailand, respectively, that provided the numerators for the negligibility calculations. Plaintiff advances three arguments. First, it argues that the questionnaire data the Commission utilized to calculate the volume of subject imports from Cambodia and Thailand were unreliable. Second, it argues that the Commission erred in treating imports of CSPV cells and modules from Cambodia and Thailand entered under Appendix IV to the U.S. Department of Commerce's ("Commerce") final circumvention determinations as nonsubject merchandise. Third, it argues that the Commission erred in treating imports of CSPV cells and modules from Cambodian producer and exporter New East Solar Co., Ltd. ("NE Solar") as nonsubject imports from China found by Commerce to have circumvented the existing order on such imports from China and using Census-edited Customs records to calculate imports from NE Solar in the absence of NE Solar's questionnaire response. Contrary to these arguments, the Commission's methodology for finding subject imports from Cambodia and Thailand negligible was reasonable and should be affirmed.

_____

list number 2 on the index of the administrative record. Accordingly, citations to the Commission's public views and publication are to record document PR312 ("USITC Pub. 5631"), and citations to the confidential Commission Views (hereinafter, "Views") are to record document CR514.

The Court of International Trade has recognized that "{t}he ITC has broad discretion in choosing a methodology for measuring volume." *Whirlpool Corp. v. United States*, 37 CIT 1775, 1786 (2013) (citation omitted). Accordingly, "{w}hen presented with a challenge to the Commission's methodology, the court examines 'not what methodology {plaintiff} would prefer, but ... whether the methodology actually used by the Commission was reasonable.'" *JMC Steel Grp. v. United States*, 70 F. Supp. 3d 1309, 1316 n.4 (Ct. Int'l Trade 2015) (quoting *Shandong TTCA Biochem. Co. v. United States*, 35 CIT 545, 559, 774 F. Supp. 2d 1317, 1329-30 (2011)); *see also Coal. of Gulf Shrimp Indus. v. United States*, 71 F. Supp. 3d 1356, 1367 (Ct. Int'l Trade 2015) ("When evaluating challenges to the ITC's choice of methodology the court will affirm the chosen methodology as long as it is reasonable.").

Because the Commission's methodology for measuring subject imports from Cambodia and Thailand was reasonable, the Court should affirm it. First, the Commission properly treated imports of CSPV cells and modules reported by responding importers in these investigations as entered under Appendix IV of Commerce's final circumvention determinations as out-of-scope merchandise. These entries were "circumventing" the existing China AD/CVD orders, even if no cash deposit was required, and thus, were outside the scope of the present investigations. The language of Commerce's final circumvention determinations and other evidence provided by several respondent parties supported the Commission's finding that those responding importers' merchandise entered under Appendix IV was within the scope of the existing orders on CSPV products from China, and accordingly, outside the scope of these investigations. As the Commission explained, President Biden issued a proclamation declaring a 24-month "tariff holiday" on imports of CSPV products from Cambodia, Malaysia, Thailand, and Vietnam found by Commerce to have circumvented the antidumping and countervailing duty orders on CSPV

- 3 -

products from China.  Views at 82-83.  Commerce's determination explained that such imports entered under Appendix IV would be subject to duties under the orders on CSPV cells and modules from China if not incorporated into domestically produced solar products within 180 days, in accordance with the tariff holiday.  Views at 55.  Moreover, even if importers entered some volume of subject imports under Appendix IV, as Plaintiff contends, the Commission's treatment of entries in these investigations reported under Appendix IV as circumventing imports outside the scope was within the discretion afforded the Commission under the statute to make "reasonable estimates on the basis of available statistics."  19 U.S.C. § 1677(24)(C).

Second, the Commission reasonably found that official import statistics substantially overstated the volume of subject imports from Cambodia and Thailand because they included imports from those countries that were outside the scope of these investigations, including those entered under Appendix IV.  Accordingly, the Commission's reliance on questionnaire data as the best information available concerning the volume of subject imports from Cambodia and Thailand was reasonable and supported by substantial evidence.

Finally, the Commission reasonably treated imports of CSPV cells and modules from NE Solar as out-of-scope circumventing imports pursuant to Commerce's final circumvention determinations.  Because NE Solar, one of the largest importers of CSPV products from Cambodia, did not participate in these investigations, the Commission used proprietary Census-edited Customs records to determine the volume of NE Solar's imports during the negligibility period and compiled the data into a Constructed Questionnaire response that was available to the parties on the confidential administrative record.  This was entirely consistent with the statutory directive that if "necessary information is not available on the record" the Commission shall . . . use the facts otherwise available in reaching" the required determination.  *See* 19 U.S.C.

- 4 -

§ 1677e(a). Nevertheless, the Commission reasonably excluded CSPV products imported from NE Solar from the numerator of its negligibility calculation pursuant to Commerce's affirmative circumvention determination that such imports were subject to the orders on CSPV cells and modules from China, and thus outside the scope of the investigations of CSPV cells and modules from Cambodia. Views at 57-58. For all these reasons, the Court should reject Plaintiff's arguments and affirm the Commission's negligibility methodology and finding that subject imports from Cambodia and Thailand were negligible for purposes of present material injury.

## III.    STATEMENT OF FACTS

In June 2025, the Commission determined that an industry in the United States was materially injured by reason of subject imports from Malaysia and Vietnam, and threatened with material injury by reason of subject imports from Cambodia and Thailand. In its affirmative final determinations, the Commission defined a single domestic like product consisting of CSPV cells and modules, coextensive with the scope, and defined the domestic industry as all domestic producers of CSPV cells and modules. Plaintiff does not challenge those findings.

With respect to negligibility, the Commission found that subject imports from Malaysia and Vietnam were not negligible and that subject imports from Cambodia and Thailand were negligible for purposes of present material injury but not for threat. Accordingly, the Commission cumulated subject imports from Malaysia and Vietnam for its analysis of present material injury and determined that the domestic industry was materially injured by reason of those imports. For threat, the Commission cumulated imports from all four subject countries and determined that the domestic industry was threatened with imminent material injury by reason of such imports. *See generally* Views 105-27. Accordingly, antidumping and countervailing duty orders were imposed on subject imports from Cambodia, Malaysia, Thailand, and Vietnam.

Having prevailed before the Commission, Plaintiff already has relief from subject imports from Cambodia and Thailand.  What Plaintiff seeks in challenging the Commission's negligibility analysis is to move the effective date of the orders from April 25, 2025, the publication date of the Commission's determinations as applicable to threat determinations, to October 4, 2024, the publication date of Commerce's preliminary determinations as applicable to present material injury determinations in the countervailing duty ("CVD") investigations, and December 4, 2024, the publication date of Commerce's preliminary determinations in the antidumping duty ("AD") investigations.  *See* 19 U.S.C. §§ 1671e(b)(2), 1673e(b)(2)).  We summarize the pertinent facts below.

### A.    Commerce's Circumvention Findings and the Tariff Holiday

The scope of these investigations specifically excluded all products covered by the scope of the antidumping and countervailing duty orders on *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 77 Fed. Reg. 73,018 (Dec. 7, 2012) (PR124); and *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Countervailing Duty Order*, 77 Fed. Reg. 73,017 (December 7, 2012) (PR123) (collectively, the "*CSPV I* orders").  *See, e.g.*, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia: Final Affirmative Determination of Sales at Less Than Fair Value*, 90 Fed. Reg. 17,392 (Dep't of Comm. Apr. 25, 2025) (PR278).  The scopes of the antidumping and countervailing duty investigations were identical for each subject country.  Views at 13-14 n.28.

On April 1, 2022, Commerce initiated an anticircumvention investigation after the filing of a petition by Auxin Solar Inc. to determine whether imports of certain solar products from Cambodia, Malaysia, Thailand, and Vietnam were circumventing the *CSPV I* orders.  Views at

14 (citing *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 19,071, 19,072 (Dep't of Comm. Apr. 1, 2022) (PR133).

