IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> BYD AMERICA LLC, CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD., CANADIAN SOLAR US MODULE MANUFACTURING CORPORATION, RUNERGY PV TECHNOLOGY (THAILAND) CO., LTD., RUNERGY USA TRADING LLC, RUNERGY ALABAMA INC., TRINA SOLAR U.S., INC., TRINA SOLAR SCIENCE AND TECHNOLOGY (THAILAND) LTD., <br><br> Defendant-Intervenors. | | Court No. 25-00163 <br><br> **NON-CONFIDENTIAL** <br> **VERSION** |

### CANADIAN SOLAR, RUNERGY, AND TRINA'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

| | | |
|---|---|---|
| HOGAN LOVELLS US LLP <br> 555 Thirteenth Street, NW <br> Washington, DC 20004-1109 <br><br> *Counsel to Canadian Solar International Limited; Canadian Solar Manufacturing (Thailand) Co., Ltd.; and Canadian Solar US Module Manufacturing Corporation* | ALSTON & BIRD, LLP <br> 950 F Street, NW <br> Washington, DC 20004-1404 <br><br> *Counsel to Runergy PV Technology (Thailand) Co., Ltd.; Runergy USA Trading LLC; Runergy Alabama Inc.* | TRADE PACIFIC PLLC <br> 700 Pennsylvania Avenue, SE <br> Suite 500 <br> Washington, DC 20003 <br><br> *Counsel to Trina Solar U.S., Inc.; Trina Solar Science & Technology (Thailand) Ltd.* |

**TABLE OF CONTENTS**

Page

INTRODUCTION ...........................................................................................................................1

STATEMENT PURSUANT TO RULE 56.2 ..................................................................................6

I.      Administrative Determination Under Review ....................................................................6

II.     Statement of Issues ............................................................................................................7

STATEMENT OF FACTS ..............................................................................................................7

    A.  The Thailand Intervenors' Role in these Investigations .................................................. 7

        1.      Canadian Solar ............................................................................................7

        2.      Runergy .......................................................................................................8

        3.      Trina ............................................................................................................9

    B.  Commerce's Circumvention Determinations and Certification Framework ................... 9

    C.  The Commission's Methodology for Assessing Negligibility ...................................... 10

SUMMARY OF THE ARGUMENT ............................................................................................12

ARGUMENT .................................................................................................................................13

I.      The Commission's Negligibility Methodology Was Reasonable and Should Be
        Affirmed ...........................................................................................................................13

    A.  The Commission Properly Used Questionnaire Data as Reasonable (and Indeed the
        Best) Evidence of Subject Import Volume ................................................................... 13

    B.  There is No Evidence that Importers of CSPV Product from Thailand Used Appendix
        IV for Non-Circumventing Merchandise, Nor Would This Have Been Rational ......... 15

    C.  Representatives from Canadian Solar, Trina, and Runergy Confirmed Under Oath That
        All of Their Appendix IV Entries Were *Solar I* Imports ............................................ 18

CONCLUSION ..............................................................................................................................20

# TABLE OF AUTHORITIES

Page

CASES

*Al Tech Specialty Steel Corp. v. United States*,
27 C.I.T. 1791 (2003) ................................................................................................. 19

*Coal. of Gulf Shrimp Indus. v. United States*,
71 F. Supp. 3d 1356 (Ct. Int'l Trade 2015) ................................................................ 11

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938) .................................................................................................... 11

*Hitachi Metals, Ltd. v. United States*,
949 F.3d 710 (Fed. Cir. 2020) .................................................................................... 11

*JMC Steel Grp. v. United States*,
70 F. Supp. 3d 1309 (Ct. Int'l Trade 2015) ................................................................ 11

*Louis Dreyfus Citrus, Inc. v. United States*,
31 C.I.T. 964 (2007) ................................................................................................... 14

*Nagase & Co. v. United States*,
628 F. Supp. 3d 1326 (Ct. Int'l Trade 2023) .............................................................. 11

*Negev Phosphates, Ltd. v. Dep't of Com.*,
699 F. Supp. 938 (Ct. Int'l Trade 1988) ..................................................................... 12

*Whirlpool Corp. v. United States*,
37 C.I.T. 1775 (2013) .................................................................................................. 11

STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) ............................................................................................. 11

19 U.S.C. § 1677(24) ............................................................................................................ 2

ADMINISTRATIVE MATERIALS

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*,
89 Fed. Reg. 43809 (May 20, 2024) ........................................................................... 13

Proclamation No. 10414,
87 Fed. Reg. 35067 (June 6, 2022) ............................................................................... 4

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

AMERICAN ALLIANCE FOR SOLAR
MANUFACTURING TRADE COMMITTEE,

      Plaintiff,

    v.

UNITED STATES,

      Defendant,

   and

BYD AMERICA LLC, CANADIAN SOLAR
INTERNATIONAL LIMITED, CANADIAN
SOLAR MANUFACTURING (THAILAND)
CO., LTD., CANADIAN SOLAR US MODULE
MANUFACTURING CORPORATION,
RUNERGY PV TECHNOLOGY (THAILAND)
CO., LTD., RUNERGY USA TRADING LLC,
RUNERGY ALABAMA INC., TRINA SOLAR
U.S., INC., TRINA SOLAR SCIENCE AND
TECHNOLOGY (THAILAND) LTD.,

      Defendant-Intervenors.

