NON-CONFIDENTIAL VERSION

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>UNITED STATES,<br><br>　　　　　Defendant,<br><br>　　　and<br><br>BYD AMERICA LLC, CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD., CANADIAN SOLAR US MODULE MANUFACTURING CORPORATION, TRINA SOLAR SCIENCE AND TECHNOLOGY (THAILAND) LTD., TRINA SOLAR (U.S.) INC., RUNERGY PV TECHNOLOGY (THAILAND) CO., LTD., RUNERGY USA TRADING LLC, AND RUNERGY ALABAMA INC.<br><br>　　　　Defendant-Intervenors. | Before: Hon. Mark A. Barnett,<br>　　　　　Chief Judge<br><br>Court No. 25-00163<br><br><u>NON-CONFIDENTIAL VERSION</u><br><br>Business Proprietary Information Removed from Pages 8-10, 15 |

## <u>REPLY BRIEF OF PLAINTIFF AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE</u>

Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Stephanie M. Bell, Esq.
Kimberly A. Reynolds, Esq.
Stephen A. Morrison, Esq.

WILEY REIN LLP
2050 M Street, NW
Washington, DC  20036
(202) 719-7000

*Counsel to the American Alliance for Solar Manufacturing Trade Committee*

Dated: August 4, 2026

Ct. No. 25-00163                                          NON-CONFIDENTIAL VERSION

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 1

    A.    Plaintiff Has Constitutional Standing in This Action ....................................1

    B.    The Commission's Determination That Subject Imports from Cambodia and Thailand Were Negligible for Purposes of Material Injury is Not Supported by Substantial Evidence and is Otherwise Not In Accordance With Law ......................................................................................................8

        1.    The Commission's Treatment of All Appendix IV Entries as Non-Subject Was Not Reasonable ...........................................................8

        2.    The Commission's Treatment of NE Solar's Imports as Circumventing Is Not Supported by Substantial Evidence.................................11

        3.    The Commission's Rejection of Plaintiff's Proposed Methodology Was Not Reasonable ...........................................................13

III.  CONCLUSION.................................................................................................. 16

Ct. No. 25-00163                                          NON-CONFIDENTIAL VERSION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ames True Temper v. United States,*
   34 CIT 321, 700 F. Supp. 2d 1352 (2010) ................................................................5

*Burlington Truck Lines, Inc. v. United States,*
   371 U.S. 156 (1962) ................................................................................................15

*Canadian Lumber Trade All. v. United States,*
   517 F.3d 1319 (Fed. Cir. 2008) ..........................................................................6, 11

*Cemex, S.A. v. United States,*
   384 F.3d 1314 (Fed. Cir. 2004) ................................................................................5

*Hylsa, S.A. de C.V. v. United States,*
   31 CIT 52, 469 F. Supp. 2d 1341 (2007) ..................................................................5

*Invenergy Renewables LLC v. United States,*
   No. 19-00192, slip op. 19-153 (Ct. Int'l Trade Dec. 5, 2019) ..............................6, 7

*Louis Dreyfus Citrus, Inc. v. United States,*
   31 CIT 964, 495 F. Supp. 2d 1338 (2007) ..........................................................12, 13

*Nippon Steel Corp. v. United States,*
   337 F.3d 1373 (Fed. Cir. 2003) ..............................................................................11

*R-M Indus., Inc. v. United States,*
   18 CIT 219, 848 F. Supp. 204 (1994) ....................................................................3, 4

*Sandoz Chems. Corp. v. United States,*
   No. 93–03–00178, slip op. 93-188 (Ct. Int'l Trade Sep. 23, 1993) ..........................3

*Spokeo, Gilda Indus., Inc. v. United States,*
   446 F.3d 1271 (Fed. Cir. 2006) ................................................................................7

*Spokeo, Inc. v. Robins,*
   136 S. Ct. 1540 (2016) ..............................................................................................6

