IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| AMERICAN ALLIANCE FOR SOLAR MANUFACTURING TRADE COMMITTEE, | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | |
| Defendant, | Court No. 25-00163 |
| and | |
| BYD AMERICA LLC, CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING (THAILAND) CO., LTD., CANADIAN SOLAR US MODULE MANUFACTURING CORPORATION, RUNERGY PV TECHNOLOGY (THAILAND) CO., LTD., RUNERGY USA TRADING LLC, RUNERGY ALABAMA INC., TRINA SOLAR U.S., INC., TRINA SOLAR SCIENCE AND TECHNOLOGY (THAILAND) LTD., | |
| Defendant-Intervenors. | |

**DEFENDANT-INTERVENORS' JOINT SUR-REPLY TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ...........................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.      PLAINTIFF DOES NOT SATISFY THE TRADITIONAL ELEMENTS OF
CONSTITUTIONAL STANDING.......................................................................................2

      A.      Plaintiff Has Not Suffered Injury-in-Fact ..............................................................2

      B.      Plaintiff's Claims Cannot Be Redressed and Are Moot Because Commerce
Ordered Liquidation ...............................................................................................3

II.      PLAINTIFF'S CLAIMS DO NOT RESCUE ITS FAULTY STANDING........................7

      A.      The "Capable of Repetition, Yet Evading Review" Exception Does Not Apply ....7

      B.      Plaintiff's Asserted Collateral Consequences Are Speculative and Do Not
Establish Standing ..................................................................................................9

CONCLUSION..............................................................................................................................10

## TABLE OF AUTHORITIES

Page

**CASES**

*Allegheny Ludlum Corp. v. United States*,
346 F.3d 1368 (Fed. Cir., 2003)................................................................................... 9

*American Spring Wire Corp. v. United States*,
7 C.I.T. 2 (1984) ......................................................................................................... 5

*California v. Texas*,
593 U.S. 659 (2021)...................................................................................................... 1

*Camara Nacional de las Industrias Azucarera y Alcoholera v. United States*,
118 F. Supp. 3d 1360 (Ct. Int'l Trade 2015) ............................................................... 3

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)................................................................................................. 9, 10

*DaimlerChrysler Corp. v. United States*,
442 F.3d 1313 (Fed. Cir. 2006).................................................................................... 2

*Davis v. FEC*,
554 U.S. 724 (2008)...................................................................................................... 2

*Freeport Mins. Co. v. United States*,
758 F.2d 629 (Fed. Cir. 1985)...................................................................................... 3

*Gerstein v. Pugh*,
420 U.S. 103 (1975)...................................................................................................... 8

*Incyte Corp. v. Sun Pharm. Indus., Inc.*,
136 F.4th 1096 (Fed. Cir. 2025) .................................................................................. 2

*International Brotherhood of Electrical Workers v. United States*,
29 C.I.T. 74 (2005) ................................................................................................... 5, 6

*Invenergy Renewables LLC v. United States*,
422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019) ........................................................... 3, 9

*Jem D Int'l (Mich.) Inc. v. United States*,
470 F. Supp. 3d 1374 (Ct. Int'l Trade 2020) ........................................................... 6, 7

*Khalid v. Blanche*,
172 F.4th 876 (D.C. Cir. 2026)..................................................................................... 4

*Los Angeles v. Lyons*,
461 U.S. 95 (1983) ....................................................................................................... 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...................................................................................................... 2

*ModernaTx, Inc. v. Arbutus Biopharma Corp.*,
18 F.4th 1352 (Fed. Cir. 2021) .................................................................................... 2

*Nasatka v. Delta Sci. Corp.*,
  58 F.3d 1578 (Fed. Cir. 1995)........................................................................................... 2

*Nebraska Press Ass'n v. Stuart*,
  427 U.S. 539 (1976)........................................................................................................... 8

*Oil Workers Unions v. Missouri*,
  361 U.S. 363 (1960)........................................................................................................... 6

*R-M Industries, Inc. v. United States*,
  18 C.I.T. 219 (1994) ......................................................................................................... 8

*Royal Brush Mfg., Inc. v. United States*,
  675 F. Supp. 3d 1282 (Ct. Int'l Trade 2023) ............................................................... 4, 6