On June 6, 2022, before Commerce issued its preliminary circumvention determinations, the President issued a proclamation declaring an emergency and authorized the Secretary of Commerce to take action to permit, for a 24-month period, imports of CSPV products from Cambodia, Malaysia, Thailand, and Vietnam to be free of any antidumping or countervailing duties resulting from Commerce's final circumvention determinations (the "tariff holiday"). Views at 14 & n.29 (citing *Presidential Proclamation 10414 of June 6, 2022, Declaration of Emergency and Authorization for Temporary Extensions of Time and Duty-Free Importation of Solar Cells and Modules from Southeast Asia*, 87 Fed. Reg. 35,087 (June 9, 2022) (PR127)).  On September 16, 2022, Commerce issued final rules establishing procedures to implement the tariff holiday and directed Customs and Border Protection ("CBP") to discontinue the collection of cash deposits that had begun upon the initiation of the circumvention proceedings.  Views at 14-15 & n.31 (citing *Procedures Covering Suspension of Liquidation, Duties & Estimated Duties in Accord with Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Dep't of Comm. Sept. 16, 2022) (PR135)).

Effective August 23, 2023, Commerce made final affirmative determinations of circumvention with respect to certain imports of CSPV cells and modules from Cambodia, Malaysia, Thailand, and Vietnam.  Views at 15 & n.33 (citing *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, From the People's Republic of China: Final Scope Determination and Final Affirmative*

- 7 -

*Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419, 57,420-21 (Dep't of Comm. Aug. 23, 2023) (PR141) (hereinafter "*Final Circumvention Determinations*")).  In the circumventing proceedings, Commerce reported that it individually investigated eight companies in the four countries and found that five of eight companies were circumventing the *CSPV I* orders:  BYD Hong Kong (Cambodia), NE Solar (Cambodia), Canadian Solar (Thailand), Trina Solar (Thailand), and Vina Solar (Vietnam).  Views at 15 (citing *Final Circumvention Determinations*, 88 Fed. Reg. at 57,420-21).

The Commission summarized that "Commerce's circumvention findings covered (1) with respect to CSPV cells, imports that were produced in Cambodia, Malaysia, Thailand, and Vietnam from wafers produced in China," and "(2) with respect to CSPV modules/laminates/panels, imports from Cambodia, Malaysia and Thailand produced using wafers produced in China where more than two of the following six components in the module/laminate/panel were produced in China:  (a) silver paste, (b) aluminum frames, (c) glass, (d) backsheets, (e) ethylene vinyl acetate sheets, and (f) junction boxes."  Views at 16 & n.34 (citing *Final Circumvention Determinations*, 88 Fed. Reg. at 57,420).  Commerce stated that if this "wafer-plus-three" requirement was not satisfied, then the merchandise was not subject to the circumvention inquiry, even if the cells were produced in one of the subject countries from wafers produced in China.  Views at 16 & n.36 (citing *Final Circumvention Determinations*, 88 Fed. Reg. at 57,419, 57,421-23).

Commerce, however, determined that entries subject to the affirmative circumvention findings would not require AD/CVD cash deposits for the duration of the emergency declared in the Presidential Proclamation, if the imports entered on or before the end of the emergency (June 6, 2024) and were utilized in U.S. solar energy projects within 180 days thereafter.  Views at 16.

- 8 -

Commerce also included several Appendices in its circumvention determinations to provide a certification mechanism for exporters and importers to establish that certain imports of CSPV cells and modules were not subject to duties.  Views at 16 (citing *Final Circumvention Determinations*, 88 Fed. Reg. at 57419, 57421-23).

Commerce's notice established "Appendix V" certificates that the three non-circumventing exporters could use for specific entries of CSPV cells and modules.  *Final Circumvention Determinations*, 88 Fed. Reg. at 57,419.[2]  Appendix V entries were not circumventing and thus were outside the scope of the *CSPV I* orders.  No importers from Cambodia or Thailand were eligible for Appendix V certifications.  *See Final Circumvention Determinations*, 88 Fed. Reg. at 57,427-31.

The notice also provided for "Appendix IV" certifications that importers or exporters could use to certify that their merchandise consisted of "applicable entries" eligible for the tariff holiday under the terms of the Presidential Proclamation.  To qualify for Appendix IV, importers or exporters had to certify that the cells or modules entering under Appendix IV:

(1)  were produced in Cambodia, Malaysia, Thailand, or Vietnam *using parts or components manufactured in China*;

(2)  were exported to the U.S. from Cambodia, Malaysia, Thailand, or Vietnam, without further assembly in another country;

(3)  absent the affirmative determination of circumvention, were not covered by the antidumping duty or countervailing duty orders on crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China*;*

(4)  were not covered by the AD order on CSPV products from Taiwan;

(5)  were entered into the U.S, or withdrawn from warehouse, for consumption before June 6, 2024; and

---

[2] These certifications required the importer or exporter to identify the producer and exporter of the entries as one of the companies found to be not circumventing.

(6)    if entered or withdrawn from warehouse, after November 15, 2022, the solar cells or modules had to be installed in the U.S. within 180 days after the end of the tariff holiday (December 3, 2024) or would face "snapback" of China circumvention AD/CVD duties.[3]

Views at 55 & n.188 (citing *Final Circumvention Determinations*, 88 Fed. Reg. at 57,425).

The Commission explained that "importers or exporters that utilized Appendix IV certified that their merchandise contained parts or components of Chinese origin that matched or surpassed thresholds that Commerce had determined were subject to its circumvention finding, and therefore, within the scope of the *CSPV I* orders."[4]  Views at 56.  This contrasted with

---

[3] See Final Circumvention Determinations, 88 Fed. Reg. at 57,425.

[4] Plaintiff asserts that the Commission took an overly "simplified view of the certification process."  Plaintiff's Brief at 27 ("Pl.Br.").  However, the Commission's understanding that entries made by responding importers in these investigations during the negligibility period under the Appendix IV certification regime were nonsubject merchandise was consistent with the testimony of several witnesses at its hearing.  *See* Transcript of April 15, 2025 Hearing ("Hearing Tr.") at 252 (PR251) (Lewis) ("But Appendix {IV} is very clearly a provision for importers of merchandise that was found to be circumventing to get a temporary and conditional exemption from the . . . duty deposit requirements."); Hearing Tr. at 259-60 (Hawkins) ("{O}ur understanding is that all entries entered with an Appendix {IV} certification by BYD were subject to the scope of *Solar I*.  So any entries that met the physical characteristics of this case were entered under the separate Appendix {VI} certification.").

Moreover, several respondents argued in their briefs that Appendix IV entries in these investigations were within the scope of the *CSPV I* orders.  For example, BYD argued that as "a matter of both fact and law, Appendix IV entries consist of merchandise covered by the scope of the affirmative Solar I AD/CVD circumvention findings on solar cells and modules made in Southeast Asia using Chinese components."  BYD Posthearing Brief at 3 (CR461).  It further asserted that "Appendix IV certifications certify that the merchandise is within the scope of Solar I by virtue of the circumvention findings but is conditionally exempted from AD/CVD requirements in light of the Proclamation and corresponding regulations."  BYD Posthearing Brief, Responses to Commission Questions at 11-12 (CR461).  Canadian Solar asserted that "Appendix IV entries are thus, by definition, considered within the scope of *Solar I* because they are described by the scope of the affirmative circumvention determinations, and thus cannot be subject to any other AD/CVD order."  Canadian Solar Prehearing Brief at 42 (CR440).  Canadian Solar further argued that the data in Appendix D of the Staff Report "correctly exclude imports from Thailand entered with an Appendix IV certification, which are by definition subject to the Solar I China orders."  Canadian Solar Posthearing Brief at 2 (CR464).  Runergy argued that under "Commerce's instructions in the circumvention rulings on solar cells and modules completed in and exported from the subject four countries, for entries of merchandise that is

[*Footnote continued on next page*]

- 10 -

Appendix VI, which as the Commission noted, "required importers/exporters to certify that the merchandise did not contain Chinese-origin wafers or, if they did contain Chinese-origin wafers, that they contained no more than two of six other inputs of Chinese origin." Views at 55-56. Essentially, importers and exporters that used Appendix VI certified that their entries did not contain the relevant Chinese-origin components to be within the scope of Commerce's circumvention determinations, and thus, were outside the scope of the *CSPV I* orders.

Commerce also stated that "on the adverse facts available used, we determine that the companies listed in Appendix II to this notice exported inquiry merchandise and that U.S. entries of that merchandise are circumventing the {*CSPV I*} Orders." *Final Circumvention Determinations*, 88 Fed. Reg. at 57,421. Appendix II included NE Solar (Cambodia), as well as several companies from Malaysia, Thailand, and Vietnam. Those companies listed in Appendix II were ineligible to use Appendix V or VI certifications. *See id.* at 57,425.