Court No. 25-00163

**NON-CONFIDENTIAL
VERSION**

**CANADIAN SOLAR, RUNERGY, AND TRINA'S RESPONSE TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

**INTRODUCTION**

To our knowledge, a petitioner has never appealed an affirmative determination issued by

the U.S. International Trade Commission ("Commission" or "ITC") in an antidumping and/or

countervailing duty ("AD/CVD") case.  Until now.  This appeal concerns an ITC *affirmative*

determination on the basis of threat of material injury in its investigation of imports of crystalline

1

silicon photovoltaic ("CSPV") solar cells and modules from Thailand ("*Solar III*").  American Alliance for Solar Manufacturing Trade Committee ("Plaintiff" or "Petitioner") has thus appealed its own victory and seeks in this action a result that at most would move the effective date of the AD/CVD cash deposit requirements earlier by a few months.

If Plaintiff obtains the relief sought in this appeal and in its requested remand, the result would have no impact on current and future market conditions in the U.S. market for solar panels, and thus no impact on Plaintiff's financial standing in the U.S. market.  In sum, this case is a waste of judicial resources.

No remand is warranted here.  The Commission found, in accordance with the governing statute, 19 U.S.C. § 1677(24), that subject imports from Thailand were negligible, because they accounted for less than three percent of total imports in the twelve months preceding the filing of the Petition (*i.e.*, April 2023 through March 2024).  The ITC's negligibility calculation is a matter of simple math.  Moreover, half of that simple calculation is not in dispute—all parties agree that total imports of CSPV cells and modules, as tabulated in public Census data, is the proper measurement of the denominator.  The Commission's negative material injury determination with respect to Thailand is derivative, as a matter of law, to its negligibility finding.

The only controversy in this appeal is whether the ITC's numerator in its negligibility calculation—***subject*** imports from Thailand—is reasonable under the substantial evidence standard.  The key complication for the Commission in its calculation of the numerator is the presence of a very substantial volume of imports from Thailand that are nonsubject (*i.e.*, imports not covered by the scope of the *Solar III* investigations).  By law, nonsubject imports cannot be included in the numerator of the negligibility calculation.  The Commission in calculating the

numerator relied on the single best evidence available on the record—indeed, the only credible evidence—U.S. importers' questionnaire data covering virtually all imports from Thailand.

Plaintiff argues that the Commission should have instead used public Census data to calculate the numerator. *See* Plaintiff's Brief ("Pl. Br.") at 17–19, ECF Nos. 55–56.  There is no merit to this argument as in this case the official import statistics are undoubtedly a less accurate way to measure the numerator than the Commission's methodology.  (Indeed, Petitioner did not even raise this proposal until very late in the Commission's investigation.)  The Commission reasonably found that these data were not the best evidence, as they were grossly overinclusive. The vast majority of imports from Thailand during the negligibility period were within the scope of the orders on CSPV products from China ("*Solar I*"), in accordance with the circumvention determination made by the U.S. Department of Commerce ("Commerce").  Merchandise imported into the United States may not be subject to two different sets of AD/CVD orders—in other words, imported merchandise already subject to existing AD/CVD orders may not lawfully be subject to a new investigation.  All parties agree on this point.  In any event, it is not the role of this Court to reweigh the Commission's assessment of the evidence—rather, the standard of review requires this Court to defer to the Commission's findings as to the credibility of specific evidence (*i.e.*, official import statistics versus questionnaire data). Thus, in accordance with the statutory scheme, the ITC reasonably relied on U.S. importers' questionnaire data reporting ***subject*** imports to calculate the numerator.

A factually complicated aspect of this case is whether CSPV imports from Thailand are subject or nonsubject merchandise.  The complication arises because of the administration of Commerce's *Solar I* circumvention findings and specifically President Biden's declaration of a "moratorium" (or as deemed by Petitioner and the Commission a "holiday") on the imposition of

AD/CVD suspension and deposit requirements with respect to exports of CSPV cells and modules from Thailand (as well as from Cambodia, Malaysia, and Vietnam) and Commerce's rulemaking to implement the same. Proclamation No. 10414, 87 Fed. Reg. 35067 (June 6, 2022) (the "Moratorium"); *Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 56868 (Sep. 16, 2022) (Commerce's "Final Rule") (P.R. 135).[1] Commerce, in conjunction with U.S. Customs and Border Protection ("CBP"), created a certification regime to implement Commerce's *Final Circumvention Determinations*, the Moratorium, and the Final Rule. *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57419 (Dep't Commerce Aug. 23, 2023) ("*Final Circumvention Determinations*") (P.R. 141).