*ThyssenKrupp Acciai Speciali Terni S.P.A. v. United States,*
   572 F.Supp.2d 1323 (Ct Int'l Trade 2008) ..............................................................7

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
   429 U.S. 252 (1977) ..................................................................................................7

Ct. No. 25-00163                                               NON-CONFIDENTIAL VERSION

**Statutes**

19 U.S.C. §§ 1671e(b)(2) & 1673e(b)(2) .......................................................................2

**Administrative Materials**

*Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic
    Cells, Whether or Not Assembled Into Modules From the People's Republic of
    China*, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) .............................11

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation;
    Opportunity To Request Administrative Review and Join Annual Inquiry
    Service List; Note Regarding Format of Review Requests*, 91 Fed. Reg. 32,937
    (Dep't Commerce June 2, 2026).........................................................................5

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules
    From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam*,
    90 Fed. Reg. 26,786 (Dep't Commerce June 24, 2025) .........................................2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules
    From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam*,
    90 Fed. Reg. 26,791 (Dep't Commerce June 24, 2025) .........................................2

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules,
    From Cambodia, Malaysia, Thailand and Vietnam*,
    90 Fed. Reg. 25,075 (Int'l Trade Comm'n June 13, 2025)..................................1, 2

## I.    **INTRODUCTION**

On behalf of Plaintiff the American Alliance for Solar Manufacturing Trade Committee ("Plaintiff"), we respectfully submit the following reply to the response briefs of Defendant the U.S. International Trade Commission ("the Commission" or "Defendant") and Defendant-Intervenors. *See* Def. U.S. Int'l Trade Comm'n's Confid. Mem. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R. (May 15, 2026), ECF No. 61 ("Def. Br."); BYD America LLC's Mem. in Opp'n to Pl.'s Mot. for J. on the Agency R. (June 26, 2026), ECF No. 67 ("BYD Br."); Canadian Solar, Runergy, and Trina's Resp. to Pl.'s Mot. for J. on the Agency R. (June 26, 2026), ECF No. 65 ("Joint Def.-Int. Br.").

## II.    **ARGUMENT**

This appeal arises from the Commission's final determination in the antidumping and countervailing duty investigations of crystalline silicon photovoltaic cells, whether or not assembled into modules, from Cambodia, Malaysia, Thailand, and Vietnam. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand and Vietnam*, 90 Fed. Reg. 25,075 (Int'l Trade Comm'n June 13, 2025) (deters.), P.R. 317; *see also* Views of the Commission, (Final) (June 12, 2025), C.R. 514 ("Views").

### A.    **Plaintiff Has Constitutional Standing in This Action**

This appeal concerns the Commission's negligibility determinations regarding Thailand and Cambodia, and concomitant finding that the U.S. solar industry was threatened with material injury, but not yet presently materially injured, by reason of imports from these countries. As a result of this finding, the U.S. Department of Commerce ("Commerce") imposed antidumping and countervailing duties on subject Thai and Cambodian imports as of the June 13, 2025, publication of the Commission's final determination in the *Federal Register*, rather than the earlier publication

dates of Commerce's preliminary dumping and subsidy determinations. *See, e.g.*, 19 U.S.C. §§ 1671e(b)(2) & 1673e(b)(2); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam*, 90 Fed. Reg. 26,786, 26,787-88 (Dep't Commerce June 24, 2025) (antidumping duty orders); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam*, 90 Fed. Reg. 26,791, 26,792-93 (Dep't Commerce June 24, 2025) (countervailing duty orders); *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and Vietnam*, 90 Fed. Reg. at 25,075; *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-TA-722-725 and 731-TA-1690-1693, USITC Pub. 5631 (June 2025) (Final) at 96 n.473, P.R. 315.