*Spencer v. Kemna*,
  523 U.S. 1 (1998)........................................................................................................... 7, 8

*Torrington Co. v. United States*,
  44 F.3d 1572 (Fed. Cir. 1995)........................................................................................... 7

*U.S. Parole Comm'n v. Geraghty*,
  445 U.S. 388 (1980)........................................................................................................... 8

*Zenith Radio Corp. v. United States*,
  710 F.2d 806 (Fed. Cir. 1983)....................................................................................... 5, 6

**STATUTES**

19 U.S.C. § 1504(d) ............................................................................................................. 4

19 U.S.C. § 1671f(a)(1) ...................................................................................................... 10

19 U.S.C. § 1673f(a)(1) ...................................................................................................... 10

**ADMINISTRATIVE MATERIALS**

*Certain Stainless Wire Rods From France: Final Results of Antidumping Duty Administrative Review*,
  61 Fed. Reg. 47874 (Dep't Commerce Sep. 11, 1996)....................................................... 9

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand and Vietnam*,
  90 Fed. Reg. 25075 (Int'l Trade Commission June 13, 2025).......................................... 1

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From the Socialist Republic of Vietnam: Amended Final Antidumping Duty Determination; Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty Orders*,
  90 Fed. Reg. 26786 (Dep't Commerce June 25, 2025) ..................................................... 4

**DEFENDANT-INTERVENORS' JOINT SUR-REPLY TO
PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

## INTRODUCTION

"The Constitution gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.' Art. III, § 2. That power includes the requirement that litigants have standing." *California v. Texas*, 593 U.S. 659, 668 (2021). The American Alliance for Solar Manufacturing Trade Committee ("Plaintiff") lacks standing in this case.

Plaintiff's reply brief sidesteps the traditional constitutional standing requirements of injury-in-fact and redressability—it does not satisfy either. We first address these flaws in Plaintiff's case. Plaintiff contends that the clear instruction by the U.S. Department of Commerce ("Commerce") to U.S. Customs and Border Protection ("CBP") to liquidate pre-June 13, 2025 entries[1] of subject Cambodian and Thai merchandise does not deprive Plaintiff of standing. Plaintiff asserts two exceptions to the standing requirements—(1) the underlying dispute is "capable of repetition, yet evad{ing} review," and (2) the challenged U.S. International Trade Commission ("ITC") final determination carries collateral consequences for the administration of the resulting orders. *See, e.g.*, Plaintiff's Reply Br., ECF No. 73 ("Reply") at 3. Plaintiff is wrong on both counts. On the contrary, Section II below demonstrates that Plaintiff's own authorities confirm that neither theory holds water here.

---

[1] Entries made prior to the ITC's final determination. *See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From Cambodia, Malaysia, Thailand and Vietnam,* 90 Fed. Reg. 25075 (Int'l Trade Commission June 13, 2025), P.R. 317.

## ARGUMENT

**I. PLAINTIFF DOES NOT SATISFY THE TRADITIONAL ELEMENTS OF CONSTITUTIONAL STANDING**

Article III of the U.S Constitution limits this Court to deciding actual, ongoing controversies.  The party invoking jurisdiction bears the burden of establishing standing at every stage of the litigation, not merely when the complaint is filed.  *Davis v. FEC*, 554 U.S. 724, 732–33 (2008); *ModernaTx, Inc. v. Arbutus Biopharma Corp.*, 18 F.4th 1352, 1358 (Fed. Cir. 2021); *DaimlerChrysler Corp. v. United States*, 442 F.3d 1313, 1318 (Fed. Cir. 2006).  That party also bears the burden of establishing all three elements of its standing: (1) injury-in-fact; (2) a causal connection between the injury and the challenged conduct; and (3) that it is likely that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  A live case or controversy requires that the requested relief "make a difference to the legal interests of the parties."  *Nasatka v. Delta Sci. Corp.*, 58 F.3d 1578, 1580 (Fed. Cir. 1995) (citation omitted).  Plaintiff has failed to satisfy the injury-in-fact and redressability elements.