When the Commission initially issued the U.S. importers' questionnaires in the final phase of these investigations it instructed responding firms to list circumventing imports as nonsubject "unless the importer provided an appendix IV or VI certification of non-circumvention from an eligible supplier and that certification was accepted by Commerce and CBP." Views at 17 (quoting Blank U.S. Importers' Questionnaire (PR183)). Canadian Solar contacted the Commission asserting that the instruction to list imports with an Appendix IV certification was incorrect because "Appendix IV entries are circumventing imports and thus subject to the China solar cell orders." Views at 17-18 (quoting Letter from Hogan Lovells on

covered by *Solar I Orders*, importers submit Appendix IV certifications to U.S. Customs and Border Protection for 'Applicable Entries,' in which importers certify to meet the conditions for AD CVD relief, as specified in Presidential Proclamation 104149 (which essentially requires compliance with two deadlines: entry by June 6, 2024 and installation by December 3, 2024)." Runergy Posthearing Brief at 4 (CR466).

- 11 -

Behalf of Canadian Solar to Secretary Lisa Barton (CR452)).[5]  After consulting with Plaintiff

and respondent parties, the Commission issued supplemental questionnaire instructions in an

email requesting that importers provide two sets of import data, one treating Appendix IV entries

as subject, and another treating Appendix IV entries as nonsubject.  Views at 18 (citing

Commission Staff Email to Parties (PR320)).[6]

Responding importers covering the vast majority of imports from Thailand and

Cambodia provided supplemental questionnaire responses in which they attested that their

entries under Appendix IV during the period of investigation were subject to the scope of the

*CSPV I* orders.  As noted in the Staff Report, Astronergy, BYD, Canadian Solar (USA),

---

[5] Specifically, Canadian Solar contended that "Appendix IV imports entered between April 2022 and June 2024 should be classified by the Commission as nonsubject{.}"  Letter from Hogan Lovells on Behalf of Canadian Solar to Secretary Lisa Barton at 2 (CR454).  Canadian Solar further asserted that for calculating nonsubject import volumes, the "best methodology to do so, based on how the Commission has determined to collect the data in the U.S. Importers' Questionnaire, is to classify as nonsubject all import, shipment, and pricing product data reporting for imports with Appendix IV certifications."  *Id.* at 5.

[6] Commission staff also instructed importers to include the following suggested language on the cover page of its submission:

> While we have certified the accuracy of the reported data, we do not by virtue of this certification agree with the classification of certain appendix IV imports (provided in a separate document) as "subject" to these investigations. These imports between April 2022 and June 2024 should be classified by the Commission as nonsubject for the following reasons: XXXX.

Commission staff further instructed:

> Please also indicate in that coverage page whether it was all of the firm's appendix IV imports, or a subset of its appendix IV imports. Additionally, indicate what portion of these imports were actually subject to duties (reported in the 2nd submission isolating the Appendix IV imports that you wish to be classified as nonsubject) under the China orders or whether those imports effectively were imported free of AD/CVD duties due to the President's tariff holiday.

Commission Staff Email to Parties (PR320).

Invenergy Solar Equipment Management LLC ("Invenergy"), LONGi, and Zhongli reported

CSPV cells and modules for which they requested that the Commission treat their Appendix IV

entries during the period of investigation as "nonsubject imports." *See* Confidential Staff Report

(CR495) (hereinafter "Staff Report") at 4.5 n.5.[7]

> **B.** **The Commission's Calculation of Import Volumes and Negligibility**

In these investigations, the Commission considered whether imports in any of the subject

investigations were negligible for the 12-month period immediately preceding the filing of the

petition (April 2023-March 2024). Views at 58. The Commission first addressed how to

consider Appendix IV entries and which data to use to assess each subject country's import

volumes for the numerator, and the volume of total imports for the denominator, to calculate

negligibility. Views at 54. The Commission noted, as it had in the preliminary phase of the

investigations, that the scope of the investigations excluded "certain imports of CSPV products

from the four subject countries that are covered by the scope of the *CSPV I* orders on China,

because they are subject to Commerce's August 23, 2023, final determinations that they were

circumventing the *CSPV I* orders on China." Views at 54. The Commission further explained

that "the non-circumventing imports from the four subject countries are subject to these

investigations, but the circumventing imports are not." Views at 54.

The Commission found in these investigations that "{i}mporters or exporters that utilized

Appendix IV certified that their merchandise contained parts or components of Chinese origin

---

[7] In addition, Runergy and Trina attested that their imports entered under Appendix IV during the period of investigation were nonsubject merchandise. *See* Hearing Tr. at 239-40 (Yang) (PR251) ("{F}or Runergy, all of Appendix 4 imports were within the scope of {Solar I} so we only had Appendix 4 imports in the relevant 12 month period . . . And for Runergy we only had one option which was Appendix 4 certification for imports."); Hearing Tr. at 260 (Freed) ("All of Trina's Certification 4 entries could not have been eligible for Certification 6. . . . It really would make no sense to use Certification 4 if you could use Certification 6.").

that matched or surpassed thresholds that Commerce had determined were subject to its

circumvention finding and, therefore, within the scope of the *CSPV I* orders." Views at 56. The

Commission explained that this was unlike Appendix V, which could only be used by the three

companies that Commerce determined not to be circumventing and were limited to certain

imports from Malaysia and Vietnam. The Commission further explained that this was also

unlike Appendix VI, which "required importers/exporters to certify that the merchandise did not

contain Chinese-origin wafers or, if they did contain Chinese-origin wafers, that they contained

no more than two of six other inputs of Chinese origin" such that the imports were not subject to

the *CSPV I* orders. *See* Views at 55-56 (citing *Final Circumvention Determinations*, 88 Fed. Reg

at 57,427, 57,431-33).

The Commission acknowledged that "some importers *may have* used Appendix IV to

import non-circumventing merchandise," but found that the record did not contain information

showing that any responding importer had indeed done so. Views at 56 (emphasis added).

Accordingly, the Commission found that "importer questionnaire data, as supplemented with

data from proprietary, Census-edited Customs records, are the best information available on the

record for purposes of calculating the volume of subject imports from each subject country."

Views at 57. By contrast, as the Commission noted in summarizing one respondent's argument,

"it is impossible to use official import statistics to calculate the numerator for purposes of the

negligibility analysis because they include significant volumes of out-of-scope merchandise."

Views at 53. This was because substantial volumes of imports from Cambodia, Malaysia,

Thailand, and Vietnam included in official import statistics were circumventing imports that

entered under Appendix IV certificates.

PROPRIETARY INFORMATION SUBJECT
TO PROTECTIVE ORDER REDACTED

For Cambodia, the Commission acknowledged that it did not receive a questionnaire response from NE Solar, one of the largest importers of CSPV products, and that Commission staff used proprietary, Census-edited Customs records to calculate import data for NE Solar. Views at 57. The Commission explained that "because Commerce made a final determination that imports by NE Solar circumvented the *CSPV I* orders" the Commission treated NE Solar's imports as nonsubject merchandise. Views at 53.

Based on the questionnaire data, adjusted with data from proprietary Census-edited Customs records, the Commission found that during the negligibility period imports from Cambodia subject to the AD and CVD investigations accounted for [ ] percent of total imports, imports from Malaysia subject to the AD investigations accounted for [ ] percent of total imports, imports from Malaysia subject to the CVD investigations accounted for [ ] percent of total imports, imports from Thailand subject to the AD and CVD investigations accounted for [ ] percent of total imports, and imports from Vietnam subject to the AD and CVD investigations accounted for [ ] percent of total imports. Views at 58-59. The Commission also found that in the aggregate, subject imports from Cambodia and Thailand accounted for [ ] percent of total imports, which was below the applicable statutory thresholds for aggregated imports from individually negligible country sources in the AD and CVD investigations (*i.e.*, seven percent). Views at 59.

Consequently, the Commission found that imports from Cambodia and Thailand were negligible for purposes of its present material injury analysis. Views at 59. The Commission, however, determined that imports from Cambodia and Thailand were each likely to imminently exceed the negligibility threshold, and were therefore not negligible for purposes of analyzing threat of material injury. Views at 59-62. Ultimately, the Commission determined that a

- 15 -

domestic industry was threatened with material injury by reason of subject imports from Cambodia and Thailand. *See generally* Views at 105-27.