Key aspects of Commerce's certification process set forth in the *Final Circumvention Determinations* are as follows:

- **Appendix IV** was available for circumventing imports subject to the *Solar I* AD/CVD orders and allowed entries to be conditionally exempted from duty deposit during the two-year moratorium period. Appendix IV required importers to certify that the cells or modules were produced using parts or components manufactured in China (and thus were considered circumventing goods). Appendix IV only remained valid if goods adhered to a strict 180-day utilization requirement—imported articles had to be "used or installed" by December 3, 2024, or face snapback of *Solar I* duties. ***Appendix IV entries are not subject to the Solar III AD/CVD investigations***.

- **Appendix V** is available only to three specific companies found not circumventing (Jinko Solar Technology Sdn. Bhd./Jinko Solar (Malaysia) Sdn. Bhd., Hanwha Q CELLS Malaysia Sdn. Bhd., and Boviet Solar Technology Co., Ltd.). ***Commerce determined, however, that no producer from Thailand was eligible for an Appendix V certification.***

---

[1]    Throughout this brief, citations to the public record ("P.R.") and the confidential record ("C.R.") refer to the administrative record of the ITC investigation.

- **Appendix VI** can be used for importers and exporters to certify that the merchandise contained insufficient Chinese content to be considered circumventing goods. Specifically, importers needed to certify that the goods did not contain Chinese-origin wafers or, if they did contain Chinese-origin wafers, that they contained no more than two of six other inputs of Chinese origin (silver paste, aluminum frames, glass, backsheets, ethylene-vinyl acetate, junction boxes). These are non-circumventing imports, within the scope of the *Solar III* investigations. ***Only a very small quantity of Thai CSPV imports qualified under Appendix VI and thus were subject to the Solar III investigations.***

*Final Circumvention Determinations* (P.R. 141); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-TA-722–725 and 731-TA-1690–1693 (Final), USITC Pub. No. 5631 (June 2025) ("USITC Pub. 5631") at 15–16, 41, 44 (P.R. 315).

The ITC's treatment of Appendix IV entries in the negligibility calculation is central to Plaintiff's misguided theory of the case. Entries of CSPV products accompanied by Appendix IV certifications are not within the scope of the *Solar III* investigations. To the contrary, entries utilizing Appendix IV certifications are necessarily circumventing and thus by definition fall outside of the scope of *Solar III.* The purpose of the Appendix IV certification was to enable U.S. importers to notify CBP of merchandise subject to *Solar I* but excluded from Commerce's typical suspension and duty deposit requirements by reason of the President's Moratorium and Commerce's Final Rule.

Plaintiff now contends that entries accompanied by an Appendix IV certification *might* be subject merchandise because they *might* be non-circumventing. *See* Pl. Br. at 22–24. Despite Petitioner's conjecture, the ITC investigation resulted in no evidence of an Appendix IV certifications for merchandise that is subject to *Solar III* (*e.g.,* goods eligible for an Appendix VI certification) or the use of dual certifications for imports from Thailand. Conversely, this speculation is contradicted by the sworn testimony of the three largest importers from Thailand.

5

Defendant-Intervenors Canadian Solar International Limited, Canadian Solar Manufacturing (Thailand) Co., Ltd., and Canadian Solar US Module Manufacturing Corporation (collectively, "Canadian Solar"); Runergy PV Technology (Thailand) Co., Ltd. ("Runergy Thailand"); Runergy USA Trading LLC ("Runergy USA"); Runergy Alabama Inc. ("Runergy Alabama") (collectively, "Runergy"); and Trina Solar U.S., Inc.; Trina Solar Science & Technology (Thailand) Ltd. (collectively, "Trina") (all together, the "Thailand Intervenors") support and endorse the Commission's legal positions and arguments. *See* Response Brief, ECF Nos. 61–62. The Thailand Intervenors write separately to add additional support and context for the Commission's correct determination, that subject imports from Thailand were negligible.[2]

## STATEMENT PURSUANT TO RULE 56.2

### I.    ADMINISTRATIVE DETERMINATION UNDER REVIEW

The administrative determination under review is the Commission's final affirmative determination in Inv. Nos. 701-TA-722-725 and 731-TA-1690-1693 (Final), finding material injury from Malaysia and Vietnam, and threat of material injury from Cambodia and Thailand. *See* USITC Pub. 5631 (P.R. 315). The determination was published at 90 Fed. Reg. 25075 (June 13, 2025). *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and Vietnam*, 90 Fed. Reg. 25075 (Int'l Trade Commission June 13, 2025) ("ITC Determination") (P.R. 317). Plaintiff challenges the negligibility finding as to Cambodia and Thailand for purposes of present material injury.

---

[2]    This brief focuses on the Thailand negligibility determination and does not address arguments specific to Cambodia. Plaintiff devotes much of its brief to discussing New East Solar (Cambodia) Co., Ltd., a Cambodian entity irrelevant to the Thailand negligibility finding.

## II.    STATEMENT OF ISSUES

Whether the Commission's determination that subject imports from Thailand were negligible for purposes of its present material injury analysis was in accordance with law and supported by substantial evidence.