In light of the threat determinations, Commerce ordered U.S. Customs & Border Protection to liquidate, without duties, subject Thai and Cambodian entries that were made between the Commerce preliminary and Commission final publication dates. *See* Customs Message 5216406 (Aug. 4, 2025) and 5182401 (July 1, 2025) (notifying CBP of the lifting of the suspension of liquidation for subject Thai goods); Customs Messages 5183404 (July 2, 2025) and 5183402 (July 2, 2025) (notifying CBP of the lifting of the suspension of liquidation for subject Cambodian goods). Given that no injunction against these liquidations was sought in this case, the Court held a conference with the parties on June 30, 2026, at which it raised questions as to whether liquidation deprived Plaintiff of constitutional standing in this action. *See, e.g.*, Appearance Sheet (June 30, 2026), ECF No. 69. The Court ordered Plaintiff to address this issue in its reply brief. *See* Order (June 30, 2026), ECF No. 70.

Plaintiff asserts that it has constitutional standing in this action, regardless of whether pre-June 13, 2025, entries of Cambodian and Thai subject goods have liquidated. Although this court has found that liquidation may moot certain challenges to administrative action, it does not do so in all cases. Relevantly here, the court has found standing where the issue central to a plaintiff's challenge is "capable of repetition" but would evade review if the challenge were considered moot by reason of liquidation. Separately, the court has found standing where challenged agency action has collateral consequences that continue irrespective of liquidation. Plaintiff's action satisfies both lines of precedent.

First, the Court has rejected claims of mootness where a challenged issue stands to repeat but a finding of mootness would allow it to evade review. *R-M Indus., Inc. v. United States*, 18 CIT 219, 848 F. Supp. 204 (1994). In *R-M Industries*, a U.S. manufacturer challenged a negative determination, arguing that two Commissioners never reached a decision on whether injury existed, but only found a lack of threat. Plaintiff argued that, given the distinct impacts that flow from injury and threat determinations, the Commission could not lawfully avoid making determinations on both issues. *Id.* at 212, 848 F. Supp. at 228. The Commission argued that the issue was moot given the overall negative finding, but the Court found otherwise. *Id.* at 212, 848 F. Supp. at 229. The Court noted that while injury and threat determinations had distinct consequences for the treatment of subject entries, negative determinations of both kinds presented a "lack of a present {material} injury" sufficient to support injunctions against liquidation. *Id.* (citing *Sandoz Chems. Corp. v. United States*, No. 93–03–00178, slip op. 93-188 (Ct. Int'l Trade Sep. 23, 1993)). As such, regardless of the Commission's failure to discharge its statutory duty to make both kinds of determination, if it made only affirmative threat determinations without reaching the question of injury, entries made before the Commission's publication of its

determination (*i.e.*, "pre-injury" entries) "would then be liquidated in due course, continually mooting the issue." *Id.* The challenged issue would then go unaddressed indefinitely – an insupportable result.

A core issue in this appeal involves the developing Commission practice of using agency-created "plug" responses to attribute specific import volumes, and kinds of imports, to companies that choose not to respond to Commission questionnaires. In particular, the Commission is attempting to use confidential Customs data (not made available to the parties) to fill a gap where subject importers choose not to provide required data themselves. And, it is worth noting, one reason why importers might not respond to the Commission, despite being required to do so, is to influence a finding of whether subject imports are found to be negligible. This is precisely the kind of issue that is capable of repetition, yet would evade review if liquidation of entries were considered to moot the action. The case at bar is not unique; the Commission has continued to use "plug" questionnaires in other ongoing investigations to evaluate negligibility. *See Van-Type Trailers and Subassemblies from Canada, China, and Mexico*, Inv. Nos. 701-TA-780-782 and 731-TA-1767-1769, USITC Pub. 5704 (Feb. 2026) (Prelim.) at 24 ("The questionnaire responses do not cover all subject imports from Canada, but staff was able to account for one non-responding importer, \*\*\*, using proprietary Census-edited Customs records for negligibility purposes."). As the *R-M Industries* Court found, the availability of injunctions against liquidation is doubtful in "threat only" cases, given that a threat determination necessarily involves no present material injury. *R-M Indus.*, 18 CIT at 212, 848 F. Supp. at 229. As such, where the Commission's use of "plug" questionnaire data to evaluate negligibility results in threat rather than injury determinations, the issue is one that is capable of repetition, yet evades review, and thus overcomes traditional mootness principles.