### A. Plaintiff Has Not Suffered Injury-in-Fact

To invoke Article III standing, "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal quotations omitted).  The Federal Circuit has explained that "the party seeking to establish standing must show a concrete injury to itself."  *Incyte Corp. v. Sun Pharm. Indus., Inc.*, 136 F.4th 1096, 1104 (Fed. Cir. 2025).  In cases where standing rests on competitive harm, the "challenged government action" must "nonspeculatively threaten{} economic injury *to the challenger* by the ordinary operation of economic forces."  *Id.* (citation omitted) (emphasis added).  A party cannot meet this requirement merely by "show{ing} a benefit to a competitor."  *Id.*

2

Here, Plaintiff has suffered no injury—in fact, Plaintiff **won** before the ITC. Following the ITC's affirmative determination, Commerce imposed antidumping and countervailing duty ("AD/CVD") orders in June 2025. It is well settled that victory before the agency means that there is no injury-in-fact. *See Freeport Mins. Co. v. United States*, 758 F.2d 629, 634 (Fed. Cir. 1985) ("As a general rule, the prevailing party in a proceeding may not appeal the proceeding just because he disagrees with some of the findings or reasoning."); *Camara Nacional de las Industrias Azucarera y Alcoholera v. United States*, 118 F. Supp. 3d 1360, 1367 (Ct. Int'l Trade 2015) (finding that plaintiff lacked injury-in-fact to challenge a favorable ITC decision because "{c}ase law is unequivocal that a plaintiff may not challenge subsidiary determinations where it has prevailed in the overall proceeding").

According to Plaintiff, the ITC's negative material injury determination caused it harm because the ITC used "plug questionnaires" and because in the forthcoming AD/CVD administrative reviews Commerce will not use pre-June 2025 sales to compute AD/CVD cash deposit rates. Reply at 6–7. This is wrong. A bare procedural or methodological objection to how the agency filled an evidentiary gap does not, by itself, amount to injury-in-fact; rather, this type of alleged injury must be tied to a concrete harm the challenging party has suffered or will imminently suffer as a result. *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1272 (Ct. Int'l Trade 2019) ("{A} bare procedural violation alone may be insufficient to confer standing where the violation does not result in harm to the plaintiff . . . ").

### B. Plaintiff's Claims Cannot Be Redressed and Are Moot Because Commerce Ordered Liquidation

For a litigant to have standing, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (citations omitted).

3

"{T}here is no redressability if a federal court lacks the power to issue such relief." *Khalid v. Blanche*, 172 F.4th 876, 885 (D.C. Cir. 2026) (citation omitted).

Plaintiff's claims are not redressable because Commerce has long ago directed the liquidation of the entries at issue, and Plaintiff has not identified a lawful mechanism by which these entries could be subject to reliquidation. Commerce properly instructed CBP, as part of the AD/CVD orders published on June 24, 2025, to liquidate entries made before June 13, 2025.[2] CBP was required by statute to unsuspend and liquidate these entries within six months of Commerce's direction. 19 U.S.C. § 1504(d) ("{W}hen a suspension required by statute or court order is removed, the Customs Service *shall* liquidate the entry . . . *within 6 months* after receiving notice of the removal from {Commerce} or a court with jurisdiction over the entry.") (emphases added). The statutory scheme thus requires that all entries subject to this action were liquidated by December 24, 2025. Plaintiff thus has been on notice for more than 400 days that it lacked standing to prosecute this unwarranted action.

This Court has held that it can no longer grant "any effectual relief" when a plaintiff had not sought injunction against liquidation, rendering the challenge moot. *See, e.g.*, *Royal Brush Mfg., Inc. v. United States*, 675 F. Supp. 3d 1282, 1291 (Ct. Int'l Trade 2023) ("{f}or more than 50 years, the Federal Circuit has consistently held that liquidation of entries subject to a Commerce determination pursuant to 19 U.S.C. § 1516a would eliminate the only remedy available to {an interested party}. . . ." (citation omitted)).

---

[2]    *See, e.g.*, *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From the Socialist Republic of Vietnam: Amended Final Antidumping Duty Determination; Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules From Cambodia, Malaysia, Thailand, and the Socialist Republic of Vietnam: Antidumping Duty Orders*, 90 Fed. Reg. 26786, 26787–88 (Dep't Commerce June 25, 2025) (indicating cash deposit refunds and referencing section 736(b)(2) of the Act).