## IV.    STANDARD OF REVIEW

Under the Tariff Act of 1930, this Court reviews the Commission's final antidumping and countervailing duty determinations to assess whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The Commission's determinations are presumed to be correct, and the burden is on the party challenging the determinations to demonstrate otherwise. *See* 28 U.S.C. § 2639(a)(1).

Under the substantial evidence standard, the reviewing courts defer to the Commission's reasoned fact-finding and analysis in injury investigations. *See, e.g.*, *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1354-55 (Fed. Cir. 2006). Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Thus, under the substantial evidence standard, a court may not, "even as to matters not requiring expertise . . . displace the {agency's} choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). "{T}he question is not whether the court would have reached the same decision on the same record{;} rather, it is whether the administrative record as a whole permits the Commission's conclusion." *Nagase & Co. v. United States,* 628 F. Supp. 3d 1326, 1336-37 (Ct. Int'l Trade 2023). A court "must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if

- 16 -

some evidence detracts from the Commission's conclusion." *Hitachi Metals, Ltd. v. United States*, 949 F.3d 710, 716 (Fed. Cir. 2020).

In injury investigations, the Commission is the trier of fact. As such, "{i}t is the Commission's task to evaluate the evidence it collects during its investigation" and "{c}ertain decisions, such as the weight to be assigned a particular piece of evidence, lie at the core of that evaluative process." *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1357 (Fed. Cir. 1996). Accordingly, the Commission has "discretion to make reasonable interpretations of the evidence and to determine the overall significance of any particular factor in its analysis." *US Magnesium LLC v. United States*, 36 CIT 690, 692 (2012). As the Federal Circuit has stated, if "the totality of the evidence does not illuminate a black-and-white answer to a disputed issue, it is the role of the expert fact-finder—here the majority of the Presidentially-appointed, Senate-approved Commissioners—to decide which side's evidence to believe." *Nippon Steel*, 458 F.3d at 1359.

Since the Commission "is presumed to have considered all of the evidence on the record," it is "not required to explicitly address every piece of evidence presented by the parties" during an investigation. *Nucor Corp. v. United States*, 28 CIT 188, 234, 318 F. Supp. 2d 1207, 1247 (2004). Instead, the Commission need only address the "issues material to {its} determination" so that the "path of the agency may reasonably be discerned." Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, vol. I at 892 (1994) ("SAA"); *see also Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1354–57 (Fed. Cir. 2005). "When evaluating challenges to the ITC's choice of methodology," this Court "will affirm the chosen methodology as long as it is reasonable." *JMC Steel Grp.*, 70 F. Supp. 3d at 1316 n.4.

- 17 -

## V.    ARGUMENT

### A.    Legal Framework for Negligibility

The statute provides that imports from a subject country of merchandise corresponding to a domestic like product that account for less than 3 percent of all such merchandise imported into the United States during the most recent 12 months for which data are available preceding the filing of the petition shall be deemed negligible.  19 U.S.C. § 1677(24)(A)(i).  The statute further provides that subject imports from a single country which comprise less than 3 percent of total imports may not be considered negligible if there are several countries with negligible imports and the sum of such imports collectively accounted for more than 7 percent of total imports.  *Id.* at § 1677(24)(A)(ii).

Congress recognized that the Commission "may not have access to either complete questionnaire data or official import statistics conforming exactly to the Commission's like product{} designations," SAA at 856,[8] and explicitly authorized the Commission to make "reasonable estimates on the basis of available statistics" of pertinent import levels for purposes of deciding negligibility.  19 U.S.C. § 1677(24)(C).  In the SAA, Congress contemplated that "if available U.S. government import statistics concern a basket tariff provision that is broader than the like product designated by the Commission, the Commission may reasonably estimate a figure from the data available for the total imports corresponding to the like product."  SAA at 856.  Accordingly, this Court has recognized the discretion granted to the Commission in calculating negligibility.  *See U.S. Aluminum Extruders Coal. v. United States*, 777 F. Supp. 3d

---

[8] The Uruguay Round Agreements Act ("URAA") provides that the SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of {the URAA} in any judicial proceeding in which a question arises concerning such interpretation or application."  19 U.S.C. § 3512(d).

- 18 -

1344, 1352 (Ct. Int'l Trade 2025) (approvingly noting that "the Commission was faced with an incomplete data set and used its expertise to adjust official import statistics using questionnaire data"); *see also Arlanxeo USA LLC v. United States*, 389 F. Supp. 3d 1330, 1342-43 (Ct. Int'l Trade 2019), *aff'd*, 819 F. App'x 925 (Fed. Cir. 2020).

> **B.  The Commission's Methodology for Calculating Negligibility Was Reasonable, in Accordance with Law, and Rationally Connected to the Facts on the Record**
>
> **1.  Because the Commission's Methodology for Measuring Subject Import Volume from Cambodia and Thailand Was Reasonable, the Court Should Affirm It**

In this appeal, Plaintiff challenges the Commission's methodology for measuring the volume of subject imports from Cambodia and Thailand for purposes of the numerator of its negligibility calculation.  The Court of International Trade has recognized that "{t}he ITC has 'broad discretion' in choosing a methodology for measuring volume." *Whirlpool,* 37 CIT at 1786 (quoting *Aluminum Extrusions Fair Trade Comm. v. United States,* 36 CIT 1370, 1384 (2012)).  "As long as the agency's methodology and procedures are a reasonable means of effectuating the statutory purpose . . . the court will not . . . question the agency's methodology." *Id.*

Here, the Commission's methodology for measuring the volume of subject imports from Cambodia and Thailand for the numerator of its negligibility calculation was reasonable.  Commerce defined the scope of the investigations to exclude imports of CSPV cells and modules from Cambodia and Thailand subject to its affirmative circumvention determinations and thus the *CSPV I* orders.  Views at 13.  The Commission explained that the scope of these investigations explicitly excludes any merchandise within the scope of *CSPV I*.  Views at 56.  Accordingly, to calculate the volume of subject imports from Cambodia and Thailand, the Commission took the volume of imports of CSPV cells and modules from each country reported

in the importers' questionnaires and deducted the volume of imports reported as entered under Appendix IV of Commerce's final circumvention determinations, and thus certified as subject to *CSPV I*. Views at 55-57. The Commission did not include in the volume of subject imports from Cambodia imports from NE Solar, as to which Commerce had made an affirmative circumvention determination. Views at 57-58.

The Commission reasonably relied on the volume of imports of CSPV cells and modules from Cambodia and Thailand reported by the importers' questionnaires because those questionnaires covered all or nearly all such imports and enabled the Commission to remove imports entered under Appendix IV as imports within the scope of *CSPV I*. Views at 57. The Commission reasonably treated imports that responding importers reportedly entered under Appendix IV as circumventing imports within the scope of the *CSPV I* orders, and therefore nonsubject for purposes of the investigations, because such entries were made pursuant to certifications that they satisfied the definition of circumventing imports and there was no evidence on the record that subject merchandise had been entered under Appendix IV. *See* Views at 56 n.190. The Commission appropriately excluded imports from NE Solar from the volume of subject imports from Cambodia based on Commerce's final circumvention determination that all such imports were circumventing imports, required to enter under Appendix IV, and thus within the scope of *CSPV I*. Views at 57-58. Because the Commission's methodology for measuring the volume of subject imports from Cambodia and Thailand was reasonable, the Court should affirm the Commission's finding, based on that methodology, that subject imports from each of the countries were negligible for purposes of present material injury. As discussed below, none of Plaintiff's arguments to the contrary withstand scrutiny.