## STATEMENT OF FACTS[3]

### A.    The Thailand Intervenors' Role in these Investigations

#### 1.    Canadian Solar

Canadian Solar is one of the largest U.S. producers of CSPV products, investing over $1 billion in U.S. manufacturing. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-TA-722–725 and 731-TA-1690–1693 (Final) Hearing Transcript (Apr. 15, 2025) ("Hearing Tr.") at 150–54 (Ms. Aleman-Salazar) (P.R. 251). Canadian Solar is also one of the largest importers of CSPV products from Thailand, including importing CSPV cells to fuel its 5GW U.S. module manufacturing operations in Mesquite, Texas. Canadian Solar actively participated in the Commission's investigation, submitting questionnaire responses, hearing testimony, and pre- and post-hearing briefs.

Canadian Solar's Senior Counsel, Global Trade, Michael Bowen, submitted a sworn declaration to the Commission confirming that all Canadian Solar CSPV imports from Thailand during the negligibility period (April 2023 through March 2024) were Appendix IV entries subject to the *Solar I* orders—not imports subject to *Solar III*. Mr. Bowen stated: "I have reviewed

---

[3]    In addition to providing a general overview of the proceedings, Thailand Intervenors adopt the statement of facts set forth in the Defendant's response brief. To the extent that additional facts not mentioned by Defendants are relevant to Thailand Intervenors' arguments, they are discussed in the context of the arguments set forth below.

Canadian Solar's records and processes and can confirm, again, that all of Canadian Solar's imports of CSPV cells and modules from Thailand in the 12-month period preceding the petition were Appendix IV entries subject to the 'Solar I' orders and not the new investigation." Letter from Hogan Lovells US LLP to the U.S. International Trade Commission, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam: Post-Hearing Brief of Canadian Solar*, Inv. Nos. 701-TA-722-725 and 731-TA-1690-1693 (Final) (Apr. 22, 2025) ("Canadian Solar Posthearing Br.") at Ex. 1-B (C.R. 464, P.R. 264); Hearing Tr. at 239 (Mr. Bowen) (P.R. 251). Canadian Solar reported *zero* subject imports from Thailand during the negligibility period.

### 2. Runergy

Runergy operates manufacturing facilities in Thailand and the United States. Runergy's core strength is in global solar cell manufacturing. The solar cells produced by Runergy Thailand support Runergy's module production in the United States. Since 2022, Runergy has invested tens of millions of dollars in U.S. solar manufacturing—a 1.3 million square feet facility previously occupied by a DVD manufacturer has become a state-of-the-art module manufacturing plant in Huntsville, Alabama, supplying high-efficiency solar modules to U.S. customers throughout the United States.

Runergy confirmed that all of its CSPV imports during the negligibility period were Appendix IV entries within the scope of the *Solar I* orders. Hearing Tr. at 239–40 (Ms. Yang) (P.R. 251); Letter from Alston & Bird LLP to the US. International Trade Commission, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam; Inv. No. 701-TA-722-725 and 731-TA-1690-1693 (Final): Posthearing Q&As in Lieu of a Posthearing Brief* (April 22, 2025) ("Runergy Posthearing Q&A") at 5 (C.R. 466, P.R. 269). Runergy further testified that "there isn't much flexibility" with respect to the

certification requirements of Appendix IV.  Hearing Tr. at 240 (Ms. Yang) (P.R. 251).  There is no evidence that Runergy entered non-circumventing merchandise under an Appendix IV certification.  Runergy reported *zero* subject imports from Thailand during the negligibility period.

### 3.    Trina

Trina actively participated in the Commission's investigation, submitting questionnaire responses, hearing testimony, and pre- and post-hearing briefs.  Trina's  Head of Legal-Americas, Michael Nelson, submitted an affidavit confirming that "all of the values and quantities identified as Appendix IV data for which the Appendix IV certification was filed to US Customs are outside the scope of the current investigation" and that these "modules were subject to the China AD/CVD orders for case numbers (A-570-979/C-570-980)."  Letter from Trade Pacific PLLC to the U.S. International Trade Commission, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules from Cambodia, Malaysia, Thailand, and Vietnam*: Post Hearing Answer to Question, Inv Nos. 701-TA-722-725 and 731-TA-1690-1693 (Final) (Apr. 22, 2025) ("Trina Posthearing Br.") at Att. 1 (C.R. 459, P.R. 257)**.**

### B.    Commerce's Circumvention Determinations and Certification Framework

As described above, Commerce's final circumvention determinations established a certification system for different categories of products originating in the *Solar I* inquiry countries.  *See Final Circumvention Determinations* (P.R. 141); USITC Pub. 5631 at 15–16, 41, 44 (P.R. 315).

This certification regime is relevant to *Solar III* and this appeal because only CSPV imports from Thailand accompanied by a valid Appendix VI certification were subject to the *Solar III* investigations on CSPV products from Thailand during the Commission's negligibility period.

9

NONCONFIDENTIAL VERSION
CONFIDENTIAL INFORMATION DELETED FROM BRACKETS

### C.    The Commission's Methodology for Assessing Negligibility

The scope of the *Solar III* investigations explicitly excludes all products covered by the *Solar I* orders.  To calculate the volume of subject imports from Thailand, the Commission tabulated the total volume of imports of CSPV cells and modules from Thailand reported in submitted U.S. importers' questionnaires and subtracted the volume of imports reported as having entered under Appendix IV of Commerce's final circumvention determinations.  These Appendix IV entries comprised CSPV imports that were certified as having circumvented the *Solar I* orders and thus fell outside the scope of the *Solar III* investigations.  To repeat—***all entries for which solely an Appendix IV certification was filed could not legally, in accordance with the comprehensive regime established by Commerce and CBP, have been subject to the Solar III investigations***.