Nor is this the only basis for finding the present action unmooted. The Court has recognized that, notwithstanding the liquidation of entries, "if retaining the status quo may have a legal effect on subsequent proceedings, the action should continue." *Hylsa, S.A. de C.V. v. United States*, 31 CIT 52, 56, 469 F. Supp. 2d 1341, 1346 (2007).[1] As noted above, because the Commission found threat but not material injury, only subject Thai and Cambodian goods entered on or after June 13, 2025 are under order. While this decision directly implicates the duty treatment for pre-June 13, 2025 entries, it also has ongoing collateral consequences in the form of changing the first annual administrative period of review ("POR") for the Thai and Cambodian orders relative to the PORs for the orders that were issued subject to material injury determinations.

Commerce recently published its notice of the opportunity to request the first annual administrative review of the orders. *Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List; Note Regarding Format of Review Requests*, 91 Fed. Reg. 32,937 (Dep't Commerce June 2, 2026). Reflecting the threat determinations, the PORs for the Cambodia and Thailand orders are curtailed, with the antidumping reviews covering June 13, 2025 – May 31, 2026, and the countervailing duty reviews covering only a six-month period (June 13, 2025 – December 31, 2025). *Id.* at 32,938-39. By contrast, the PORs for the injury-based orders run from December 4, 2024 – May 31, 2026 (antidumping orders) and October 4, 2024 – December 31, 2025 (countervailing orders). *Id.*

---

[1]     For that matter, the court has previously found that the relief available to domestic industries with respect to antidumping rates is necessarily prospective, as Congress did not choose to permit domestic interests to directly challenge liquidation. *See Ames True Temper v. United States*, 34 CIT 321, 329, 700 F. Supp. 2d 1352, 1360 (2010) (citing *Cemex, S.A. v. United States*, 384 F.3d 1314 (Fed. Cir. 2004)). Given the prospective nature of the relief Plaintiff here seeks, liquidation does not undermine the availability of a remedy.

Importantly, the first administrative reviews not only will set the liquidation rates for entries made during the relevant PORs, but set the go-forward cash deposit rates for incoming entries upon the reviews' completion. As Commerce's notice demonstrates, a necessary – and therefore non-speculative – collateral consequence of the challenged Commission determination is that Commerce will base the cash deposit rates on calculations that exclude entries that Plaintiff asserts were injurious. The Commission's determination thus has effects that implicate Plaintiff's rights, independent of liquidation of the excluded entries. And while Plaintiff – who has requested review of the Cambodian and Thai orders – plans to press Commerce to collect pre-June 13, 2025 sales and cost data from respondents in anticipation of a favorable outcome in this action, the collateral consequence of the Commission's threat determination for the administration of the order cannot be remedied by Commerce itself or in a challenge to Commerce action. Plaintiff's path to a remedy for the collateral consequences lies in this action. And by reason of those collateral consequences – as well as the potential for the Commission's developing practice to otherwise evade review – this case presents a live case or controversy that this court is constitutionally empowered to decide.

In this case, all elements of constitutional standing are met, regardless of the liquidation of pre-June 13, 2025 entries. Constitutional standing requires that Plaintiff have suffered injury-in-fact that is traceable to the Commission's conduct, and for which the court can issue concrete, non-abstract relief. *See Invenergy Renewables LLC v. United States*, No. 19-00192, slip op. 19-153 at 14 (Ct. Int'l Trade Dec. 5, 2019). But the constitutional injury-in-fact requirement "is not Mount Everest." *See id. at* 16 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) and *Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1333 (Fed. Cir. 2008)). Even procedural harm may be sufficient, notwithstanding "the possibility that the agency's final decision taken in