4

Plaintiff does not dispute that CBP was ordered "to liquidate, without duties, subject Thai and Cambodian entries that were made between the Commerce preliminary and Commission final publication dates" and that "no injunction against these liquidations was sought in this case." Reply at 2. Plaintiff could have moved for an injunction to preserve its standing but failed to do so. *See id*. at 3. Plaintiff's suggestion that its ability to obtain an injunction against liquidation of the pre-June 13, 2025 entries was "doubtful", *id.* at 4, is unsupported. Equally importantly, and, in any event, Plaintiff's view on whether it would be likely to obtain an injunction does not excuse Plaintiff's failure to seek one. Injunctive relief against liquidation is an established remedy to preserve entries in litigations like this one, and the CIT has granted this type of relief in closely analogous circumstances. For instance, in *International Brotherhood of Electrical Workers v. United States*, 29 C.I.T. 74, 77–79 (2005) ( "*IBEW*"), the CIT enjoined liquidation of entries made during the 90-day "critical circumstances" period preceding Commerce's preliminary determination. The Court of International Trade ("CIT") held that irreparable injury is presumed under *Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983), where a challenged determination affects only a discrete period of entries and no statutory mechanism exists to reliquidate those entries after a successful appeal. The CIT distinguished *American Spring Wire Corp. v. United States*, 7 C.I.T. 2, 5 (1984), in which the CIT had declined to presume irreparable harm in a very different situation—that is, where the challenged ITC negative ***present material injury*** determination had continuing, prospective effect. *See IBEW*, 29 C.I.T. at 79–80 (explaining that, in that circumstance, duties could still be assessed on future entries if the plaintiff ultimately prevailed, and so liquidation of the entries at issue did not eliminate meaningful judicial review).

Plaintiff argues that the negligibility determination has continuing, prospective effect. Not so. Like the critical circumstances determination presented in *IBEW*, the ITC's negligibility

5

determination fixed the treatment of a discrete category of entries—*i.e.*, those entered between Commerce's AD/CVD preliminary determinations and June 13, 2025—for which no provision of law permits reliquidation.   Plaintiff's reply brief acknowledges as much, characterizing the absence of a remedy for these entries as central to its standing theory.  Reply at 3–4.  Yet, this is precisely the circumstance in which both the Federal Circuit and the CIT have presumed irreparable injury and has granted preliminary injunctive relief.  *See Zenith Radio Corp.*, 710 F.2d at 810; *IBEW*, 29 C.I.T. at 77–79.  Plaintiff cannot now invoke the consequences of liquidation— ordered by Commerce more than 400 days ago—to manufacture standing while simultaneously failing to explain why it did not pursue the protective measure available to it.

Accordingly, even if Plaintiff were to prevail on the merits, a favorable decision will not and cannot redress its purported injury.  *See, e.g., Royal Brush Mfg*., 675 F. Supp. 3d 1282.  This Court thus cannot provide relief that would "make a difference" to entries that CBP has long been instructed to liquidate.  *E.g.*, *Jem D Int'l (Mich.) Inc. v. United States*, 470 F. Supp. 3d 1374, 1380-81 (Ct. Int'l Trade 2020) (dismissing claims as moot where no logical scenario permitted the requested relief).

Relatedly, an opinion from this Court addressing the lawfulness of the ITC's use of "plug" questionnaires would constitute nothing more than an unlawful advisory opinion.  This is because this Court cannot effectuate a remedy against entries that CBP has long been instructed to liquidate.  *See, e.g.*, *Oil Workers Unions v. Missouri*, 361 U.S. 363, 367 (1960) (explaining that it is the duty of federal courts "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." (citation omitted)).

## II.    PLAINTIFF'S CLAIMS DO NOT RESCUE ITS FAULTY STANDING

### A.    The "Capable of Repetition, Yet Evading Review" Exception Does Not Apply

The capable-of-repetition exception asserted by Plaintiff applies "only in exceptional situations." *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).  A plaintiff invoking this exception bears the burden of showing both—(1) that there is a reasonable expectation that the same complaining party will be subject to the same action again, and (2) that the challenged action is of inherently limited duration, too short to be fully litigated before it ceases.  *Spencer v. Kemna*, 523 U.S. 1, 17 (1998); *Torrington Co. v. United States*, 44 F.3d 1572, 1577 (Fed. Cir. 1995).  Plaintiff merely recites the general existence of this exception but never explains how it satisfies either prong—and for good reason, as Plaintiff does not satisfy either one.