**2.    The Commission Reasonably Relied on Questionnaire Data as the Best Information Available on the Volume of Subject Imports from Cambodia and Thailand**

The Commission reasonably relied on questionnaire responses as the best information available on the volume of subject imports from Cambodia and Thailand, notwithstanding Plaintiff's unfounded assertion that the questionnaires were incomplete and unreliable. *See* Plaintiff's Brief ("Pl.Br.") at 16. The SAA expressly recognizes that the Commission may use questionnaire data when official import statistics do not conform to the scope of its investigations. SAA at 856 ("The Commission may not have access to either complete questionnaire data or official import statistics conforming exactly to the Commission's like product(s) designations{.}"). This Court has also recognized that the Commission may calculate import volumes for purposes of negligibility by making "reasonable estimates on the basis of available statistics." *Navneet Publ'ns (India) Ltd. v. United States*, 32 CIT 169, 176 (2008). Indeed, the Commission has frequently used questionnaire data to estimate subject import volumes for purposes of its negligibility analysis in past cases.[9]

---

[9] *See, e.g., Seamless Carbon and Alloy Steel Standard, Line, and Pressure Pipe ("SSLPP") from Russia*, Inv. Nos. 701-TA-655 and 731-TA-1531 (Final) (Remand), USITC Pub. 5495, at 8-10 (Feb. 2024) (finding importer questionnaire data as best information available for estimating subject imports from Germany and Mexico during negligibility period); *SSLPP from Czech Republic (Czechia)*, Inv. No. 731-TA-1529 (Final), USITC Pub. 5183, at 24-25 (Apr. 2021) (using importer questionnaire and official import statistics to determine subject imports from Czechia exceeded statutory negligibility threshold); *SSLPP from Korea, Russia, and Ukraine*, Inv. Nos. 701-TA-654-655 and 731-TA-1530-1532 (Final), USITC Pub. 5222, at 4-5 (Aug. 2021) (adopting analysis from decision in leading investigations that importer questionnaire data was best information available for calculating subject import volumes from Russia, and official import statistics were best information available for calculating subject import volumes from Korea and Ukraine). The Commission's use of different methodologies to calculate negligibility for the subject countries were ultimately affirmed after remand. *See PAO TMK v. United States*, No. 21-00532, 2023 WL 6939242, at *3-*6 (Ct. Int'l Trade Oct. 12, 2023) (affirming Commission's negligibility determinations in part); *see also PAO TMK v. United*

[*Footnote continued on next page*]

PROPRIETARY INFORMATION SUBJECT
TO PROTECTIVE ORDER REDACTED

In this case, the Commission received usable questionnaire responses from 45 importers, whose data accounted for [    ] percent of U.S. imports from Cambodia, [         ] U.S. imports from Malaysia, [    ] percent of U.S. imports from Thailand, and [    ] percent of U.S. imports from Vietnam in 2024 under HTS statistical reporting numbers 8541.42.0010 and 8541.43.0010.  Views at 6-7.  Overall, importer questionnaire response data coverage was very high, accounting for [    ] percent of total imports reported in official U.S. import statistics.  Views at 7 n.18.  Thus, responding importers' reported imports of CSPV cells and modules from Cambodia and Thailand, and the volumes imported pursuant to Appendix IV, covered most such imports from Cambodia and nearly all such imports from Thailand, making questionnaire data a reliable basis for the Commission's calculation of the volume of subject imports from Cambodia and Thailand.

Nor were the importer questionnaire data "riddled with errors" as Plaintiff argues. Commission staff worked with importers to have them correct any deficiencies discovered in the data they reported and ultimately found that only a single responding importer, [

] had provided an unusable importer questionnaire response, whose data was excluded from the staff report.  Staff Report at 4.1 n.3 (CR495).

Moreover, given that official import statistics included all imports of CSPV cells and modules from Cambodia and Thailand, including those excluded from the scope by Commerce's circumvention determinations, the Commission reasonably found that questionnaire data was the best information available on the volume of subject imports.  As the Commission explained,

> {Q}questionnaire data, including the Constructed Questionnaire
> Response derived from proprietary, Census-edited Customs records,

*State*s, No. 21-00532, 2024 WL 4579256, at *2 (Ct. Int'l Trade Oct. 25, 2024) (affirming Commission's negligibility determinations after remand).

> are the only data on the record that allow for the removal of imports of CSPV products subject to the *CSPV I* orders, including Appendix IV entries, that are nonsubject merchandise for purposes of these investigations, from the imports of CSPV products from each subject country.

Views at 57.  The Commission further stated that it relied on Table D.7 of the Staff Report for its negligibility analysis, which "treats imports entered under Appendix IV from the subject countries as imports within the scope of *CSPV I* and therefore nonsubject for purposes of these investigations."  Views at 57.[10]  Thus, the Commission explained that questionnaire data were more accurate than official import statistics for assessing the volume of subject imports from Cambodia and Thailand because they permitted the deduction of circumventing nonsubject imports.  In sum, the Commission's assessment that the questionnaire data were most reliable for determining negligibility was within the Commission's purview as the finder of fact charged with determining the credibility and weight of evidence.  *See Consol. Fibers, Inc. v. United States*, 32 CIT 24, 40, 535 F. Supp. 2d 1345, 1357-58 (2008).

### 3. The Commission's Methodology Treating Appendix IV Entries as Circumventing Nonsubject Merchandise Was Reasonable and Supported by Substantial Evidence.

Contrary to Plaintiff's argument that the Commission somehow erred by treating entries under Article IV as nonsubject imports, Pl.Br. at 21-22, the Commission explained that importers or exporters that used Appendix IV certified that their merchandise contained parts or components of Chinese origin that matched or surpassed thresholds that Commerce had determined were subject to its circumvention finding and, therefore, within the scope of the

---

[10] The Commission additionally explained that "Table D.7 is more accurate than Table 4.6 for purposes of the negligibility analysis because the questionnaire data used to compile Table 4.6 listed Appendix IV entries as subject, and thus, overstate subject import volumes."  Views at 57 n.194.

*CSPV I* orders.  Views at 56.  Indeed, as the Commission noted, firms using Appendix IV were

required to ensure utilization of the entries of CSPV cells and modules in U.S. solar installations

within 180 days or otherwise be assessed the *CSPV I* duties.[11]  As discussed in section III.A

above, responding importers covering the vast majority of imports from Thailand and Cambodia

certified in their supplemental questionnaire responses that their entries under Appendix IV

during the period of investigation were circumventing merchandise subject to the scope of the

---

[11] Regardless of whether in practice some firms may have been flexible in which Appendix they used, as Plaintiff contended before the Commission, *see* Views at 56 n.190, each of Appendix IV, Appendix V, and Appendix VI required importers and exporters to certify their merchandise met the requirements of the Appendix being utilized and affirm that they are "aware that U.S. law (including, but not limited to, 18 U.S.C. § 1001) imposes criminal sanctions on individuals who knowingly and willfully make materially false statements to the U.S. government." *See Final Circumvention Determinations,* 88 Fed. Reg. at 57,427.

Moreover, evidence on the record indicated that Commerce and Customs intended to strictly implement Appendix IV's 180-day utilization provision.  According to a May 2024 White House Fact Sheet explaining the end of the tariff holiday,

> {T}he Department of Commerce requires that panels imported duty-free must be installed within 180 days to prevent stockpiling. Customs and Border Protection (CBP) has announced that it will vigorously enforce this provision, including by requiring importers to provide to CBP a certification of solar module utilization with detailed information about the modules being deployed.

Fact Sheet: Biden Harris Administration Takes Action to Strengthen American Solar Manufacturing and Protect Manufacturers and Workers from China's Unfair Trade Practices (PR128).

Furthermore, in its posthearing brief, Respondent Canadian Solar provided a press release from the Plaintiff Alliance, urging "strong enforcement" by CBP and other agencies of the deadlines for utilization for Appendix IV entries to be duty-free.  *See* Canadian Solar Posthearing Br., Exhibit 5E, American Alliance for Solar Manufacturing Trade Committee, *Statement: Today's CBP Solar Deployment Deadline to Prevent Stockpiling* (Dec. 3, 2024) (PR264).  Thus, the record evidence shows that Plaintiff and respondents alike were aware that certification under Appendix IV carried distinct requirements and consequences for noncompliance than the other Appendices.

PROPRIETARY INFORMATION SUBJECT TO PROTECTIVE ORDER REDACTED

*CSPV I* orders, consistent with importer hearing testimony and arguments that such entries should be treated as nonsubject merchandise.  Far from there being "no reason to use one certification over another," as Plaintiff mistakenly asserts (Pl.Br. at 24), only three non-circumventing firms with imports from Malaysia or Vietnam could use Appendix V, and firms who used Appendix VI had to certify that the entering merchandise met strict physical requirements that did not contain Chinese-origin wafers, or if they did, contained no more than two of six other inputs of Chinese origin.  Views at 55-56.  Importers that were capable of importing CSPV products under Appendix VI would have had an economic incentive to do so in that such imports would not have been subject to the 180-day use requirement under Appendix IV or potentially subject to substantial duties under the *CSPV I* orders.  *See* Views at 15-16.  For all these reasons, the Commission reasonably treated imports that importers or exporters had entered under Appendix IV, and certified as subject to Commerce's circumvention finding, as nonsubject imports.  Views at 56.