The remaining small quantity of CSPV imports from Thailand during the negligibility period—*i.e.*, imports not entered under Appendix IV—constituted the subject import volume included in the Commission's numerator in its negligibility calculation.  The Commission first totaled all CSPV imports from Thailand and then removed from the total imports for which U.S. importers had submitted Appendix IV certifications and thus were subject to the preexisting *Solar I* orders.

The questionnaire responses submitted to the Commission covered essentially all CSPV imports from Thailand (**[      ]** percent), including from all major Thailand CSPV producers.  *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-TA-722–725 and 731-TA-1690–1693 (Final), USITC Views of the Commission (June 2025) ("Views of the Commission") at 6 (C.R. 514); USITC Pub. 5631 at 5 (P.R. 315) ("U.S. import data are based on questionnaire responses . . . representing . . . essentially all . . . of  U.S. imports from Thailand.").    These

10

questionnaire responses were the best data available to the Commission to determine the numerator for the Thailand negligibility calculation.

Subject imports from Thailand accounted for **[     ]** percent of total imports—well below the three percent statutory threshold. Views of the Commission at 61 (C.R. 514).

## LEGAL STANDARD

The Court sustains the Commission's determinations unless "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

The Commission has "broad discretion" in choosing a methodology for measuring import volume. *Whirlpool Corp. v. United States*, 37 C.I.T. 1775, 1786 (2013) (citation omitted). The Court examines "not what methodology {Plaintiff} would prefer, but . . . whether the methodology actually used by the Commission was reasonable." *JMC Steel Grp. v. United States*, 70 F. Supp. 3d 1309, 1316 n.4 (Ct. Int'l Trade 2015) (quoting *Shandong TTCA Biochem. Co. v. United States*, 35 C.I.T. 545, 559, 774 F. Supp. 2d 1317, 1329–30 (2011)). "When evaluating challenges to the ITC's choice of methodology the court will affirm the chosen methodology as long as it is reasonable." *Coal. of Gulf Shrimp Indus. v. United States*, 71 F. Supp. 3d 1356, 1365 (Ct. Int'l Trade 2015). *See also Hitachi Metals, Ltd. v. United States*, 949 F.3d 710, 716 (Fed. Cir. 2020) ("Under the substantial evidence standard of review, 'we must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion'" (quoting *Altx, Inc. v. United States*, 370 F.3d 1108, 1121 (Fed. Cir. 2004))); *Nagase & Co. v. United States*, 628 F. Supp. 3d 1326, 1336–37 (Ct. Int'l Trade 2023) ("{t}he question is not whether the Court would have reached the same decision on the same

record{;} rather, it is whether the administrative record as a whole permits Commerce's conclusion." (quoting *New American Keg v. United States*, No. 20-00008, 2021 WL 1206153, at *6 (Ct. Int'l Trade  Mar. 23, 2021))).

The Commission has the right to make credibility determinations and to resolve conflicts in the evidence.  "This Court lacks authority to interfere with the Commission's discretion as trier of fact to interpret reasonabl{e} evidence collected in the investigation."  *Negev Phosphates, Ltd. v. Dep't of Com.*, 699 F. Supp. 938, 953 (Ct. Int'l Trade 1988).

## SUMMARY OF THE ARGUMENT

Plaintiff's appeal is unprecedented and meritless.  Plaintiff already won *Solar III*.  The Commission made an affirmative vote on all four countries including Thailand, and AD/CVD orders are in place.  We are not aware of any other petitioner appealing an affirmative ITC determination—*ever*.  Plaintiff's appeal is solely about potentially moving the effective date backward by a few months.  That Plaintiff would expend judicial resources on this appeal, based entirely on a speculative theory it raised at the eleventh hour, is extraordinary.

*First*, the Commission relied on a reasonable calculation to render its negligibility finding. No party disputes the denominator in that calculation, and so this entire case is about the numerator. The Commission tabulated U.S. importers' questionnaire data—covering virtually all imports from Thailand—and deducted Appendix IV entries that U.S. importers had certified to CBP as circumventing merchandise subject to the preexisting *Solar I* orders.  This was a reasonable calculation methodology, and indeed the best calculation based on available, reliable data for imports within the scope of the *Solar III* investigations.  The Commission's math is straightforward and yields a result unambiguously below the three-percent negligibility threshold set forth in the governing statute.