accordance with the proper procedures may not be in plaintiff's favor." *Id.* (citing *Spokeo, Gilda Indus., Inc. v. United States*, 446 F.3d 1271, 1279 (Fed. Cir. 2006), and *ThyssenKrupp Acciai Speciali Terni S.P.A. v. United States*, 572 F.Supp.2d 1323, 1331 (Ct Int'l Trade 2008)). And the harm a Plaintiff suffers need not be direct "so long as it is fairly traceable to defendants' conduct." *Id.* at 15 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977)). Finally, a court remand order that requires the agency to follow its proper process, even if that order does not direct a specific outcome, provides sufficient, concrete relief. *Id.* at 17 (citing *Gilda*, 446 F.3d at 1279).

Here, Plaintiff has not only been deprived of a Commission decision that comports with the standard of review, that deprivation has substantive impacts for the future administration of the orders. As noted above, the Commission's decision will result in pre-June 13, 2025 entries being dropped from calculations used to establish future deposit rates, and thus affect the ongoing relief that the orders provide to the Plaintiff in a way that cannot be remedied outside of this case. Plaintiff also faces the possibility of similar harm in future cases, should the Court not address here the Commission's developing practice of relying on plug questionnaires grounded in confidential data not revealed to the parties. The relief that Plaintiff seeks – a remand order- can remedy these harms. And importantly, these injuries, the relationship between them and the Commission's decision, and the court's ability to redress them does not hinge on whether pre-June, 2025 entries have liquidated.

BUSINESS PROPRIETARY INFORMATION
HAS BEEN REMOVED

Ct. No. 25-00163                                                   NON- CONFIDENTIAL VERSION

**B.**     **The Commission's Determination That Subject Imports from Cambodia and Thailand Were Negligible for Purposes of Material Injury is Not Supported by Substantial Evidence and is Otherwise Not In Accordance With Law**

The defense fails to demonstrate that the Commission's determination that imports from Cambodia and Thailand were negligible for purposes of material injury was supported by substantial evidence or otherwise in accordance with law.

**1.**     *The Commission's Treatment of All Appendix IV Entries as Non-Subject Was Not Reasonable*

Defendant repeatedly states that there is "no" record evidence that Appendix IV entries included non-circumventing merchandise. *See, e.g.*, Def. Br. at 20, 25, 30, 31. Similarly, while the Commission below conceded that while importers could have entered goods subject to the investigation at bar pursuant to Appendix IV certifications, it stated that "the record contains no information that this was the case for any importer." *Id*. at 30. The record, however, conclusively demonstrates that this assertion was false, leaving the Commission's treatment inadequately explained and supported. For example, both [

] confirmed that they imported subject merchandise under Appendix IV.

In its U.S. importer questionnaire response, [

]. [

]. The only reasonable conclusion from

[          ] statement is that some Appendix IV entries were *Solar III* subject imports, which Plaintiff highlighted to the Commission. *See* Letter from Wiley Rein LLP to Sec'y Comm'n, re: *Post-Hearing Brief* (Apr. 22, 2025) at Exhibit 1, pp. 3-4, C.R. 463 & 470, P.R. 265 ("Petitioner's Post-Hearing Br."); *see also* Views at 56 n.190 (citing Plaintiff's argument concerning [          ]

8

BUSINESS PROPRIETARY INFORMATION
HAS BEEN REMOVED

Ct. No. 25-00163                                                 NON- CONFIDENTIAL VERSION

Appendix IV entries). Defendant's claim that the statement was not "determinative evidence" of the specific volume of subject merchandise that [                    ] under Appendix IV is beside the point. Views at 56 n.190. The fact remains that it was possible to "use{} Appendix IV to import non-circumventing imports," Def. Br. at 25 (citing Views at 56 n.190), and the record contained evidence that more than one responding U.S. importer in fact did so.