First, Plaintiff speculates that the ITC's employ of "plug" questionnaire responses was unlawful and must be stopped prospectively through this appeal.  However, a "reasonable expectation" of recurrence requires more than the mere possibility that an agency might, at some future date in a separate investigation, apply a similar methodology.  Plaintiff's argument does not overcome this threshold.  As the ITC explains in its sur-reply, this was a fact-specific approach used in the underlying investigation to fill unique gaps in the record and not representative of a general ITC practice.  There is, in other words, no "practice" capable of "repetition" here to be addressed by this Court.  The CIT has rejected capable-of-repetition arguments resting on comparable general assertions that an agency practice might resurface in future proceedings.  *Jem D Int'l (Michigan) Inc.*, 470 F. Supp. 3d at 1380 (holding that plaintiff must show a reasonable likelihood, not a speculative one, that it will again suffer the identical injury).

Second, even if this Court considers the ITC's use of "plug" questionnaires to be a developing agency practice that is likely to recur, nothing about this alleged practice is inherently transitory.  Federal courts have found actions incapable of full litigation before they expire in

limited circumstances such as election-law, prior-restraint, and pretrial-detention contexts. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 542 (1976); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). This case is very different—another plaintiff may challenge the ITC's gap-filling mechanism in another case where a plaintiff actually has standing. In fact, Plaintiff readily admits that the ITC has needed to fill gaps in a separate ongoing investigation. Reply at 4 (referencing *See Van-Type Trailers and Subassemblies from Canada, China, and Mexico,* Inv. Nos. 701-TA-780-782 and 731- TA-1767-1769, USITC Pub. 5704 (Feb. 2026) (Prelim.) at 24). The limited capable-of-repetition exception prevents challenged agency conduct from evading review altogether. It does not rescue a plaintiff's failure to seek timely interim relief that would have preserved a live controversy over the specific entries at issue.

Plaintiff's own principal authority does not hold otherwise. *R-M Industries, Inc. v. United States*, 18 C.I.T. 219, 227–29 (1994), addressed the ITC's failure to reach a present material injury determination and instead only address whether a threat of material injury existed—a circumstance materially distinct from that before this Court.[3] In fact, the CIT's dicta about future mootness of "threat only" cases, *id.* at 299, does not even mention the two-part capable of repetition test articulated in *Spencer*, 523 U.S. at 17, and discussed above. *R-M Indus.* thus provides no authority to excuse Plaintiff's failure here.

---

[3]     In *R-M Indus., Inc*, the Commission's practice of making only an affirmative threat finding and no present material injury finding could never be challenged without the standing exception. As noted above, the same "evasion of review" concern does not exist in this case because a litigant with proper standing would be able to challenge the agency's use of "plug" data.

**B.**      **Plaintiff's Asserted Collateral Consequences Are Speculative and Do Not Establish Standing**

Plaintiff's alternative theory—that the negligibility determination will somehow affect the period of review and cash deposit rates in the forthcoming AD/CVD administrative reviews—fares no better.  Constitutional standing requires an injury that is concrete, not conjectural, and that is redressable by the relief sought.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013); *see Invenergy Renewables LLC*, 422 F. Supp. 3d at 1270–75.  The premise of Plaintiff's collateral-consequences argument is that Commerce's calculations in the administrative reviews will not include certain data Plaintiff asserts should be included and which plaintiff posits could somehow yield higher cash deposit rates.  Reply at 5–6.  But, these reviews have not been initiated, no respondents selected, and no calculations made.  Whatever cash deposit rates ultimately result—results that will not have any impact on entries until the end of 2027, at the earliest, when Commerce completes its reviews—will depend on respondent-specific data that have not been collected and calculations that Commerce has not yet performed.  Moreover, Plaintiff can appeal Commerce's rate determinations if Plaintiff is dissatisfied with the review outcomes.  Furthermore, consistent with agency practice, Commerce would not use in its cash deposit rate calculations sales associated with entries that were not suspended such as those at issue here.  *See, e.g.*, *Certain Stainless Wire Rods From France: Final Results of Antidumping Duty Administrative Review*, 61 Fed. Reg. 47874, 47875 (Dep't Commerce Sep. 11, 1996) ("Sales of merchandise that can be demonstrably linked with entries prior to the suspension of liquidation are not subject merchandise and therefore are not subject to review by the Department."); *see also Allegheny Ludlum Corp. v. United States*, 346 F.3d 1368, 1373 (Fed. Cir., 2003) ("we hold lawful Commerce's regulatory policy of rescinding annual administrative reviews where there are no {suspended} entries during the period of review . . . ").  And lastly, the assessment rate to be applied to the entries in question