Moreover, there was no record evidence that any responding importer had used Appendix IV to import non-circumventing imports.  Views at 56 n.190.  The Commission did not, as Plaintiff argues, ignore "evidence demonstrating that importers reported non-circumventing imports under Appendix IV."  Pl.Br. at 25.  The Commission acknowledged Plaintiff's contention that importers had flexibility as to which Appendices to use and considered Plaintiff's assertion that [ ▮▮▮▮▮▮▮▮▮▮ ] entered subject merchandise under Appendix IV. *See* Views at 56 n.190.  The Commission specifically recognized the possibility that "some importers may have used Appendix IV to import non-circumventing merchandise" but found that the record did not contain any evidence that the importers who participated in these

*PROPRIETARY INFORMATION SUBJECT TO PROTECTIVE ORDER REDACTED*

investigations had done so. *See* Views at 56. For example, [ ████ ] stated in its importer questionnaire response that:



[ ████ ] U.S. Importer Questionnaire Response at II-16 [ ████ ].

[ ████ ], however, did not specifically indicate the volume of imports that it entered under both Appendix IV and Appendix V; it merely informed the Commission that it did use both appendices for some entries. Thus, the Commission's finding that [ ████ ], which is [ ████ ], did not provide the Commission with "determinative evidence" that would "indicate the volume of allegedly subject merchandise that [ ████ ] imported under Appendix IV, or provide any evidence that other importers used Appendix IV in a similar manner" was supported by substantial evidence. Views at 56 n.190.

The Commission also considered Plaintiff's assertion that [ ████ ] may have used both Appendix IV and Appendix VI for certain shipments, but found the sworn affidavit of a [ ████ ] representative credible in stating that "all of the values and quantities in its importer questionnaire were filed under Appendix IV." Views at 56 n.190. Additionally, at the hearing, representatives for Canadian Solar, Trina, and Runergy,[12] some of the largest importers of CSPV

---

[12] In these investigations, the Commission referred to "Canadian Solar" to collectively include Canadian Solar U.S. Module Manufacturing Corp. and its affiliates. *See* Views at 4-5 & n.8. The Commission referred to "Trina" collectively to include Trina Solar Science & Technology (Thailand) Ltd. and Trina Solar Energy Development Company Limited, foreign producers of subject merchandise, and Trina Solar Energy Development Company Limited, a U.S. importer of subject merchandise. Views at 5. The Commission referred to "Runergy" to

*[Footnote continued on next page]*

PROPRIETARY INFORMATION SUBJECT
TO PROTECTIVE ORDER REDACTED

cells and modules from Thailand,[13] testified that all those firms' imports during the negligibility

period were Appendix IV entries that were within the scope of the *CSPV I* orders.[14]  It was

within the Commission's discretion to rely on those importers' representations, and as this Court

has recognized, "the credibility of sources is largely a matter within the province of the

Commission, as the trier of fact." *Al Tech Specialty Steel Corp. v. United States*, 27 CIT 1791,

1802 (2003).

Plaintiff further asserts that the Commission erred in treating Appendix IV entries as

nonsubject merchandise because importer [ ████████ ] reported " [ ████████████████

████████████████████████████████████████████████████████

██████████████████████ ]."  Pl.Br. at 26.  It contends that the Commission erred in

treating those imports as nonsubject because Customs subsequently suspended or extended the

liquidation of [ ████████ ] entries.  First, Plaintiff did not raise this argument about

[ ██████ ] entries, or the potential effects of Custom's rejection of Appendix IV certificates,

in either its prehearing or posthearing briefs before the Commission.  *See generally* Petitioner's

Pre-Hearing Brief at 13-19 (CR438); Petitioner's Post-Hearing Brief at 1-2, Responses to

---

collectively include Runergy Alabama Inc, a U.S. producer of CSPV products, and Runergy
USA Trading LLC, a U.S. importer of CSPV products.  Views at 5.

[13] Canadian Solar accounted for [ ███ ] percent of imports of CSPV cells and modules
from Thailand in 2024.  Trina and Trina (U.S.) accounted for [ ██ ] and [ ██ ] percent of
imports from CSPV cells and modules from Thailand in 2024, respectively, and Runergy and
Runergy Trading accounted for [ ██ ] and [ ██ ] percent of imports of CSPV cells and modules
from Thailand in 2024, respectively.  Staff Report at Table 4.1 (CR495).

[14] Hearing Tr. at 239 (Bowen) (PR251) ("I can confirm that Canadian Solar did not
import any products subject to these investigations in the 12 months pr{e}ceding the petition.");
*id*. at  239-40 (Yang) ("{F}or Runergy, all of Appendix 4 imports were within the scope of
{Solar I} so we only had Appendix 4 imports in the relevant 12 month period . . .  And for
Runergy we only had one option which was Appendix 4 certification for imports."); *id*. at260
(Freed) ("All of Trina's Certification 4 entries could not have been eligible for Certification 6. . .
.  It really would make no sense to use Certification 4 if you could use Certification 6.").

PROPRIETARY INFORMATION SUBJECT
TO PROTECTIVE ORDER REDACTED

Commissioner Questions at 1-11 (CR460); Petitioner's Final Comments at 2-3 (CR511).  Having

failed to exhaust its administrative remedies with respect to this argument, Plaintiff is precluded

from raising the argument for the first time on appeal. *Jeld-Wen, Inc. v. United States*, 567 F.

Supp. 3d 1344, 1357 (Ct. Int'l Trade 2022) ("Having failed to raise this argument before the

Commission, Plaintiff may not raise it now.").  Regardless, even if Plaintiff did not waive this

argument, [         ]'s questionnaire response does not support Plaintiff's argument that

the Commission erred by treating Appendix IV entries as nonsubject imports.  [        ]

affirmed in its importer questionnaire response that all its imports of CSPV cells and modules

entered under Appendix IV during the period of investigation were nonsubject merchandise

subject to the *CSPV I* orders.[15]  Even if Customs later rejected some of [        ] Appendix

IV certificates, when "determining negligibility, the Commission uses 'information available to

---

[15] Specifically, [         ] stated:



[                    ] Revised U.S. Importer Questionnaire Response at II-16,
([     ]). (emphasis added). *See also* [                ] U.S. Importer Questionnaire
Response at II-16, ([    ]).

PROPRIETARY INFORMATION SUBJECT
TO PROTECTIVE ORDER REDACTED

it at the time of the determination.'" *U.S. Aluminum Extruders Coal.*, 777 F. Supp. 3d at 1354

(quoting *Co-Steel Raritan, Inc. v. Int'l Trade Comm'n*, 357 F.3d 1294, 1313 (Fed. Cir. 2004)).[16]

Nor does Plaintiff's citation to [          ]'s importer questionnaire response support its

argument. Plaintiff claims that, because [          ] reported that [          

                                        ] deemed to be circumventing the *CSPV I* orders, the

Commission overlooked that participating importers had recognized the possibility that

Appendix IV certifications could also be used for subject imports. Pl.Br. at 25. In the cover

letter attached to its supplemental questionnaire response treating entries under Appendix IV as

nonsubject imports, however, [          ] stated:

> Appendix IV certifications were devised specifically for the importation of non-subject merchandise (i.e. otherwise circumventing merchandise of Chinese-origin was permitted to enter the U.S. free of the China AD/CVD duties for a discrete period of time. Thus, such imports should all be excluded from the scope. Merchandise cannot be subject to both the China solar cells case (including the Commerce Department's circumvention findings) and the Cambodia, Malaysia, Thailand, or Vietnam solar cells case.

[          ] Supplemental U.S. Importer Questionnaire Response ([          ]).

It further argued that "the best methodology to" calculate nonsubject merchandise, "based

on how the Commission has chosen to collect the data in the U.S. Importers' Questionnaire, is to

classify all import, shipment, and pricing product data based on imports with Appendix IV

certifications as nonsubject."[17] *Id*. Like several other responding importers, [          ]

---

[16] Moreover, even if Commerce or CBP had later rejected [          ]'s, or any other importer's Appendix IV certificates, those entries would have been excluded from the tariff holiday and not exempted from the *CSPV I* duties. Accordingly, those entries still would have been nonsubject merchandise in these investigations.