12

*Second*, Plaintiff's arguments contending that the Commission should have employed an alternative data set are a sideshow.  Every argument Plaintiff raises as to Thailand—about speculative use of Appendix IV for goods subject to *Solar III*, about "flexible" certification rules, and about official import statistics—constitutes an attempt to create ambiguity in the Commission's record evidence where none exists.  On the contrary, the three leading U.S. importers from Thailand—Canadian Solar, Trina, and Runergy—testified under oath to the Commission and attested in detailed declarations that all their reported Appendix IV entries of CSPV imports from Thailand were circumventing imports subject to *Solar I*, not the *Solar III* investigations.  The ITC record contains no evidence that any importer used an Appendix IV certification to import CSPV products from Thailand that are subject to the *Solar III* investigations, not the *Solar I* orders.

**ARGUMENT**

I. **THE COMMISSION'S NEGLIGIBILITY METHODOLOGY WAS REASONABLE AND SHOULD BE AFFIRMED**

A. **The Commission Properly Used Questionnaire Data as Reasonable (and Indeed the Best) Evidence of Subject Import Volume**

The scope of *Solar III* expressly excludes merchandise within the scope of *Solar I*.  *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 43809, 43816 (May 20, 2024) ("excluded from the scope of these investigations are all products covered by the scope of the antidumping and countervailing duty orders on *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order,* 77 FR 73018 (December 7, 2012)").  It is axiomatic that merchandise may be subject to only one set of AD/CVD orders.  The scopes of distinct orders may not overlap.

13

*Louis Dreyfus Citrus, Inc. v. United States*, 31 C.I.T. 964, 977 (2007) ("Commerce is prohibited 'from initiating a new investigation which includes within its purview a class of merchandise that is already subject to an outstanding antidumping duty order.'. . . In circumstances where the possibility of administering two proceedings arises, Commerce has developed a policy to craft the scope of the latter proceeding to ensure that there is no overlap.") (citing *NTN Bearing Corp. of Am. v. United States*, 705 F. Supp. 594, 598 (Ct. Int'l Trade 1989) ("{T}he pertinent laws prohibit {Commerce} from initiating a new investigation which includes within its purview a class of merchandise that is already subject to an outstanding antidumping duty order.").

The Commission determined the numerator for the Thailand negligibility calculation by tabulating total questionnaire-reported imports from Thailand and deducting the volume of imports entered under Appendix IV certifications. This calculation was reasonable and in accordance with law because the purpose of the Appendix IV certifications was for U.S. importers to certify that the covered merchandise is circumventing and thus within the *Solar I* scope. The Commission correctly explained: "{I}mporters or exporters that utilized Appendix IV certified that their merchandise contained parts or components of Chinese origin that matched or surpassed thresholds that Commerce had determined were subject to its circumvention finding and, therefore, within the scope of the *CSPV I* orders." USITC Pub. 5631 at 44 (P.R. 315). This is not merely a methodological "choice"—it is the correct and lawful application of Commerce's scope language and the foundational legal principle that investigation scopes may not overlap with existing orders.[4]

---

[4]    Chair Karpel observed at the Commission's hearing: "I have to say I found to make sense what Respondents were saying, that if these Appendix 4 entries are to be treated as if they are subject to the CSPV One order, I'm not sure why entries that have been identified as such should then be treated as subject given the scope of this order excludes product that is subject to the CSPV One order." Hearing Tr. at 75 (Chair Karpel) (P.R. 251).

14

Indeed, it would have been contrary to law for the Commission to have included Appendix IV entries in its *Solar III* negligibility calculations. This is because these entries comprise merchandise that was circumventing the *Solar I* orders and thus could not have been subject to the *Solar IIII* investigations during the negligibility period. This is clear from Commerce's *Circumvention Final Determinations*, which termed Appendix IV the "Certification for 'Applicable Entries' Under 19 CFR Part 362 Importer Certification." *Final Circumvention Determinations* at 57425 (P.R. 141). The referenced regulation defines "Applicable Entries" to be "Southeast Asian-Completed Cells and Modules," which "are cells and modules subject to the Solar Circumvention Inquiries" that "are using parts and components manufactured in {China}." 19 C.F.R. § 362.102. In sum, "Applicable Entries"—called Appendix IV entries by the Commission—comprise circumventing CSPV products subject to *Solar I* by virtue of Commerce's *Final Circumvention Determinations*.

> **B.  There is No Evidence that Importers of CSPV Product from Thailand Used Appendix IV for Non-Circumventing Merchandise, Nor Would This Have Been Rational**

Plaintiff "does not dispute the fact that Appendix IV certifications were used to import non-subject merchandise that was subject to the *Solar I* Order." Pl. Br. at 25. Rather, Plaintiff speculates that "Appendix IV entries *did* include imports that were subject to this *Solar III* investigation". *Id.* at 24. There is *zero* evidence on the Commission's record supporting the claim that any CSPV import from Thailand using an Appendix IV certification was subject to *Solar III*. In fact, the Commission found that the record contained "no information" that importers had used Appendix IV to import non-circumventing imports. USITC Pub. 5631 at 44 (P.R. 315).

Plaintiff speculates that imports from Thailand hypothetically might have used Appendix IV certifications when they could have instead used Appendix VI certifications, and

15

NONCONFIDENTIAL VERSION
CONFIDENTIAL INFORMATION DELETED FROM BRACKETS

therefore the Commission's numerator was underinclusive of subject merchandise.  Pl. Br. at 26.