Defendant's argument concerning certified statements from [          ] U.S. importer questionnaire likewise fail. *See, e.g., id.* at 27-29. Defendant's statement that "[          ] affirmed" that "all its imports of CSPV cells and modules entered under Appendix IV during the period of investigation were non-subject," *Solar I* imports is directly contradicted by [          ] actual statements, which the Defendant quotes verbatim at footnote 15 of its response brief. *Id.* at 28 n.15.

First, [

]. Specifically, [          ] stated that

[



                                                                                ].

*Id.* (citing [

                                        ]) (emphasis added). That is, [



                                        ]. *Id.*

Next, [

]. Specifically, [



                                                        ]. Def. Br. at 28 (emphasis

9

BUSINESS PROPRIETARY INFORMATION
HAS BEEN REMOVED

Ct. No. 25-00163                                                                    NON- CONFIDENTIAL VERSION

added). In other words, [

].

Further, contrary to Defendant's claim, Plaintiff did not waive the argument concerning

[          ] entries. *Id.* Instead, [

] is merely a

factual point in support of Plaintiff's argument that the Commission's methodology for calculating

negligibility was unreasonable, which Plaintiff raised with the Commission throughout the

underlying investigation, and in its complaint to this Court. This evidence does not amount to a

separate claim.

Additionally, while [          ] opined that Appendix IV was designed for non-subject

imports and that the Commission should consider all Appendix IV imports as non-subject

merchandise, [

]. *Id.* at 29 ([

]). In sum,

Defendant's claim is incorrect; the record contained evidence that importers used Appendix IV

certifications to import *Solar III*-subject merchandise, and thus it was inappropriate to presume

that all entries made under Appendix IV were non-subject merchandise.

Moreover, the Commission's reference to a sworn affidavit from [      ] attesting that all

of its imports were filed under Appendix IV is unavailing. *Id.* at 26. Regardless of whether

[          ] Appendix IV imports were subject to *Solar I* and not *Solar III*, its statement only reflects

the experience of a single U.S. importer. As detailed above, the record demonstrates that entries

filed under Appendix IV are not *de facto* non-subject merchandise. The very function of the

Appendices likewise supports this. As Plaintiff previously explained, the Appendices were all

10

designed to allow certified entries to receive duty-free treatment. Given that various Appendices could be used in order to certify eligibility for duty-free treatment, it is unsurprising that companies did not always certify their merchandise under the most restrictive Appendices.

Defendant proclaims that its treatment of 100% of Appendix IV imports as non-subject in calculating negligibility is supported by its statutory authority to "make reasonable estimates on the basis of available statistics." *Id.* at 30. To the contrary, the statutory language confirms that Defendant's methodology was unreasonable. The record showed that, contrary to the Commission's conclusion, all imports classified as Appendix IV were *not* non-subject merchandise. Given that some portion of Appendix IV imports were subject, a reasonable estimate of the non-subject portion of Appendix IV imports should be less than 100 percent. Treating *all* Appendix IV entries as non-subject merchandise was not a reasonable "estimate" by the Commission. That is, no "reasonable mind might accept" the Commission's determination to treat 100 percent of Appendix IV entries as non-subject imports given straightforward record evidence showing that some amount of these imports were subject goods. *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003).

### 2.    *The Commission's Treatment of NE Solar's Imports as Circumventing Is Not Supported by Substantial Evidence*

Commerce preliminarily determined that NE Solar was not circumventing the *Solar I* orders. *See* Issues and Decision Memorandum accompanying *Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From the People's Republic of China*, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023) (final scope deter. and final affirmative deters. of circumvention with respect to Cambodia, Malaysia, Thailand, and Vietnam) at 14 (finding that "NE Solar did not source inputs from affiliated producers in China" and had no affiliated wafer production facilities in China). The only reason

that NE Solar was required to certify under Appendix IV is because it refused to participate in Commerce's verification, which resulted in Commerce making an adverse inference against it. This finding was not based on any affirmative evidence that NE Solar's merchandise was circumventing the *Solar I* Orders. Moreover, NE Solar and other companies to which Commerce applied adverse inferences were not permitted to certify under Appendixes V and VI, and thus had no choice but to certify under Appendix IV in order to ensure tariff free treatment.