9

is subject to the "deposit rate cap" set forth in 19 U.S.C. §§ 1671f(a)(1), 1673f(a)(1)—in other words, the assessment rates for those entries can only *decline* relative to the cash deposit rate initially applied.

Injury dependent on this chain of contingencies—future reviews, future data, and future rate determinations that Plaintiff has not yet had occasion to challenge—is neither actual nor imminent.  It is certainly not injury this Court could redress today.  *Clapper*, 568 U.S. at 410 ("respondents' theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending.").

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to establish constitutional standing to pursue this action.  This case should be dismissed.

*       *       *

10

Respectfully submitted,

/s/ Craig A. Lewis
Craig A. Lewis
Nicholas W. Laneville
Gregory M.A. Van Hawk

HOGAN LOVELLS CADWALADER
US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109

*Counsel to BYD America LLC*

/s/ Jonathan T. Stoel
Jonathan T. Stoel
Michael G. Jacobson
Nicholas R. Sparks

HOGAN LOVELLS CADWALADER
US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109

*Counsel to Canadian Solar
International Limited; Canadian Solar
Manufacturing (Thailand) Co., Ltd.;
Canadian Solar US Module
Manufacturing Corporation*


/s/ Lian Yang
Lian Yang
Elio Gonzalez
Eric Xie

ALSTON & BIRD, LLP
950 F Street, NW
Washington, DC 20004-1404

*Counsel to Runergy PV Technology
(Thailand) Co., Ltd.; Runergy USA
Trading LLC; Runergy Alabama Inc.*

/s/ Jonathan M. Freed
Jonathan M. Freed
Didie Muller
Kenneth N. Hammer
MacKensie R. Sugama

TRADE PACIFIC PLLC
700 Pennsylvania Avenue, SE
Suite 500
Washington, DC 20003

*Counsel to Trina Solar U.S., Inc.; Trina
Solar Science & Technology (Thailand)
Ltd.*

11

# CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Craig A. Lewis, hereby certify that this brief complies with the word limitations set forth in the Court's July 2, 2026, Order. ECF No. 71. Excluding the table of contents, table of authorities, and signature block, the word count for this brief is 2,960 words according to the word-count function on the word-processing software used to prepare the brief. This brief thus complies with the Court's Order, which permits up to 3,000 words for the Sur-Reply Briefs.

Respectfully submitted,

/s/ Craig A. Lewis
Craig A. Lewis

Hogan Lovells Cadwalader US LLP
555 Thirteenth Street, N.W.
Washington, DC 20004-1109

*Counsel to BYD America LLC*

Dated: August 11, 2026

**PUBLIC**
**CERTIFICATE OF SERVICE**

*American Alliance for Solar Manufacturing Trade Committee v. United States et al.*
**Court No. 25-00163**

I hereby certify that on August 11, 2026,  a  copy  of  this submission was served via

CM/ECF  upon the following:

Timothy C. Brightbill
WILEY REIN, LLP
2050 M Street, NW.
Washington, DC 20036
tbrightbill@wiley.law

Anthony C. Famiglietti
U.S. International Trade Commission
Office of the General Counsel
500 E Street, SW
Washington, DC 20436
anthony.famiglietti@usitc.gov

 /s/ Nicholas W. Laneville
Nicholas W. Laneville

**HOGAN LOVELLS CADWALADER US LLP**