[17] In its Questionnaire Response [          ] followed the Commission's instructions for how to submit Appendix IV data. It stated:

*[Footnote continued on next page]*

PROPRIETARY INFORMATION SUBJECT
TO PROTECTIVE ORDER REDACTED

asserted that all imports that it entered under Appendix IV during the period of investigation were nonsubject merchandise. Thus, contrary to Plaintiff's argument, [      ]'s importer questionnaire responses were fully consistent with the Commission's finding that although "some importers may have used Appendix IV to import noncircumventing merchandise . . . the record contains no information that this was the case for any {participating} importer." Views at 56.

Finally, even if something less than 100 percent of entries under Appendix IV were nonsubject, as the Commission specifically contemplated, this would not render the Commission's reliance on such entries to estimate the volume of circumventing imports subject to *CSPV I* unsupported by substantial evidence. The statute provides that in calculating import volumes for its negligibility analysis, "the Commission may make reasonable estimates on the *basis of available statistics*." 19 U.S.C. § 1677(24)(C) (emphasis added). The SAA similarly recognizes that the Commission may rely on questionnaire data to calculate subject import volume, alone or in combination with official statistics. SAA at 856.

---



[      ] U.S. Importer Questionnaire Response at II-16 ([      ]). [      ] accordingly submitted a supplemental questionnaire response affirming that its Appendix IV entries were nonsubject merchandise. *See* [      ] Supplemental U.S. Importer Questionnaire Response ([      ]).

Three of the largest Thai importers, Canadian Solar, Trina, and Runergy, attested to the Commission in their questionnaire responses and hearing testimony that all their Appendix IV entries were circumventing imports, and as explained below, the Commission properly treated the entries of NE Solar, one of the largest importers of CSPV products from Cambodia, as circumventing imports pursuant to Commerce's final affirmative circumvention determinations with respect to NE Solar. As noted by the Commission and discussed above, the record contained no information that any importer had used Appendix IV to import non-circumventing imports. Plaintiff itself "does not dispute the fact that Appendix IV certifications were used to import non-subject merchandise that was subject to the Solar I Order." Pl.Br. at 25. Accordingly, record evidence supported the Commission's treatment of imports entered under Appendix IV during the period of investigation from the responding importers as imports within the scope of *CSPV I* and thus nonsubject for purposes of the investigations, to ensure the Commission did not improperly overstate subject import volumes in calculating each subject country's numerator for its negligibility analysis. As this Court has held, "{t}he Commission has the right to make credibility determinations and to resolve conflicts in the evidence," and "this Court lacks authority to interfere with the Commission's discretion as trier of fact to interpret reasonably evidence collected in the investigation." *Negev Phosphates, Ltd. v. Dep't of Commerce*, 12 CIT 1074, 1092, 699 F. Supp. 938, 953 (1988). The Court should therefore affirm this aspect of the Commission's methodology.

### 4. The Commission Properly Considered NE Solar's Imports as Circumventing Nonsubject Merchandise Pursuant to Commerce's Final Circumvention Determinations

There is no merit to Plaintiff's argument that the Commission should have treated imports of CSPV cells and modules from NE Solar. Plaintiff contends that Commerce

preliminarily determined that NE Solar was not circumventing the *CSPV I* orders and only made an affirmative final circumvention determination with respect to NE Solar based on an adverse facts available inference because NE Solar did not permit verification. *See* Pl.Br. at 24-25. Regardless of the reason for Commerce's affirmative circumvention determination, there was no legal basis for the Commission to substitute its own judgment for Commerce's final circumvention determinations. As the Commission stated, to "do so would amount to the Commission making its own circumvention determination contrary to Commerce's determination, which it does not have the authority to do." Views at 58. Because imports subject to the *CSPV I* orders were expressly excluded from the scope of these investigations, the Commission reasonably treated all imports from NE Solar as nonsubject pursuant to Commerce's final determinations that NE Solar circumvented the *CSPV I* orders and was precluded from using Appendices V or VI.

The Commission must accept the scope of investigation as defined by Commerce. As the Federal Circuit has recognized, "the Commission does not decide which products or merchandise *are subject to the investigation*, that task belongs to Commerce." *Full Member Subgrp. of Am. Inst. of Steel Constr., LLC v. United States*, 81 F.4th 1242, 1252 (Fed. Cir. 2023) (emphasis in original); *see also USEC Inc. v. United States*, 34 F. App'x 725, 730 (Fed. Cir. 2002) ("The merchandise that is subject to the ITC's analysis is the 'subject merchandise' as to which Commerce has initiated an antidumping investigation."). Thus, "while the ITC determines whether there is material injury or the threat of material injury, it is Commerce's investigation that defines the scope of the ITC's analysis. The ITC may not modify the class or kind of imported merchandise examined by Commerce." *Id*. at 730. This Court has stated that "the {Commission} does not look behind {Commerce's} determination but accepts {Commerce's}

- 32 -

determination as to which merchandise is in the class of merchandise sold at LTFV {less than

fair value}." *USEC Inc. v. United States*, 25 CIT 49, 56, 132 F. Supp. 2d 1, 8 (2001); *see also*

*Autoliv ASP, Inc. v. United States*, 422 F. Supp. 3d 1295, 1300 (Ct. Int'l Trade 2019) ("The

Commission relies on the 'scope' of the subject merchandise provided by the U.S. Department of

Commerce . . . to serve as the outside parameter for defining the domestic like product.").

This Court has also recognized that circumvention determinations are scope rulings. *See*

*Deacero S.A. de C.V. v. United States*, 942 F. Supp. 2d 1321, 1326 (Ct. Int'l Trade 2013) (stating

that a "scope determination can take two forms"—when Commerce "initiates a scope inquiry" or

when Commerce "initiates a circumvention inquiry"); *see also U.K. Carbon & Graphite Co. v.*

*United States*, 37 CIT 1295, 1300 (2013) ("In a circumvention inquiry, Commerce analyzes

whether a product outside an order's literal scope should nevertheless be included within the

scope to prevent circumvention of antidumping and countervailing duty orders pursuant to

statutory criteria . . . and regulatory criteria."). As a general matter, an importer or exporter's

merchandise cannot be within the scope of multiple antidumping and countervailing duty orders

at the same time. *See Louis Dreyfus Citrus, Inc. v. United States*, 495 F. Supp. 2d 1338, 1349-

50, 31 CIT 964, 976 (2007) (finding no manifest error because "Commerce is not precluded from

crafting company-specific scopes where necessary, and because Commerce crafted the scope so

as to avoid an overlap with an existing order"). Thus, when Commerce made final affirmative

circumvention determinations with respect to NE Solar, finding that imports from NE Solar were

subject to the *CSPV I* orders, the Commission had no authority to substitute its own judgement

for that of Commerce based on Commerce's preliminary negative circumvention determination

with respect to NE Solar. Irrespective of the reasons for Commerce's final affirmative

circumvention determinations with respect to NE Solar, the Commission was bound to follow

- 33 -

them, as a definitive pronouncement that imports from NE Solar were within the scope of the *CSPV I* orders.

Equally unavailing is Plaintiff's argument that the Commission somehow used a "self-created 'plug' questionnaire" for NE Solar "to find that imports from Cambodia did not surpass the negligibility threshold, to the benefit of non-responding importers," given NE Solar's failure to participate in the investigations. *See* Pl.Br. at 20, 28. Contrary to this argument, the Commission used Census-edited customs records to calculate NE Solar's imports compiled in the Constructed Questionnaire and reasonably treated all imports from NE Solar as nonsubject imports pursuant to Commerce's final determinations that NE Solar circumvented to the *CSPV I* orders. The Commission's finding that all imports from NE Solar were nonsubject circumventing merchandise was consistent with Commerce's inclusion of NE Solar in Appendix II of its final circumvention determinations, as a company that had not cooperated in Commerce's proceeding and was therefore ineligible to enter imports under Appendix V or VI. Views at 17, 58 & n.196. Nor had NE Solar sought an administrative or changed circumstances review before Commerce that might have altered those circumvention determinations. *See* Views at 51 n.171. The Commission properly treated the volume of imports in NE Solar's Constructed Questionnaire as nonsubject merchandise pursuant to Commerce's final affirmative circumvention determination with respect to NE Solar, and did not use the volume of such imports in the numerator for Cambodia in its negligibility calculation.