There is no basis in the Commission's record that this hypothetical scenario actually occurred with

respect to imports from Thailand.  And for good reason.  It would not have been logical or rational

for U.S. importers to have used Appendix IV (for circumventing merchandise) when they could

have used Appendix VI certification (for non-circumventing merchandise).  If a CSPV product

comprised sufficient non-Chinese content to be eligible for Appendix VI and thus avoid

Commerce's duty suspension and deposit requirements, no rational importer would have used an

Appendix IV certification.  This is because Appendix IV contained an additional, significant

requirement—that is, all CSPV products certified under Appendix IV had to meet a strict 180-day

utilization requirement, mandating that imported articles have been "used or installed" by

December 3, 2024.  *Final Circumvention Determinations* (P.R. 141)  If this requirement was not

met, then the *Solar I* duties would be retroactively applied to the CSPV merchandise comprising

the Appendix IV entry.  All of this serves to explain why there is zero evidence of any such

behavior on the record before the ITC for imports from Thailand.

Plaintiff ignores these facts in its opening brief.  Failing to cite to any actual "evidence"

regarding imports from Thailand and omitting completely any discussion of the Appendix IV

utilization requirement, Plaintiff contends:

> {T}here is evidence on the record that importers used Appendix IV
> to import merchandise that was not subject to the *Solar I* duties.
> Exporters and importers did this for various reasons, whether it was
> because it was easier to comply with the Appendix IV certifications
> as a matter of record keeping, because they were barred from
> certifying that their imports did not use Chinese-origin inputs, or
> because the end result of certifying under Appendix IV, V, or VI
> was the same—the non-payment of tariffs.

Pl. Br. at 26.  [

16

**]** and no such

strictures exist for goods that qualify for Appendix VI.

Moreover, entirely absent from the Plaintiff's brief is the important fact that Commerce, CBP, and the White House all emphasized that the utilization requirement for Appendix IV entries would be "vigorously enforce{d}." Canadian Solar Posthearing Br. at 5 (C.R. 464, P.R. 264). A May 2024 White House Fact Sheet stated:

> The Department of Commerce requires that panels imported duty-free must be installed within 180 days to prevent stockpiling. {CBP} has announced that it will vigorously enforce this provision, including by requiring importers to provide to CBP a certification of solar module utilization with detailed information about the modules being deployed.

*Id*. at Ex. 5-C.

Likewise, Plaintiff itself urged "strong enforcement" of the utilization deadline. On December 3, 2024, Plaintiff published a statement urging "strong enforcement of today's deadline by {CBP} and other agencies" of the Appendix IV deadlines. *Id*. at 6, Ex. 5-E. Plaintiff's lead counsel stated that "the enforcement of this circumvention regime remains extremely important to the domestic industry." *Id*. at 6, Ex. 5-D. Plaintiff then cannot now claim that importers frivolously used Appendix IV to certify merchandise that could have qualified for Appendix VI, with no evidence that this occurred. This is particularly so in light of Plaintiff's own contemporaneous knowledge that this would have been irrational.

Plaintiff's argument that CBP has rejected Appendix IV certifications *ex post facto* proves nothing. Pl. Br. at 26. The result of rejected certifications is that certain importers now face the retroactive imposition of *Solar I* suspension and duty deposit requirements. A rejected Appendix IV certification does not, for example, change the AD case number from A-570-979 (*Solar I*) to

17

A-5491-852 (*Solar III* Thailand)—the case number remains the same (*Solar I*).  As such, entries with rejected Appendix IV certifications are thus ***even more clearly*** outside the scope of *Solar III*.  In the example of **[                    ]**, **[**

**]**. Pl. Br. at 26.  CBP's potential rejection of Appendix IV certifications is beside the point.  What is relevant is that **[**

**]** that fall within the scope of *Solar I*.

C.     **Representatives from Canadian Solar, Trina, and Runergy Confirmed Under Oath That All of Their Appendix IV Entries Were *Solar I* Imports**

Finally, the Commission's methodology was reasonable in light of record evidence from the major U.S. importers of Thai merchandise that their Appendix IV imports were subject to *Solar I*.  At the Commission's hearing, representatives of the three leading importers from Thailand testified that all their Appendix IV entries were circumventing merchandise within the scope of *Solar 1*:

> **Mr. Bowen (Canadian Solar):** "I can confirm that Canadian Solar did not import any products subject to these investigations in the 12 months preceding the petition."
>
> **Ms. Yang (Runergy):** "{F}or Runergy, all of Appendix 4 imports were within the scope of {*Solar I*} so we only had Appendix 4 imports in the relevant 12 month period. . . . And for Runergy we only had one option which was Appendix 4 certification for imports."
>
> **Mr. Freed (Trina):** "All of Trina's Certification 4 entries could not have been eligible for Certification 6. . . .  It really would make no sense to use Certification 4 if you could use Certification 6."