Contrary to Defendant's claim, treating NE Solar's imports as subject merchandise would not mean that the Commission was making its own circumvention determination. That is, treating NE Solar's imports as subject merchandise to analyze the volume of subject imports for purposes of determining negligibility is not "substituting" its own judgement for Commerce's. This is especially true when considering that Commerce preliminarily determined NE Solar's merchandise to be non-circumventing, and NE Solar failed to respond to the Commission. Rather, it would be reasonable for the Commission to consider that NE Solar's entries should be included in the volume of Cambodian imports for purposes of assessing negligibility since record evidence demonstrates that, at best, it was not clear whether NE Solar's imports met the Commission's definition of subject merchandise. Instead, regardless of NE Solar's failure to participate, the Commission gave NE Solar the most favorable presumption by considering all of the company's imports not subject to the Commission's investigation.

Moreover, Defendant's argument that merchandise cannot be within the scope of two orders, and thus the Commission's determination to treat all Appendix IV entries as non-subject imports was reasonable, is unpersuasive. As an initial matter, the case cited by Defendant, *Louis Dreyfus Citrus, Inc. v. United States*, 31 CIT 964, 976, 495 F. Supp. 2d 1338, 1349-50, (2007), confirms that "Commerce considers avoiding double assessment of duties a key element in crafting

a scope". *Id.* at 977, 495 F. Supp. 2d at 1351. That is, the reason that Commerce avoids crafting a scope that might cover merchandise from an existing order is to avoid assessing duties under two orders. However, this is not of concern with entries certified under any of Commerce's Appendices in the anticircumvention proceeding. In particular, the very function of the Appendix certifications, including Appendix IV certifications, was to afford importers duty free treatment for those certified entries. Thus, as a functional matter, those entries that were certified under Appendix IV did not pay *Solar I* duties. In sum, Defendant's claim fails. The Commission's determination to treat all of NE Solar's entries as non-subject Appendix IV imports for purposes of calculating negligibility, would have no practical impact on Commerce's circumvention findings, nor its scope determination. Instead, including NE Solar's imports in the Commission's negligibility calculations, would accurately reflect the universe of imports subject to the investigations, rather than making the most favorable assumption possible for an importer that failed to cooperate in the Commission's investigation.

### 3. The Commission's Rejection of Plaintiff's Proposed Methodology Was Not Reasonable

Defendant fails to demonstrate that the Commission's rejection of Plaintiff's proposed methodology for assessing negligibility was reasonable. As detailed in Plaintiff's opening brief, the Commission only provided two brief and insufficient reasons for rejecting Plaintiff's proposed methodology. First, the Commission stated that it was "unclear which HTS subheadings Petitioner used to compile the official import statistics" in its calculations. Def. Br. at 36. And second, the Commission suggested that the Cambodian questionnaire data ran the risk of understating Appendix IV imports. Views at 58 n.197.

Regarding the first issue, the Commission ignored record evidence demonstrating that Plaintiff used HTSUS codes 8541.42.0010 and 8541.43.0010 – the HTSUS codes that clearly

13

cover subject merchandise and the same HTSUS codes the Commission used in *its* denominator –

for the denominator of Plaintiff's calculation. *See* Letter from Wiley Rein LLP to Sec'y Comm'n,

re: *Prehearing Brief* (Apr. 9, 2025) at Exhibit 2, C.R. 438, 447, P.R. 227 ("Petitioner's Pre-Hearing

Br."). Instead, Defendant side-steps this issue, to focus on the difference in volumes between

official import data and import volumes from the questionnaire data. Def. Br. at 36. However, that

does not address that the Commission's proclaimed reason for declining to use Plaintiff's

methodology was incorrect and unsupported by the record. To the contrary, Exhibit 2 of

Petitioner's Pre-Hearing Brief provided the negligibility calculation using only official import

statistics, and included a cover page detailing the parameters of the data pull, including that it used

HTSUS codes 8541.42.0010 and 8541.43.0010. *See* Petitioner's Pre-Hearing Br. at Exhibit 2.