Furthermore, the Commission was entitled to rely on the information available to calculate the volume of imports of CSPV products from NE Solar. Under 19 U.S.C. § 1677e(a), the Commission is required to use the facts otherwise available when any person withholds information that has been requested by the Commission. In the absence of NE Solar's

- 34 -

cooperation, Commission staff used Census-edited Customs records to calculate import data for NE Solar and incorporated these data into a Constructed Questionnaire made available to the parties on the confidential record. Views at 57. This Court has affirmed the Commission's reliance on proprietary Census-edited Customs records to calculate import volumes. *See U.S. Aluminum Extruders Coal.*, 777 F. Supp. 3d at 1348 (affirming Commission's negligibility calculation that included "using Customs records edited by the U.S. Census Bureau" as a "reasonable methodological choice with a rational basis in fact").

In sum, based on Commerce's final affirmative determination that NE Solar circumvented the *CSPV I* orders, all imports of CSPV cells and modules from NE Solar were within the scope of *CSPV I* orders and thus nonsubject for purposes of the investigation of CSPV cells and modules from Cambodia. Commerce's scope in these investigations plainly states that "also excluded from the scope of these investigations *are all products* covered by the scope of the *CSPV I* orders." Views at 13 (emphasis added). Furthermore, Commerce expressly precluded NE Solar from using Appendix V or Appendix VI, meaning the only available Appendix for NE Solar's entries would have been through Appendix IV. The Commission therefore reasonably found that "because Commerce made a final determination that imports by NE Solar circumvented the *CSPV I* orders," it would treat NE Solar's imports as nonsubject imports. Views at 57.

### 5. The Commission Reasonably Explained Its Rejection of Plaintiff's Alternative Methodology

Plaintiff's challenge to the Commission's rejection of its preferred negligibility methodology is misplaced. As this Court has held, "'Plaintiffs' preference for their own . . . methodology is understandable,' but 'the focal point . . . is not what methodology {Plaintiffs} would prefer, but on whether the methodology actually used by the Commission was

- 35 -

PROPRIETARY INFORMATION SUBJECT
TO PROTECTIVE ORDER REDACTED

reasonable.'" *Mexichem Fluor Inc. v. United States*, 179 F. Supp. 3d 1238, 1247 (Ct. Int'l Trade 2016) (quoting *Shandong TTCA Biochem.*, 35 CIT at 559, 774 F. Supp. 2d at 1329).  Because the Commission's negligibility methodology was reasonable, as discussed above, the Court should affirm it, irrespective of Plaintiff's preference for a different one.

Furthermore, contrary to Plaintiff's arguments, the Commission reasonably explained why it did not find Plaintiff's proposed alternative negligibility table to be as accurate as the data based on its own methodology, in Table D.7 of the Staff Report.  Plaintiff proposed that the Commission use official import statistics for both the numerator and denominator of the negligibility calculation for each country, adjusting the numerator by subtracting Appendix IV entries reported in questionnaire responses.  Views at 58 n.197.  As the Commission explained, it was unclear which HTS codes that Plaintiff had used to compile the official import statistics in its alternative negligibility table and the incomplete coverage of subject imports from Cambodia afforded by the importers' questionnaires would have undercounted entries under Appendix IV.  Plaintiff's objections to these explanations do not withstand scrutiny.

Contrary to Plaintiff's assertion that "record evidence shows" that its table used HTSUS codes 8541.42.0010 and 8541.43.0010, Pl.Br. at 18, the Commission reasonably stated that it was "unclear which HTS subheadings {Plaintiff} used to compile the official import statistics in its table."  Views at 58 n.197.  For example, Plaintiff's calculations of subject imports from Thailand of [          ] kW in the AD investigation and [          ] kW in the CVD investigation, purportedly based on official import statistics less reported imports under Appendix IV, *see* Petitioner Posthearing Br., Exhibit 10 (CR470), were much higher than the volume of subject imports from Thailand calculated by Commission staff based on the questionnaire responses, [          ] kW, even though the questionnaire responses covered

- 36 -

PROPRIETARY INFORMATION SUBJECT
TO PROTECTIVE ORDER REDACTED

virtually all imports of CSPV cells and modules from Thailand.  *See* Views at 6 (stating

questionnaire responses covered "essentially all ([ ▮ ] percent) of U.S. imports from

Thailand").[18]  Similarly, Plaintiff's calculation that subject imports from Cambodia accounted

for [ ▮ ] percent of total imports was many times higher than Commission staff's calculation

that subject imports from Cambodia would have accounted for only [ ▮ ] percent of total

imports.  *Compare* Petitioner Posthearing Br., Exhibit 10 (CR470) *with* Staff Report at Table D.7

(CR495).  The inexplicably higher volumes of subject imports from Cambodia and Thailand in

Plaintiff's alternative negligibility table explain Plaintiff's preference for its own methodology.

Absent any explanation for these anomalies, however, the Commission reasonably questioned

the HTS numbers used in Plaintiff's alternative negligibility table and found Plaintiff's data less

accurate than the data in Table D.7 that the Commission used to make its negligibility

determinations.  *See* Views at 58 n.197.

Similarly unpersuasive is Plaintiff's assertion that questionnaire responses did not

undercount imports of CSPV cells and modules from Cambodia entered under Appendix IV --

the Commission's second objection to their proposed methodology -- because all imports from

NE Solar, which did not submit a questionnaire response, should be treated as subject imports.

Pl.Br. at 18-19.  As discussed above, the Commission was required to treat imports of CSPV

cells and modules from NE Solar as nonsubject imports pursuant to Commerce's affirmative

circumvention determination with respect to NE Solar, which made all such imports subject to

the *CSPV I* orders and thus outside the scope of the investigations of CSPV cells and modules

from Cambodia.  Doing so was not possible under Plaintiff's methodology.  Because NE Solar

---

[18] The Commission also noted that "{q}uestionnaire responses (including the Constructed Questionnaire Response) account for [ ▮ ] percent of total imports reported in official import statistics."  Views at 7 n.18.

did not submit a questionnaire response, the record did not contain questionnaire data concerning the volume of NE Solar's imports entered under Appendix IV.  For this reason, Plaintiff's methodology of deducting questionnaire data concerning the volume of imports entered under Appendix IV from official import statistics, which included imports from NE Solar, would have counted imports from NE Solar as subject imports from Cambodia, contrary to Commerce's affirmative circumvention determination that they were subject to the *CSPV I* orders.  The Commission's objection to Plaintiff's methodology that the questionnaires undercounted imports from Cambodia entered under Appendix IV, namely imports from NE Solar, was therefore reasonable.

## VI.    CONCLUSION

For the foregoing reasons, we respectfully request that the Court affirm the Commission's determination that subject imports from Cambodia and Thailand were negligible for the Commission's analysis of present material injury.

- 38 -

Respectfully submitted,

Margaret D. Macdonald
General Counsel

Karl von Schriltz
Assistant General Counsel for Litigation

/s/ Anthony C. Famiglietti
Anthony C. Famiglietti
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-2520
Facsimile: (202) 205-3111
anthony.famiglietti@usitc.gov

*Attorneys for Defendant United States*

Dated:  May 15, 2026

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Court's Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached **DEFENDANT UNITED STATES INTERNATIONAL TRADE COMMISSION'S NONCONFIDENTIAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD** contains 11,948 words, according to the word-count function of the word processing system used to prepare this brief (Microsoft Word 2010).

Dated:  May 15, 2026

/s/  Anthony C. Famiglietti
Anthony C. Famiglietti
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-2520
Facsimile: (202) 205-3111
anthony.famiglietti@usitc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 15th day of May 2026, I provided true and correct electronic copies of the foregoing **DEFENDANT UNITED STATES INTERNATIONAL TRADE COMMISSION'S NONCONFIDENTIAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD** to all counsel of record by filing it via the Court's CM/ECF system.

*/s/  Anthony C. Famiglietti*
Anthony C. Famiglietti
Attorney-Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Telephone: (202) 205-2520
Facsimile: (202) 205-3111
anthony.famiglietti@usitc.gov