Hearing Tr. at 239–40 (Mr. Bowen, Ms. Yang), 260 (Mr. Freed) (P.R. 251); Canadian Solar Posthearing Br. at Ex. 1-B (C.R. 464, P.R. 264); Runergy Posthearing Q&A at Ex. 1 (C.R. 466, P.R. 269); Trina Posthearing Br. at Att. 1 (C.R. 459, P.R. 257)**.**  Plaintiff offers no evidence—only

18

speculation—to contradict this sworn testimony. "The credibility of sources is largely a matter within the province of the Commission, as the trier of fact." *Al Tech Specialty Steel Corp. v. United States*, 27 C.I.T. 1791, 1802 (2003).

Plaintiff's speculation is even more baseless because Commerce's companion AD/CVD investigations corroborate the Commission's finding that imports from Thailand were negligible. Commerce's period of investigation in its AD investigation was April 1, 2023, through March 31, 2024—***precisely identical to the Commission's negligibility period***. *See* Canadian Solar Posthearing Br. at 6, Ex. 2-A (C.R. 464, P.R. 264). In its *Solar III* AD/CVD investigations, Commerce received responses to its quantity and value questionnaires from seven Thailand companies. Moreover, Commerce verified both Runergy and Talesun Technologies Thailand Co. in the CVD investigation, confirming the accuracy of their quantity and value data reporting. *Id*. at Ex. 2. Commerce's AD investigation confirmed that there were very few subject imports from Thailand during the negligibility period—in fact, Trina was the only Thailand producer with enough subject imports in *Solar III* to be individually investigated, notwithstanding Commerce's standard practice of selecting at least two mandatory respondents as required by the governing statute.[5] Commerce's separate, corroborating findings demonstrating that there were very few *Solar III* imports from Thailand during the negligibility period further disprove Plaintiff's baseless claims.

---

[5]    *See* Canadian Solar Posthearing Br. at 6, Ex. 2-A (C.R. 464, P.R. 264) (Commerce's AD *Solar III* Thailand respondent selection memorandum, noting that "{while} the Federal Circuit has held that the statute generally requires that the reasonable number of respondents Commerce individually examines be greater than one, we find that, in this particular instance, individual examination of a sole mandatory respondent in this segment of the proceeding is appropriate considering that the exporter/producer, Trina Solar Thailand accounts for the overwhelming majority of imports from companies which responded to the Q&V questionnaire.").

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Commission's Response Brief, Canadian Solar, Runergy, and Trina respectfully request that this Court deny Plaintiff's motion for judgment on the agency record and affirm the Commission's determination that subject imports from Thailand were negligible for purposes of present material injury.  No remand is warranted in this case.

Respectfully submitted,

| | |
|---|---|
| /s/ Jonathan T. Stoel | /s/ Lian Yang |
| Jonathan T. Stoel | Lian Yang |
| Michael G. Jacobson | Elio Gonzalez |
| Nicholas R. Sparks | Eric Xie |
| | |
| HOGAN LOVELLS US LLP | ALSTON & BIRD, LLP |
| 555 Thirteenth Street, N.W. | 950 F Street, NW |
| Washington, DC 20004-1109 | Washington, DC 20004-1404 |

*Counsel to Canadian Solar International Limited; Canadian Solar Manufacturing (Thailand) Co., Ltd.; Canadian Solar US Module Manufacturing Corporation*

*Counsel to Runergy PV Technology (Thailand) Co., Ltd.; Runergy USA Trading LLC; Runergy Alabama Inc.*

/s/ Jonathan M. Freed

Jonathan M. Freed
Didie Muller
Kenneth N. Hammer
MacKensie R. Sugama

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003

*Counsel to Trina Solar U.S., Inc.; Trina Solar Science & Technology (Thailand) Ltd.*

21

**CERTIFICATE OF COMPLIANCE**

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jonathan T. Stoel, hereby certify that this brief complies with the word limitations set forth in the Court's November 5, 2025 Order.  ECF No. 37.  Excluding the table of contents, table of authorities, and signature block, the word count for this brief is 5,726 words according to the word-count function on the word-processing software used to prepare the brief. This brief thus complies with the Court's Order, which permits up to 6,000 words for the Defendant-Intervenor Briefs.

Respectfully submitted,

/s/ Jonathan T. Stoel
Jonathan T. Stoel

Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109

*Counsel to Canadian Solar International Limited, Canadian Solar Manufacturing (Thailand) Co., Ltd., and Canadian Solar US Module Manufacturing Corporation*

Dated: June 26, 2026

**PUBLIC**
**CERTIFICATE OF SERVICE**

*American Alliance for Solar Manufacturing Trade Committee v. United States et al.*
**Court No. 25-00163**

I hereby certify that on June 26, 2026,  a  copy  of  this submission was served via CM/ECF  upon the following:

Timothy C. Brightbill
WILEY REIN, LLP
2050 M Street, NW.
Washington, DC 20036
tbrightbill@wiley.law

Anthony C. Famiglietti
U.S. International Trade Commission
Office of the General Counsel
500 E Street, SW
Washington, DC 20436
anthony.famiglietti@usitc.gov

Craig A. Lewis
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW.
Washington, DC 20004
craig.lewis@hoganlovells.com

 /s/ Jonathan T. Stoel
Jonathan T. Stoel

**HOGAN LOVELLS US LLP**

1