Exhibit 10 of Petitioner's Post-Hearing Brief provided the negligibility calculation using the same

official import statistics in the numerator and denominator, but adjusting the numerator downwards

for Appendix IV imports that were requested to be treated as non-subject imports. *See* Petitioner's

Post-Hearing Br. at Exhibit 10. Accordingly, the record was clear as to which subheadings the

Petitioner used to compile the official import statistics in Petitioner's proposed methodology. The

Commission's reasoning on this point is thus unsupported by record evidence.

In regard to the second issue, Defendant merely repeats its arguments that it was required

to treat all of NE Solar's imports as non-subject because of Commerce's adverse inference

regarding NE Solar. Def. Br. at 37-38. Yet, this does not explain why the Commission used data

from the supposedly flawed questionnaire coverage for its negligibility calculation. It also does

not explain or justify the Commission's further manipulation of that import data using unsupported

assumptions about the nature of the merchandise being imported by non-participating companies.

The Defendant thus advanced no argument to demonstrate how using flawed questionnaire data as

BUSINESS PROPRIETARY INFORMATION
HAS BEEN REMOVED

Ct. No. 25-00163                                                    NON- CONFIDENTIAL VERSION

a basis for the negligibility analysis establishes a rational connection between the facts before the agency and its determination not to rely on official import statistics for its negligibility analysis. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

Moreover, notwithstanding Plaintiff's position on the general use of plug questionnaires, the Commission's determination to use a plug questionnaire for NE Solar, who did not respond at all, but not other importer questionnaires that were considered unusable [                          ], Def. Br. at 22 (citing Staff Report, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-TA-722-725 and 731-TA-1690-1693 (Final) (May 7, 2025) at 4.1 n.3, C.R. 495, P. R. 287), renders its determination internally inconsistent and thus unreasonable. Indeed, the Commission's statement that it received usable questionnaire data from [    ] percent of U.S imports from Cambodia is misleading. Views at 6-7. Instead, as clarified in a footnote in the Commission's views, this coverage total included the volume of imports that the Commission constructed using proprietary data, including the volume from non-participating Cambodian importer NE Solar. Why the Commission found it reasonable to construct a questionnaire for NE Solar but not [

] remains unexplained. This inconsistent treatment only further demonstrates that there was no rational connection between the facts of record and the Commission's choice of the data and methodology for calculating negligibly. *See Burlington Truck Lines*, 371 U.S. at 168. The Commission's methodology is thus unreasonable and not supported by substantial evidence.

Ct. No. 25-00163                                          NON- CONFIDENTIAL VERSION

## III.   CONCLUSION

For the reasons described above, Plaintiff urges the court to remand the *Final Determination* to the Commission for reconsideration or further explanation.

Respectfully submitted:

*/s/ Timothy C. Brightbill*
Timothy C. Brightbill, Esq.
Laura El-Sabaawi, Esq.
Stephanie M. Bell, Esq.
Kimberly A. Reynolds, Esq.
Stephen A. Morrison, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel to the American Alliance for Solar Manufacturing Trade Committee*

Dated: August 4, 2026

16

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chambers Procedure 2(B)(1) and the court's November 5, 2025 Scheduling Order, ECF No. 37, the undersigned certifies that this brief complies with the word limitation requirement. The word count for the Reply Brief of Plaintiff The American Alliance for Solar Manufacturing Trade Committee, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 4,597 words.

*/s/ Timothy C. Brightbill*
(Signature of Attorney)

Timothy C. Brightbill
(Name of Attorney)

The American Alliance for Solar Manufacturing Trade Committee
(Representative Of)

August 4, 2026
(Date)